UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NATIONAL NONWOVENS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CONSUMER PRODUCTS ) <br> ENTERPRISES, INC., ) <br> ) <br> Defendant. ) <br> ) | Civil Action No.: 04-30078-MAP <br><br> October 27, 2004 |

## MEMORANDUM IN SUPPORT OF NATIONAL NONWOVENS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES FROM CONSUMER PRODUCTS ENTERPRISES, INC.

I.  Background

The present case is a trademark infringement action filed by NNI, alleging, *inter alia*, infringement of United States Trademark Registration Nos. 1,385,577 for the mark "WoolFelt and Design", and 2,073,811 for the mark "WoolFelt". NNI has also alleged infringement of common law rights to NNI's distinctive trademarks, infringement of NNI's distinctive trade dress, violations of unfair competition laws, and copyright infringement. CPE has answered the Complaint and filed Counterclaims.

NNI served discovery requests on counsel for CPE, via First Class mail on July 13, 2004 and September 15, 2004. Specifically, NNI propounded a First Set of Interrogatories and a First Request for Production of Documents. CPE served its Responses to NNI's First discovery requests on August 6, 2004. (See Exhibits A and C). NNI propounded a Second Set of Interrogatories and a Second Request for Production

of Documents. CPE served its Responses to NNI's Second discovery requests on October 18, 2004 (See Exhibits B and D). As noted below in more detail, CPE's responses were incomplete and evasive. Specifically, CPE has resisted providing any information and producing any documents, which allegedly constitute or include trade secrets and proprietary information.

The information and documents sought by NNI are relevant to the issues raised in its Complaint. NNI attempted to resolve the discovery disputes amicably and in good faith. Pursuant to Local Rule 37.1, NNI's counsel has raised the issue with CPE's counsel on several occasions (See Dionne Decl., Exhibit E). CPE's counsel has repeatedly refused to compromise CPE's position, maintaining that the documents and information are "confidential", and therefore, need not be produced. (See Dionne Decl., Exhibit E). As the Court will recall, NNI's counsel initially raised the issue of the need for a Protective Order at the Scheduling Conference held on June 24, 2004. At that time, the matter was rejected by CPE's counsel as being unnecessary. Subsequent to that Conference NNI's counsel prepared and provided CPE's counsel with a proposed stipulated Protective Order (Exhibit F) for Counsel's review and comment pursuant to Fed. R. Civ. P. 26(c) (See Dionne Decl., Exhibit E). CPE's counsel did not formally respond. (See Dionne Decl., Exhibit E). Clearly, the dispute between NNI and CPE regarding CPE's discovery responses cannot be resolved between the parties and requires the Court's intervention.

NNI respectfully requests this Court to order CPE to produce responsive documents and interrogatory responses as requested. CPE has been provided with ample time to respond to NNI's requests, and has to the present day failed to cooperate

with NNI's efforts to resolve the outstanding disputes in a reasonable and timely fashion. NNI therefore requests the Court to levy appropriate sanctions against CPE, including compensating NNI the costs and attorneys' fees incurred for the preparation and filing of this Motion to Compel.

II.     Unanswered Interrogatories

NNI requests the Court to compel CPE to provide responses to First Interrogatory Nos. 9, 10 and 13. Each of these Interrogatories relates to CPE's sales of allegedly infringing products. First Interrogatory Nos. 9, 10 and 13 have been insufficiently answered by CPE. Instead of responding, CPE provides standard objections, and adds that the information sought by NNI is "proprietary information and constitutes trade secrets".

The specific Interrogatories and Responses in dispute are as follows:

**Interrogatory 9.**     Identify all persons and/or entities that have purchased the product "Classic Wool Felt" from the Defendant.
     **Objection:**     This interrogatory is vague and ambiguous with regard to "all persons and/or entities." Further, this interrogatory is extraordinarily overbroad and unduly burdensome, such that Defendant cannot possibly be expected to respond with regard to "all persons and/or entities." Accordingly, without waiving and subject to the foregoing objection, the Defendant responds as follows:
     **Response:**     The Defendant states that the identity of all persons and/or entities that have purchased the product "Classic Wool Felt" from the Defendant is proprietary information and constitutes trade secrets not subject to the current scope of discovery.

