UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30078-MAP

| | |
|---|---|
| NATIONAL NONWOVENS, INC., ) | |
|     Plaintiff, ) | DEFENDANT'S OPPOSITION TO |
| ) | PLAINTIFF'S MOTION TO COMPEL |
| v. ) | PRODUCTION OF DOCUMENTS AND |
| ) | ANSWERS TO INTERROGATORIES |
| CONSUMER PRODUCTS ) | AND |
| ENTERPRISES, ) | MOTION FOR PROTECTIVE ORDER |
| INC., ) | |
|     Defendant. ) | |

Defendant Consumer Products Enterprises, Inc., (hereinafter, "CPE") opposes Plaintiff's Motion to Compel Production of Documents and Answer to Interrogatories. Plaintiff, National Nonwovens, Inc. (hereinafter, "National Nonwovens"), has failed to articulate a reason why the information that it requests, which is precisely the type of information that it, itself, has refused to provide to Defendant, is relevant to its causes of action. Plaintiff therefore should not be allowed to obtain sensitive competitive business information.

If, however, the Court determines that any of the answers and documents sought are within the permissible scope of discovery, Defendant asks that discovery be delayed pursuant to Fed. R. Civ. P. 26(c) until after the Court's ruling on the pending Motion for Summary Judgment and for Attorneys' Fees, which will effectively end this frivolous litigation.

**I.      Defendant's Opposition to Plaintiff's Motion to Compel**

   **A.      Discovery Sought**

Plaintiff has filed a Motion to Compel answers to certain interrogatories and the production of documents. The interrogatory answers and documents requested can be organized into four general categories:

Category 1: Information on <u>all</u> products offered for sale by Defendant (not just the products that allegedly infringe) in two different time periods, before the first use date of the Defendant's trademarks for wool felt and after. <u>See</u> Plaintiff's Memorandum in Support of National Nonwovens, Inc.'s Motion to Compel Production of Documents and Answer to Interrogatories (hereinafter "Plaintiff's Motion to Compel") at 5,7, quoting Plaintiff's Second Set of Interrogatories Nos. 2 and 3 and Plaintiff's Second Request for Production of Documents Nos. 2 and 3.

Category 2: Information relating specifically to one customer, Hancock Fabrics of Tupelo, Mississippi. <u>See</u> Plaintiff's Motion to Compel at 4, 7, quoting Plaintiff's Second Set of Interrogatories No. 1 and Plaintiff's Second Request for Production of Documents No. 1.

Category 3: The identity of persons or entities that have purchased the Defendant's wool felt products. <u>See</u> Motion to Compel at 3, quoting Plaintiff's First Set of Interrogatories No. 9 and 10.

Category 4: The dollar amount of sales of Defendant's wool felt products. <u>See</u> Motion to Compel at 4, 6, quoting Plaintiff's First Set of Interrogatories No. 13 and Plaintiff's First Request for Production of Documents Nos. 23-25.

### B.      Legal Standard

Plaintiff may only have discovery of information to the extent that it is "relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1).  Plaintiff should be able to articulate a reason for believing that the discovery is warranted.  8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2008 (2d ed. 1994 & Supp. 2004).

Before allowing discovery, the Court must first be satisfied that a claim is not frivolous or a pretense for using discovery powers in a fishing expedition.  *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 597 (1st Cir. 1980).  The Court may also limit discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2).  Under this balancing test, the Court has broad discretion to tailor discovery narrowly.  *Crawford-El v. Britton*, 523 U.S. 574, 598-99, 118 S. Ct. 1584, 1597, 140 L.Ed.2d 759 (1998).

Relevance is, of course, in relation to the claims for relief in the case.  In its Motion to Compel, National Nonwovens has alleged that the information sought is relevant to liability and damages under the Lanham Act claims.  See, e.g., Motion to Compel at 9, 10.  Therefore, the information sought, if relevant to liability, must go to:

"(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; [or] (8) the strength of the plaintiff's mark."  *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 29 (1st Cir. 1989).  If relevant to damages, it must relate to the defendant's profits, the damages sustained by the plaintiff, or the costs of the action.  15 U.S.C. § 1117.