**Interrogatory 10.**     Identify all persons and/or entities that have purchased the product "Imperial Wool Felt" from the Defendant.
     **Objection:**     This interrogatory is vague and ambiguous with regard to "all persons and/or entities." Further, this interrogatory is extraordinarily overbroad and unduly burdensome, such that Defendant cannot possibly be expected to respond with regard to "all persons and/or entities." Accordingly,

without waiving and subject to the foregoing objection, the Defendant responds as follows:
**Response:** The Defendant states that the identity of all persons and/or entities that have purchased the product "Imperial Wool Felt" from the Defendant is proprietary information and constitutes trade secrets not subject to the current scope of discovery.

**Interrogatory 13.** For each of the goods identified in response to Interrogatory No. 12 [i.e., sold under the trademarks "Classic Wool Felt" and "Imperial Wool Felt"], set forth the dollar amount of sales of said goods to date.
**Objection:** This interrogatory is extraordinarily overbroad and unduly burdensome, such that the Defendant cannot possibly be expected to respond with regard to "each of the goods." Accordingly, without waiving and subject to the foregoing objection, the Defendant responds as follows:
**Response:** The Defendant states that the dollar amount of sales of said goods to date is proprietary information and constitutes trade secrets not subject to the current scope of discovery.

(See Exhibit A, pp. 4-6).

To this date, CPE has not identified any of the purchasers of its "Imperial Wool Felt" or "Classic Wool Felt" products. Nor has CPE identified any sales figures for its "Classic Wool Felt" or "Imperial Wool Felt" products.

NNI requests the Court to compel CPE to provide responses to Second Interrogatory Nos. 1, 2 and 3. Each of these Interrogatories relates to CPE's relationship with a customer known as Hancock Fabrics of Tupelo, Mississippi. Second Interrogatory Nos. 1, 2 and 3 have been insufficiently answered by CPE. Instead of responding, CPE provides standard objections, and adds that the information relating to Hancock Fabrics sought by NNI is "proprietary information".

The specific Requests and responses in dispute are as follows

**Interrogatory No. 1:** Identify all employees of Hancock Fabrics of Tupelo, Mississippi with whom Defendant or any employee of Defendant has communicated with during the period of January 1, 2002 to date.

> **Objection:** This interrogatory is overly broad, unduly burdensome and indefinite in scope. Further, this interrogatory seeks information that is irrelevant to this litigation and is not reasonable calculated to lead to the discovery of admissible evidence. In addition, this interrogatory seeks information that is proprietary.
>
> **Interrogatory No. 2:** Identify all products offered for sale by Defendant during the period of from January1995 to September 2003.
> **Objection:** This interrogatory is overly broad, unduly burdensome and indefinite in scope. Further, this interrogatory seeks information that is irrelevant in that is seeks information for a time period not covered under the subject matter of the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, the Defendant responds as follows:
> **Response:** To the extent that this interrogatory seeks relevant and discoverable information, Defendant states that it has provided said information in its Response to Plaintiff's First Set of Interrogatories.
>
> **Interrogatory No. 3:** Identify all products offered for sale by Defendant during the period September 2003 to date.
> **Objection:** This interrogatory is overly broad, unduly burdensome and indefinite in scope. Further, this interrogatory seeks information that is irrelevant to the extent that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, the Defendant responds as follows:
> **Response:** To the extent that this interrogatory seeks relevant and discoverable information, Defendant states that it has provided said information in its Response to Plaintiff's First Set of Interrogatories.

(See Exhibit C, pp 2-3)

To this date, CPE has not identified any employee of Hancock Fabrics nor has it provided a list of products sold during the requested time periods.