### C.  Analysis

The discovery sought in this case must first be put in context. The parties here are head-to-head competitors. They are in agreement that much of the information sought, such as the parties' sales figures and client lists, is competitive information of a highly sensitive nature. Indeed, Plaintiff has refused to provide the very same information in discovery that it is herein seeking from Defendant. See, e.g., Exh. A, Plaintiff's Responses to Defendant's First Set of Interrogatories Nos. 9 and 10 (refusing to identify Plaintiff's purchasers on the bases that it is proprietary information and a trade secret); No. 15 (refusing to provide sales information on the same bases).

Further, Plaintiff's motives for requesting sensitive competitive information appears to have little to do with trademark or copyright infringement. This is suggested by the fact that the primary focus of the discovery requests is not on items that were sold under the name "Classic Wool Felt" or "Imperial Wool Felt," the supposedly infringing marks, but on all sales of products, with specific emphasis on one major client – Hancock Fabrics.[1]

---

[1]   In her deposition, Plaintiff's Rule 30(b)(6) representative provided the following testimony:
Q. Has nonwovens ever done business with Hancock fabrics since you've been involved with nonwovens?
A. Yes.
Q. Did nonwovens stop doing business with Hancock fabrics more than a year ago?
A. Yes.
Q. More than two years ago?
A. Yes.
Q. Do you have an understanding why Hancock fabrics stopped doing business with National Nonwovens?
A. No.
Q. Have you ever contacted anyone at Hancock fabrics -- you, personally?
A. Yes.
Q. What was the reason for that contact?
A. To establish a dialogue to have them purchase product from National Nonwovens.
Q. Did they?
A. No.
Q. Did you ever talk with anyone at Hancock fabrics about CPE -- or Consumer Products Enterprises?

Thus, although National Nonwovens is undoubtedly very interested in the competitive business information, it has not articulated how any of this information is relevant to the lawsuit. Plaintiff alleges in only general terms, for example, that the information sought is relevant to damages, claiming, without explanation, that somehow the information might reveal Defendant's "wrongful intent." Plaintiff's Motion to Compel at 18. It also claims that the information will aid in determining the "relevant market for each parties [sic] products" (while elsewhere stating that the parties' goods compete directly, *id.* at 11), and the "extent" of the alleged infringements by CPE. *Id.* at 13-14. Examining each category described above in detail, however, shows that none of the information sought falls within the permissible scope of discovery.

In Category 1, the Plaintiff asks for information on *all* products offered for sale by Defendant, not just products identified as "wool felt," and also in two different time periods, both the period before Plaintiff's first commercial use of the term "wool felt" and the period after. See Motion to Compel at 5,7, quoting Plaintiff's Second Set of Interrogatories Nos. 2 and 3, Plaintiff's Second Request for Production of Documents Nos. 2 and 3. Plaintiff does not try to explain how information relating to products <u>not</u> sold as "wool felt" is relevant to liability in this

---

A. Yes.
Q. Who was that -- who at Hancock fabrics did you speak to about Consumer Products Enterprises?
A.   C A R L  Z A N D E R and B R A D  B E R G.
Q. Why did you talk to Carl Zander and Brad Berg about CPE?
A. CPE sells acrylic materials to Hancock fabric they now purchase their acrylic fabric from CPE. We wanted to second source or replace CPE on acrylic fabric.
Q. Do you understand that you are in competition with CPE for Hancock fabrics' business?
A. Yes.
Q. Do you have an understanding whether CPE sells wool felt or felted wool on Hancock fabrics?
A. Yes.
Q. What is that understanding?
A. That CPE is selling a wool rayon blended material to Hancock fabrics.

Centofanti Depo. at p. 52-53.

suit, particularly in the time period before CPE ever used the term "wool felt" commercially. None of the likelihood of confusion factors, listed above, relate to non-infringing goods. Plaintiff itself claims only that "information regarding sales of an allegedly *infringing* product" is relevant, see Motion to Compel at 10 (emphasis added), but the discovery sought is far broader, asking for virtually all of Defendant's proprietary sales information on every product for almost nine years.

Nor can information on non-infringing goods be relevant to a damages claim. As Plaintiff pointed out, see Motion to Compel at 9, all that it theoretically could recover, even if it had the semblance of a meritorious claim, is Defendant's profits on goods sold under an infringing mark, not profits on any non-infringing goods. Therefore, information on non-wool felt goods is simply not germane. See, e.g., *American Optical Corp. v. Exomet, Inc.*, 181 U.S.P.Q. (BNA) 120 (TTAB 1974) (stating that information on products not marketed in relation to or sold under the accused mark was not relevant to trademark opposition). The enormous burden on the Plaintiff to produce volumes of proprietary, non-relevant information about all of its products is not within the confines of permitted discovery.