III. <u>Documents Not Produced</u>

NNI also requests the Court to compel CPE to produce documents responsive to First Request Nos. 23-25 and Second Request Nos. 1-3. These Document Requests are essentially related to CPE's sales of allegedly infringing products, notably those products sold under the marks "Classic Wool Felt", "Imperial Wool Felt", CPE's "ram"

design and CPE's business relationship with Hancock Fabrics as with CPE's Interrogatory Responses, CPE has responded to NNI's Document Requests with the standard 'vague, overly broad, and unduly burdensome' objections. Similarly, CPE has objected to producing information on the basis that the requested documents are confidential, trade secrets, and contain proprietary and commercially sensitive information.

The specific First Requests and responses in dispute are as follows:

**Request 23.**   All documents that refer or relate to or evidence sales of products under the Defendant's trademark "Classic Wool Felt."
   **Objection:**   The Defendant objects to this request to the extent that it seeks information protected from disclosure as confidential, trade secrets, proprietary or commercially sensitive information. Further, the Defendant objects to this request as vague, overly broad, and unduly burdensome. Without waiving those objections, the Defendant responds as follows:
   **Response:**   The Defendant refers the Plaintiff to the Response to Request 1, above.

**Request 24.**   All documents that refer or relate to or evidence sales of products under the Defendant's trademark "Imperial Wool Felt."
   **Objection:**   The Defendant objects to this request to the extent that it seeks information protected from disclosure as confidential, trade secrets, proprietary or commercially sensitive information. Further, the Defendant objects to this request as vague, overly broad, and unduly burdensome. Without waiving those objections, the Defendant responds as follows:
   **Response:**   The Defendant refers the Plaintiff to the Response to Request 2, above.

**Request 23.**   All documents that refer or relate to or evidence sales of products under the Defendant's "ram" design.
   **Objection:**   The Defendant objects to this request to the extent that it seeks information protected from disclosure as confidential, trade secrets, proprietary or commercially sensitive information. Further, the Defendant objects to this request as vague, overly broad, and unduly burdensome. Without waiving those objections, the Defendant responds as follows:
   **Response:**   The Defendant refers the Plaintiff to the Response to Request 3, above.

(See Exhibit B, pp. 8-9).

The specific Second Requests and responses in dispute are as follows:

**Request 1**: All documents received from and/or sent to Hancock Fabrics of Tupelo, Mississippi during the period January 1, 2002 to date.
**Objection:** This request is overly broad, unduly burdensome and indefinite in scope. Further, this request seeks documents that are proprietary. This request also is irrelevant in that it is not reasonably calculated to lead to discovery of admissible evidence.

**Request 2**: All documents that describe products offered for sale by Defendant during the period January 1995 to September 2003.
**Objection:** This request is overly broad, unduly burdensome and indefinite in scope. Further, this request seeks documents that are proprietary. This request also is irrelevant in that it seeks documents for a time period not covered under the subject matter of the pending action and is not reasonably calculated to lead to discovery of admissible evidence. Without waiving these objections, the Defendant responds as follows:
**Response:** To the extent that this request seeks relevant and discoverable documents, Defendant states that it has provided said documents in its Response to Plaintiff's First Request for Production of Documents.

**Request 3**: All documents that describe products offered for sale by Defendant during the period September 2003 to date.
**Objection:** This request is overly broad, unduly burdensome and indefinite in scope. This request also is irrelevant in that it is not reasonably calculated to lead to discovery of admissible evidence. Without waiving these objections, the Defendant responds as follows:
**Response:** To the extent that this request seeks relevant and discoverable documents, Defendant states that it has provided said documents in its Response to Plaintiff's First Request for Production of Documents.

To this date, NNI has received no documents from CPE relating to or evidencing the sales of products under the "Classic Wool Felt" trademark, "Imperial Wool Felt" trademark, and/or "ram" design, nor has it received any documents relating to Hancock Fabrics or products sold during selected time periods.