In Category 2, the information sought relates specifically to one purchaser, Hancock Fabrics of Tupelo, Mississippi. See Motion to Compel at 4,7, quoting Plaintiff's Second Set of Interrogatories No. 1, Plaintiff's Second Request for Production of Documents No. 1. It asks for any employees with whom Defendant has communicated and all documents received from and/or sent to Hancock Fabrics. *Id.*

As suggested above, the identification of Hancock Fabrics in particular is curious and not explained. No other discovery requests identify a particular customer and nowhere has Plaintiff

stated why it is entitled to discovery for this particular customer broader than for any other.  See Exh. B, Plaintiff's First Set of Interrogatories; Exh. C, Plaintiff's First Request for Production of Documents; Exh. D, Plaintiff's Second Set of Interrogatories; Exh. E, Plaintiff's Second Request for Production of Documents.

Plaintiff justifies the request only by stating that "[t]he information requested in the Second Interrogatories and Second Requests goes directly to the issues of direct competition and 'wrongful intent.'"  Plaintiff's Motion to Compel at 11.  There is no question, however, that the parties are direct competitors; both parties have stated that they sell the same goods, wool felt. See Complaint at ¶ 11 ("[T]he Plaintiff sells and promotes, *inter alia*, felt consisting of wool under the mark "WoolFelt."); Answer at ¶ 18 ("CPE admits that it continues to sell wool felt that it describes as 'imperial wool felt' and 'classic wool felt' . . . .").  Hancock Fabrics has also been a customer of both parties.  See footnote 1, *supra*.  Obtaining specific documents and names adds nothing to Plaintiff's case.

Plaintiff has also not explained what evidence of "wrongful intent" might possibly be contained in the requested documents, or what it possibly even means by "wrongful intent." National Nonwovens has identified no evidence suggesting that CPE had any untoward intent by its use of the words "wool felt."  It has no evidence that CPE ever used any mark supposedly belonging to Nonwovens in connection with the sale of any product to Hancock Fabrics: "Do you know of any documents that show CPE using the WOOL FELT mark in connection with the sale of any product to Hancock Fabrics?  A.   Not to my knowledge."  Exh. F, Deposition of Michalina Centofanti (National Nonwovens' Rule 30(b)(6) witness, hereinafter "Centofanti

Depo.") at p. 57.[2]  Further, any theory that Defendant's use of the words "wool felt" in communications with Hancock Fabrics (or any other customer) somehow evidences wrongful intent is irrational, in light of generic nature of the supposed "mark."  Plaintiff itself describes its goods as "wool felt" and "felt consisting of wool" in its own goods in its trademark registrations, Exh. G, so it can hardly impute any wrongful intent if the Defendant used the very same generic words to describe its goods also.

    Instead, what is really going on, plain and simple, is that National Nonwovens wants all the competitive business information it can get about an important customer.  The undue burden on CPE by allowing National Nonwovens to root through CPE's sensitive business information, when Plaintiff has identified no reason to believe that anything relevant will be found, is not within the scope of permitted discovery.

    Category 3 requests information on persons or entities that have purchased Defendant's wool felt products.  Motion to Compel at 3, quoting Plaintiff's First Set of Interrogatories No. 9 and 10.  Again, while this is clearly competitive business information that National Nonwovens would like to have, it has not stated how the information is relevant to the lawsuit.  As noted above, there is no disagreement that the parties sell the same goods.  The burden on Defendant of disclosing highly proprietary information, i.e., the identity of Defendant's customers, outweighs any theoretical evidentiary value of the actual names of those customers.

    Finally, Category 4 asks for the dollar amount of sales of Defendant's wool felt products.  See Motion to Compel at 4,6, quoting Plaintiff's First Set of Interrogatories No. 13, Plaintiff's

---

[2]    The Defendant has not yet received the official transcript for the deposition.  Page citations are to the rough transcript.

First Request for Production of Documents Nos. 23-25. National Nonwovens alleges that the information is relevant to a calculation of Defendant's profits. What Plaintiff has failed to note, however, is that a plaintiff may not obtain an accounting of profits where injunctive relief is adequate, e.g., where there has been no fraud or palming off and there is little likelihood of actual damage to the plaintiff or profit to the defendant. *Tamko Roofing Prod., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 35 (1st Cir. 2002).