IV. The Information and Documents Requested Are Relevant and Necessary to NNI's Claims

NNI's position as to each contested issue in the above-identified First discovery requests is essentially the same. That is, the disputed requests pertain to sales information for CPE's products using allegedly infringing marks and designs.

NNI's position with regard to the contested issues in the above-identified Second discovery requests relates to the matter of damages, NNI may have the right to have an accounting of Defendant's profits in this matter if it can prove "wrongful intent".

NNI submits that the requested information and documents are relevant and necessary to NNI's trademark infringement claims, including damages, and NNI's need for the materials in this matter outweighs any need by CPE to preserve the confidential information.

CPE's failure to provide sufficient responses to NNI's Interrogatories and Document requests warrants this Motion to Compel. The general purpose of discovery is to permit each party to uncover the relevant facts relating to all issues in dispute in the case. Additionally, discovery provides the parties the opportunity to learn what the opposing party is asserting and how the party plans of supporting each assertion or defense. Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, discovery is limited to information that is not privileged, but is "relevant to the claim or defense of any party." In the context of discovery, "relevance" is broadly construed. See 6 Moore's Federal Practice § 26.41[6].

Rule 37 of the Federal Rules of Civil Procedure permits the filing of a Motion to Compel where a party fails to answer an interrogatory, or fails to comply with a document request. An evasive or incomplete response is considered to be a failure to answer under Rule 37. Though parties are entitled to object to discovery requests, a responding party must still respond to the request to the extent it is not objectionable. See, e.g., Fed. R. Civ. P. 33(b)(1). Moreover, the objecting party has the burden to substantiate its objections, and "[t]he litany of overly burdensome, oppressive, and irrelevant does not alone constitute a successful objection to a discovery request." Oleson v. Kmart Corp., 175 F.R.D. 560, 565 (D. Kan. 1997) ("Discovery requests in every case require a significant amount of time for response.").

The information requested by Interrogatory Nos. 9, 10 and 13, and the documents requested by Request Nos. 23-25, are clearly relevant to NNI's claims. NNI has asserted, *inter alia*, that CPE is infringing NNI's trademark rights under the Lanham Act (15 U.S.C. §§ 1051 et seq.) by marketing and selling products under the "Classic Wool Felt" trademark, the "Imperial Wool Felt" trademark, and/or the "ram" design. Pursuant to 15 U.S.C. § 1117, a trademark owner is entitled to a recovery of damages for violations of trademark rights, including infringement of a valid trademark registration under 35 U.S.C. § 1114, as well as infringement of trade dress and common law trademark rights under 15 U.S.C. § 1125(a). Specifically, a trademark owner may recover (1) defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action. See 15 U.S.C. § 1117. Integral to the assessment of damages in a trademark infringement action is evidence of Defendant's sales. The Lanham Act instructs that:

> The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be <u>required</u> to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.

<u>Id.</u> (emphasis added).

Accordingly, the information and documents requested by NNI are clearly relevant to issues raised in NNI's Complaint. Additionally, information regarding sales of an allegedly infringing product, including the purchasers of such products, is relevant to many additional issues in a trademark infringement case, including the requisite likelihood of confusion analysis, distinctiveness, and priority. See, e.g., <u>American Optical Corp. v. Exomet, Inc.</u>, 181 U.S.P.Q. 120, 123 (TTAB 1974) ("the information concerning extent of sales may well have a bearing on the question of likelihood of confusion."), overruled in part on other grounds by <u>Johnson & Johnson v. Rexall Drug Co.</u>, 186 U.S.P.Q. 167 (TTAB 1975).[1]

Additionally, the information requested in the Second Interrogatories and the Second Requests for documents is relevant to the issue damages; specifically an accounting of profits and/or attorney's fees r. In this Circuit, an accounting of profits in a trademark infringement action where the products directly compete does not require

---

[1] In the context of trademark disputes before the Trademark Trial and Appeal Board at the United States Patent and Trademark Office, the official practice manual describe the importance of sales figures as follows:

> Annual sales and advertising figures, stated in round numbers, for a party's involved goods or services sold under its involved mark are proper matters for discovery: if a responding party considers such information to be confidential, disclosure may be made under protective order.