      The Plaintiff has admitted that it has no evidence whatsoever of any actual harm it has suffered. See Centofanti Depo. at p. 111-12. It could not identify a single lost dollar caused by the supposed trademark infringement. *Id.* It has not provided any survey evidence that might indicate that there has been a loss of goodwill. It also failed to identify a single instance of actual confusion. Exh. A, Plaintiff's Responses to Defendant's First Set of Interrogatories No. 19. In short, there is no allegation or evidence that Plaintiff has been harmed in any way whatsoever by CPE's use of the generic words "wool felt" for wool felt fabric, yet it nevertheless seeks the most sensitive information that a competitor could possibly get.

      To the extent that Plaintiff is seeking information on whether Defendant profited from the sale of its wool felt goods, the Court, in light of the frivolous nature of the Plaintiff's claims and the highly confidential nature of that information, should enter a protective order, discussed below, requiring disclosure only if the Court denies Defendant's Motion for Summary Judgment.

## II.     Motion For A Protective Order Delaying the Release of Confidential Commercial Information

In the alternative, if the Court decides that any of the above categories of information is discoverable, the Defendant moves for a protective order delaying the disclosure of the information until after the Court's decision on the Defendant's Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 26, the Court may order that trade secrets or other confidential or commercial information not be revealed, Fed. R. Civ. P. 26(c)(7), or that the discovery be had only at a designated time, Fed. R. Civ. P. 26(c)(2).  Protective orders provide a safeguard for parties and other persons in light of the otherwise broad reach of discovery. Fed.R.Civ.P. 26(c), Advisory Comm. Notes (1970); *United States v. CBS, Inc.,* 666 F.2d 364, 368-69 (9th Cir. 1982).

As noted *supra*, the parties agree that the information sought is proprietary and highly confidential, the type of information that the Court may order withheld under Rule 26.  See, e.g., *Spinturf, Inc. v. Southwest Recreational Indus., Inc.*, 216 F.R.D. 320, 324 (E.D. Pa. 2003) (holding that information on past, present and future market share is confidential information under Rule 26); *Miles v. Boeing Co.*, 154 F.R.D. 112, 114 (E.D. Pa. 1994) ("competitive harm is a type of harm cognizable under Rule 26, and it is clear that a court may issue a protective order restricting disclosure of discovery materials to protect a party from being put at a competitive disadvantage"); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866, 892 (E.D. Pa. 1981) (holding that customer, supplier and price lists, financial records and contract terms are confidential commercial information).

Plaintiff proposed a protective order limiting the disclosure of discovery to only certain individuals; however, any disclosure of any proprietary information whatsoever before a decision on summary judgment is premature, given the frivolous nature of the Complaint, as discussed in detail in Defendant's Motion for Summary Judgment.  The gravamen of Plaintiff's action is that Defendant may not market its wool felt fabric as "wool felt."  It advances even more frivolous allegations regarding copyright infringement.[3]  National Nonwovens filed its complaint and now, based on these fallacious allegations, is using discovery requests to try to obtain the very confidential information that direct competitors keep in the strictest confidence from each other.  Further, the discovery requests are burdensome, requiring collection of a great deal of information.

Thus, even if the Court decides that any proprietary information may ultimately need to be disclosed, it should, in light of the highly sensitive nature of that material, permit Defendant to withhold the information pending the Court's decision on Defendant's Motion for Summary Judgment, being filed with the Court tomorrow.

---

[3]  Plaintiff's other counts of trade dress infringement and unfair business practices are merely alternative legal theories for its trademark and copyright claims.

## Conclusion

For the foregoing reasons, the Court should deny Plaintiff's Motion to Compel discovery responses, or, in the alternative, to the extent it decides any proprietary information may need to be disclosed, issue a protective order delaying the disclosure of such proprietary information until after the Court's decision on Defendant's Motion for Summary Judgment and limiting disclosure at that time to attorney's eyes only.

Respectfully submitted,
CONSUMER PRODUCTS ENTERPRISES, INC.
By Its Attorneys:

Dated: November 11, 2004

_____/s/_____
James C. Duda
 BBO No. 551207
Joshua P. Grey
 BBO No. 650544
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115
Tel: 413-781-2820
Fax: 413-272-6806
e-mail: jduda@bulkley.com
          jgrey@bulkley.com