<u>Trademark Trial & Appeal Board Manual of Procedure</u> § 414:18; <u>see also</u> <u>Trademark Trial & Appeal Board Practice</u> § 3:80 ("Information regarding sales and advertising figures is a proper matter for

fraud, bad faith or palming off, i.e. "wrongful intent"; however, "wrongful intent" may justify an award of attorney's fees. <u>Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd.</u>, 282 F 3rd. 23, 61 U.S.P.Q. 2d 1865 (1st Cir. 2002). The information requested in the Second Interrogatories and Second Requests goes directly to the issues of direct competition and "wrongful intent".

V.   <u>CPE's Objections Are Not Well-Founded in Comparison with NNI's Need for the Requested Information and Documents</u>

CPE has objected to First Interrogatory Nos. 9, 10 and 13, Second Interrogatory Nos. 1-3, First Document Request Nos. 23-25 and Second Document Requests 1-3 by stating that NNI's requests are "extraordinarily broad and unduly burdensome." (See, e.g., Exhibit A,; Exhibit B, Exhibit C and Exhibit D). CPE has also objected that portions of some of the requests are vague and ambiguous.

CPE has used these standard objections throughout its discovery responses. However, CPE's objections are also vague in explaining precisely how the interrogatories and requests are burdensome and oppressive. <u>See</u> <u>Oleson</u>, 175 F.R.D. at 565. For example, CPE objects to NNI's request in Interrogatory No. 13 for the dollar amount of sales of goods sold by CPE under the "Classic Wool Felt" and "Imperial Wool Felt" trademarks. (See Exhibit A, p. 5). CPE notes that it "cannot possibly be expected to respond with regard to 'each of the goods.'" (See Exhibit A, p. 6). However, in CPE's response to Interrogatory No. 12, CPE identifies <u>four</u> types of goods for the "Classic Wool Felt" mark and <u>five</u> types of goods for the "Imperial Wool Felt" mark. (See Exhibit A, p. 5). It is certainly not an oppressive or burdensome request to inquire about sales

---

discovery, as such information can be relevant to many issues in a case, including likelihood of confusion,

of <u>nine</u> types of goods, in dollar amount. CPE does not state why gathering such information, which may already be collected in a company database, would be so difficult. As noted in <u>Oleson</u>, "[d]iscovery requests in every case require a significant amount of time for response." <u>Oleson</u>, 175 F.R.D. at 565. CPE's delay tactics are only acting to prejudice NNI.

CPE has further objected to providing the information and documents requested by NNI because the information and documents are or constitute trade secrets and other proprietary information of CPE. Accordingly, CPE has refused to provide the information. (See Exhibit A, Exhibit B, Exhibit C and Exhibit D). As noted above, NNI desires the information in order to formulate its trademark infringement case, including damages. In an effort to resolve the dispute, NNI proposed a stipulated Protective Order (Exhibit F) pursuant to Rule 26(c) that would restrict access to any confidential material. (See Dionne Decl., Exhibit E). Protective Orders are commonly used to restrict access to trade secrets and other sensitive information in litigation. See, e.g., Fed. R. Civ. P. 26(c)(7). However, CPE refused to agree to such a Protective Order, with no explanation for its refusal other than the proposed Order was too complex it was not necessary. (See Dionne Decl., Exhibit E). Again, CPE's delay tactics are only acting to prejudice NNI.

Even where CPE's material does constitute trade secrets or other proprietary information, the information and documents that NNI seeks are necessary for NNI's formulation of its trademark infringement case. The Supreme Court has stated that "there is no absolute privilege for trade secrets and similar confidential information."

distinctiveness, abandonment, and priority.")

Federal Open Market Comm. v. Merrill, 443 U.S. 340, 362, 99 S. Ct. 2800, 2813 (1979); see also McKinney v. Gannett Co., 660 F. Supp. 984, 990 (D. N.M. 1981) ("Sensitive documents may not be suppressed from discovery. Rather, appropriate orders and stipulations can protect such documents from reaching the public."). Accordingly, the Court must balance NNI's need for the information and documents against CPE's desire to suppress its confidential material. See ITT Electro-Optical Prods. Div. v. Electronic Tech. Corp., 161 F.R.D. 228, 231 (D. Mass. 1995).

In ITT, this Court ruled that "[i]f relevancy and need are shown, the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying or embarrassing." Id. at 231-232. There, the defendant subpoenaed a third-party competitor for confidential information. The third party met its burden to establish that the requested information contained trade secrets and that disclosure would be harmful. See id. at 231. However, the defendant established that the requested information was relevant and necessary to its counterclaims. See id. at 232. Moreover, the defendant established that its need for the information to support its counterclaims against the plaintiff outweighed the possible injury to the third party. See id. As a compromise, the Court entered a carefully fashioned protective order to guard against any improper disclosure of any trade secrets, and ordered production of confidential material. See id.; see also Four Star Capital Corp. v. NYNEX Corp., 183 F.R.D. 91, 111 (S.D.N.Y. 1997) (protective order is adequate where requesting party establishes relevance and need for requested information).

As noted above, the requested information and documents are needed at least to aid in determining the relevant market for each parties products, the extent of the

alleged infringements by CPE, the calculation of damages caused by CPE's infringement of NNI's trademarks and whether the infringement was with "wrongful intent". NNI cannot address CPE's sales and profit information without the requested information and documents. This information cannot be procured from other sources. Additionally, the requested information and documents may be helpful in addressing liability issues such as likelihood of confusion, distinctiveness and priority.

If CPE is truly concerned about the risk of public disclosure of such information and documents, then such concerns can easily be addressed by a carefully-fashioned Protective Order such as the one proposed by NNI (Exhibit F). Determining appropriate safeguards for a Protective Order is a matter within the Court's discretion. See ITT, 161 F.R.D. at 231; Multi-Core, Inc. v. Southern Water Treatment Co., 139 F.R.D. 262, 263 (D. Mass. 1991); see also Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 529 F. Supp. 866, 891 (E.D. Pa. 1981) ("The court's common sense is a helpful guide."). Indeed, Protective Orders are commonly used. See Merrill, 443 U.S. at 363, n.24, 99 S. Ct. at 2813, n. 24 (observing that protective orders are standard practice). Accordingly, CPE's refusal to seriously consider a Protective Order in this case indicates a lack of good faith on CPE's part in resolving the outstanding discovery issues.

VI.  Conclusion

CPE has not provided complete and sufficient responses to at least First Interrogatory Nos. 9, 10 and 13; Second Interrogatory Nos. 1-3; First Document Request Nos. 23-25; and Second Document Request Nos. 1-3 propounded by NNI in this matter. For at least the above reasons, NNI submits that the requested information and

documents are relevant and necessary to NNI's case, and outweighs CPE's desire to suppress confidential material from discovery. Accordingly, NNI respectfully requests this Court to compel CPE to provide complete responses to the outstanding discovery requests.

NNI also requests that this Court levy appropriate sanctions against CPE for its actions in avoiding and delaying the discovery process in this matter, including refusing to stipulate to a Protective Order that would have reasonably resolved any disputes regarding CPE's allegedly confidential information and documents.

Respectfully submitted,

National Nonwovens, Inc.
By Their Attorney

Date: October 27, 2004

Arthur F. Dionne
BBO No. 125,760
J. Kevin Grogan
BBO No. 635,089
McCormick, Paulding & Huber LLP
1350 Main Street, 5th Floor
Springfield, Massachusetts 01103
Tel. (413) 736-5401
Fax (413) 733-4543

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was mailed, postage prepaid, this 27th day of October, 2004 to all counsel of record for each party.

Arthur F. Dionne, Esq.

[6020-0011-1]