## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30078-MAP

NATIONAL NONWOVENS, INC.,       )
    Plaintiff,                 )
                               )        **DEFENDANT'S MOTION**
v.                              )        **FOR SUMMARY JUDGMENT**
                               )        **AND**
CONSUMER PRODUCTS ENTERPRISES,  )        **SUPPORTING MEMORANDUM**
INC.,                           )
    Defendant.                 )

Plaintiff National Nonwovens, Inc. ("Nonwovens") has asserted claims in this litigation against Defendant Consumer Products Enterprises, Inc. ("CPE") that would, if successful, substantially limit the ability of CPE and, indirectly, others from competing in the United States wool felt market.  Fundamental to this strategy is Nonwovens' assertion that CPE should be barred from marketing its Classic Wool Felt and Imperial Wool Felt under those names because they use the term "Wool Felt."  Plaintiff bases its Complaint primarily on its federal registration of WOOLFELT as a trademark for its own wool felt products.  Nonwovens also asserts that CPE should be barred from distributing its wool felt washing instructions to its customers and from using the profile of a sheep in connection with the marketing of its wool felt products, apparently on the basis of copyright.  This motion requests that the Court, for the reasons discussed below, declare that Plaintiff may not use an assertion of trademark rights in the generic term "wool felt," or frivolous copyright claims, to unfairly limit competition in the wool felt market.[1]

### STATEMENT OF THE CASE

Plaintiff filed its Amended Complaint in this matter on May 27, 2004, presenting counts for trademark infringement under 15 U.S.C. §1051 and copyright infringement under 17 U.S.C. §101, in addition to unfair competition under 15 U.S.C. §1125(a), false designation of origin and

---

[1] Defendant also asks the Court to dismiss the several other claims that Plaintiff has vaguely asserted as alternative theories of liability for its trademark and copyright allegations.

trade dress infringement under 15 U.S.C. §1125(a), and unfair methods of competition under

chapter 93A of the Massachusetts General Laws.  Defendant timely filed its Answer and asserted

counterclaims against Plaintiff for invalid registration of trademark on the basis of genericness of

mark and fraud under 15 U.S.C. §§1064 and 1119, violation of the Sherman Act, 15 U.S.C. §2,

and unfair business practices under chapter 93A of the Massachusetts General Laws.

## ISSUES PRESENTED

I.    Whether Count 3 of Plaintiff's Amended Complaint for trademark infringement is based
      upon a claim of trademark in a generic term and therefore must be dismissed.

II.   Whether CPE's commercial use of the term "Wool Felt" bears virtually no resemblance
      to Plaintiff's design mark so that Count 2 of the Complaint for trademark infringement is
      also frivolous and must be dismissed.

III.  Whether there is any similarity between the parties' respective expressions of instructions
      for boiling wool felt except that required by the concepts necessarily conveyed by the
      instructions, so that this Court must also dismiss Count 6 of the Amended Complaint for
      copyright infringement.

IV.   Whether there is any evidence of infringement by CPE of Nonwovens' asserted copyright
      in "Franny's Features" so that Count 7 of the Amended Complaint also is frivolous and
      must be dismissed.

V.    Whether the remaining Counts 1, 4, 5 and 8 of the Amended Complaint are based upon
      vague and frivolous allegations and must be dismissed.

## STATEMENT OF FACTS TO WHICH THERE IS NO MATERIAL DISPUTE

Description of Wool Felt

Plaintiff's allegations in this litigation are focused on Defendant's use of the term "wool

felt."  See Amended Complaint, ¶¶5-14.  Wool felt is a non-woven fabric that is formed naturally

when sheep's wool is subjected to heat, moisture and pressure or agitation.  See *What is Wool*

*Felt?*, FeltCrafts, available at http://www.feltcrafts.com/history.htm (last viewed Oct. 15, 2004).

It may be our oldest textile material, see *The History of Felt Hats and Hat Making*, The Hat Site,

available at http://www.thehatsite.com/felt.html (last viewed Oct. 15, 2004),[2] and it continues to

---

[2]   Archaeological evidence shows that, long before humans learned how to spin and weave yarn, they had learned
      how to make and use wool felt.  See, e.g., *What is Wool Felt?*, FeltCrafts, available at

be used throughout the world.[3]  In the United States, wool felt has been marketed and used for a

vast variety of purposes.[4]  For example, according to its web site, Country Gentleman has,

"[s]ince its inception in 1921, . . . produced a complete line of headwear including wool

felt . . . ."[5]  There also are wool felt saddles, such as the "Wool Felt Deluxe" produced by

SaddleRight;[6] "Pressed Wool Felt" for noise and vibration control;[7] "wool felt plugs" in the steel

industry;[8] "Wool Felt Stocking Kits" by Martha Stewart;[9] and "Stegmann Wool Felt Clogs" for

footwear.[10]  These are but a tiny sample of what can be found by a simple search for "wool felt"

on the internet.

Nonwovens' Wool Felt Products

        Plaintiff apparently does not know when it first used the term "wool felt" in connection

with any product that it has marketed or sold.  See Attachment A, *Plaintiff's Response to*

*Defendant's First Set of Interrogatories*, Response to Interrogatory 6 (Aug. 16, 2004).  Its

internet site, however, claims that National Nonwovens originated in 1905 "as a manufacturer of

wool felt" for use in apparel and home furnishings.  See *National Nonwovens*, Company Profile,

at  http://www.nationalnonwovens.com/compny.htm (last viewed Oct. 15, 2004).  The company

---

    http://www.feltcrafts.com/history.htm (last viewed Oct. 15, 2004) (discussing, *inter alia*, evidence of wool felt as
    far back as 6500 B.C.).
[3]  See, e.g., *What is Wool Felt?*, FeltCrafts, available at http://www.feltcrafts.com/history.htm (last viewed Oct. 15,
    2004) (discussing use of wool felt yurts in Mongolia; *Mother Earth News*, "Tipis and Yurts," Sturdy Yurts (Dec.
    2002), available at http://www.findarticles.com/p/articles/mi_m1279/is_2002_Dec/ai_94672193 (last viewed
    Oct. 15, 2004) (use of wool felt in Turkey, South Central Asia, Scandinavia and Russia
[4]  Including military purposes.  See, e.g., *Picketts's Mill Living History Standards (Civil War Military)*,
    Confederate Enlisted Man standards, available at http://www.geocities.com/Athens/Rhodes/8540/standards.html
    (last viewed Oct. 15, 2004) (discussing use of wool felt in military uniforms since at least the Civil War and
    through World War II.; *WWII Living History / Militaria / Research*, Quartermaster Supply Catalogue (1946),
    available at http://hometown.aol.co.uk/hayleymo/1946QMCatalogFootwear.html (last viewed Oct. 15, 2004)
    (showing wool felt shoes available to the Womens Army Corps ("WAC") and the Army Corps Nurses).
[5]  See Country Gentleman, http://www.countrygentleman.com/history.htm, (last viewed Nov. 4, 2004).  On
    November 4, 2004, a search for the exact phrase "wool felt hat" on Yahoo returned 913 hits.
[6]  See http://www.saddleright.com/felt_dlx.html (last viewed Nov. 4, 2004).
[7]  See http://www.smallparts.com/products/descriptions/felt.cfm (last viewed Nov. 4, 2004).
[8]  See usfelt.com at http://www.usfelt.com/steel.html (last viewed Nov. 6, 2004).
[9]  See marthastewart.com, www.marthastewart.com/page.jhtml?type=product&id=product21253&site=&rsc=  (last
    viewed Nov. 4, 2004).
[10]  See Pedestrian Shops, http://www.comfortableshoes.com/item_preview.cfm?ID=86 (last viewed Nov. 4, 2004).

now claims to be "the largest manufacturer of wool felt in the United States today . . . ."  See id.,

Products, at http://www.nationalnonwovens.com/products.htm (last viewed Oct. 15, 2004).[11]  We

understand that, until CPE entered the market, Nonwovens was the only bulk commercial

supplier of wool felt in the United States, although there were commercial manufacturers of the

product elsewhere, including in Mexico, Germany and Spain.

Plaintiff's Efforts to Claim "Wool Felt" As a Trademark for Its Wool Felt

In November of 1984, Plaintiff, then known as Commonwealth Felt Co., applied to the

United States Patent and Trademark Office ("USPTO") for registration of the trademark and

design shown in Attachment B.  The word portion of that mark is "WoolFelt There's nothing like

the real thing."  The application was denied registration on the Principal Register because the

USPTO determined that the mark, when applied to the goods it designated, was merely

descriptive of those goods.  See Attachment C, correspondence from USPTO to John Welch

(Jan. 29, 1985).[12]  Plaintiff then amended its application for registration on the Supplemental

Register rather than the Principal Register.  Registration on the Supplemental Register became

effective as of March 4, 1986.  See Attachment B.

In Plaintiff's application for that trademark, it identified the goods to which the trademark

was to apply as "wool felt."  See Attachment E.  This statement was in compliance with the

requirement of section 1402.01 of the Trademark Manual of Examining Procedure ("TMEP")

that the identification of goods in the application "should set forth common names, using

terminology that is generally understood."  The trademark registration ultimately issued for

goods described as "wool felt."  See Attachment B.  Plaintiff also expressly stated at the time

---

[11]  It currently sells eleven styles of wool felt products.  See Attachment A, Plaintiff's Response to Defendant's First Set of Interrogatories, Response to Interrogatories 13 and 14 (Aug. 16, 2004).  These products range from 20% to 100% wool content, although its 100% wool felt product is available only upon special request.  See National Nonwovens, WoolFelt, at http://www.nationalnonwovens.com/Applications/craft/woolfelt.htm (last viewed Oct. 15, 2004).

[12]  That decision was made final by correspondence dated August 26, 1985.  See Attachment D.

that "no claim is made for the exclusive right to use 'wool felt', apart from the mark as shown." See Attachment B.

Subsequently, in June of 1996, Plaintiff applied to the USPTO for, and later received, registration of the term WOOLFELT for "fabric, namely, felt consisting of wool in Class 24." See Attachment F. The application was for the typed word mark "WOOLFELT," and thus, as a word mark, capitalization was irrelevant, such that the application encompassed "woolfelt," "WoolFelt," and "WOOLFELT" for purposes of trademark analysis. See TMEP §1207.01(c)(iii) (rights associated with a mark in a typed form reside in the wording and not any particular display).

CPE's Wool Felt Products

CPE, through its predecessors, has long been involved in the felt industry, initially selling primarily synthetic craft felt and industrial felt. It was only in the fall of 2003 that it entered the wool felt market. See Attachment H, *Defendant's Response to Plaintiff's First Set of Interrogatories*, Response to Interrogatories 6, 7, and 8. It currently markets just two types of wool felt: Classic Wool Felt and Imperial Wool Felt.[13] Marketing materials for these two products are shown in Attachment I.

The Litigation

Virtually immediately upon CPE's entry into the wool felt market last fall, Nonwovens threatened to bring litigation against CPE for its use of the term "Wool Felt" in connection with its products. By letter dated November 10, 2003, counsel for Nonwovens informed CPE's President that Nonwovens was "the owner of the entire right, title and interest in and to the trademark 'WOOLFELT' . . . ." and opined that "[CPE's] particular use of the mark 'Classic

---

[13] See *CPE: The Felt Company*, Classic Wool Felt, at http://www.cpe-felt.com/felt_wool_prod_classic.html and *id.*, Imperial Wool Felt, at http://www.cpe-felt.com/felt_wool_prod_imperial.html (last viewed Oct. 15, 2004). CPE's Classic Wool Felt consists of 40% wool and 60% rayon, while its Imperial Wool Felt is 100% wool. *Id.*

Wool Felt' is an infringement of [Nonwoven's] federally protected trademark rights."  <u>See</u> Attachment J.  "Accordingly," warned Nonwovens' counsel, "we demand that you cease and desist from any further use of the mark 'Classic Wool Felt' or we will be forced to advise our client to take appropriate action against your company for trademark infringement and unfair competition."  <u>Id.</u>  Nonwovens' counsel made no mention of copyright, wool felt washing instructions, or sheep.

Counsel for CPE responded by letter dated December 8, 2003.  <u>See</u> Attachment K.  In that letter, CPE's counsel pointed out that no party could have exclusive rights in the generic term "wool felt," that a Google search of the term "wool felt" generated approximately 22,000 results, and that even Nonwovens uses the term "wool felt" to refer generically to its products. <u>See</u> <u>id.</u>

Nonwovens nonetheless filed the Complaint in this matter on April 20, 2004 (amended on May 27, 2004), alleging trademark infringement and the related claims of unfair competition and false designation of origin.  Nonwovens also, for the first time, asserted claims for copyright infringement and trade dress infringement.  Nonwovens initiated this litigation without any knowledge of any party ever being confused by CPE's use of the term "Wool Felt" in any form,[14] and without any evidence that it had been actually damaged by CPE's use of the term

---

[14]  Nonwovens' Vice President of Corporate Administration testified as follows.

Q. Do you know of any occasion on which any party has expressed to you or anyone at Nonwovens that the party was confused about -- confused as a result of CPE's use of the classic wool felt term?

A. No.

Q. Do you know of any occasion in which any party has expressed to you or to National Nonwovens that the party was deceived by CPE's use of the term or mark classic wool felt?

A. Not to my knowledge.

Q. Do you know of any occasion on which any party was confused or deceived -- do you know of any occasion in which any party has expressed to you or anybody at National Nonwovens that it was confused or deceived by CPE's use of the term or mark imperial wool felt?

A. Not to my knowledge.

Q. Do you know of any occasion in which any party expressed to anybody that the party was confused or deceived by CPE's use of the term wool felt.

6

Wool Felt, except any harm theoretically arising from CPE's use of the term "Wool Felt" to

market wool felt.[15]  As discussed below, Plaintiff's claims in this action are frivolous.

## ARGUMENT

I.  **Count Three of Plaintiff's Complaint Is Based Upon A Claim Of Trademark In A Generic Term and Therefore Must Be Dismissed.**

A.  **A Generic Term Cannot Be A Trademark.**

The function of a trademark is to identify and distinguish the goods or services of one

party from the same type of goods or services of another.  15 U.S.C. § 1127 (defining

"trademark").  A trademark can be fanciful, arbitrary, or suggestive, or, if secondary meaning of

the mark can be shown, "descriptive."[16]  See generally 2 J. THOMAS MCCARTHY, MCCARTHY ON

TRADEMARKS AND UNFAIR COMPETITION, § 11.1 (2004) (hereinafter, "McCarthy").  A generic

---

MR. DIONNE:  Objection.  Only because you're saying did any party express to anybody?
MR. DUDA:  I'm just asking for her personal knowledge.
MR. DIONNE:  Okay.
Q. (BY MR. DUDA)  Your personal knowledge of whether any party has expressed to any other party that it was deceived or confused by CPE's use of the term wool felt?
A. Not to my knowledge.

Exh. L, Deposition of Michalina Centofanti ("Centofanti Depo.") at 112-14.

[15]

Q. (BY MR. DUDA)  Could you please describe how Nonwovens was damaged by CPE's use of the term wool felt?
A. By just the term wool felt.
Q. By its use of the term wool felt?
A. By its use of the term wool felt, it is causing our customers and consumers to believe or possibly believe that the product that they are purchasing from CPE is manufactured and it is our wool felt product.
Q. What evidence do you have of that?
A. The evidence is that we have used the term wool felt to identify our felted wool product in a specific market, promoted that product as wool felt.  It is identified out there, designers, customers, consumers identify wool felt and National Nonwovens' felted wool.  When they see another product come out and it is not under a different product name and they see the words wool felt, that can cause them to think that that is our product when it is not and we have no right in terms of the quality of the product.  We don't – can't guarantee anything about CPE's product.  It's not our product.
Q. Do you have any -- other than what you just said in terms -- I understand your rationale, but do you have any evidence of any such damages by National Nonwovens -- or that National Nonwovens has suffered?
A. No.

Centofanti Depo. at  116-17.
[16] To be a valid trademark a "descriptive mark must have taken on a "secondary meaning" such that the public recognizes the mark as identifying a particular product or service rather than describing that service or product generally.  See Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 795 (5th Cir. 1983).

7

term, on the other hand, "is the common descriptive name of a class of goods or services" and

cannot be a trademark under any circumstances.  *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire*

*Chiefs, Inc.*, 782 F.2d 987, 989 (Fed. Cir. 1986).[17]  That is, "'Generic marks' are accorded no

protection at all . . . ."  *Larsen v. Terk Techs. Corp.*, 151 F.3d 140, 148 (4th Cir. 1998).[18]

      The Supreme Court thus long ago established the rule that the generic name of an item is

in the public domain and free to use by anyone.  See *Holzapfel's Compositions Co. v. Rahtjen's*

*Amer. Composition Co.*, 183 U.S. 1, 8-9 (1901); see also *Kellogg Co. v. Nat'l Biscuit Co.*, 305

U.S. 111, 119 (1938) ("Like every other member of the public, [Defendant] was, and remained,

free to make shredded wheat when it chose to do so; and to call the product by its generic

name.").  If a court were to hold otherwise, "a grant of trademark status could effectively prevent

a competitor from marketing a product with the same characteristic despite its right to do so

under the patent laws," *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 306 (3d Cir. 1986),

contrary to the principles underlying the prohibition against monopolizing, or attempting to

monopolize, trade in a product.  See 15 U.S.C. §2 (1997); see also *CES Publ'g Corp. v. St. Regis*

*Publ'ns*, 531 F.2d 11, 13 (2d Cir. 1975) (Friendly, J) (To allow a party exclusive trademark

---

[17]  "[T]he name of a product or service itself – what it is – is the very antithesis of a mark.  In short, a generic name of a product can never function as a trademark to indicate origin" or to "identify and distinguish the products of only one seller."  *McCarthy on Trademarks*, (hereinafter *McCarthy*) §12.1 at 12-4, 12-5.  Thus, there is "no basis" for applying the principle of "secondary meaning" to generic terms.  See *Kellogg Co.*, 305 U.S. at 118.

[18]       Generic terms are unregistrable, not because they are "merely descriptive," but because they are not trademarks to begin with.  A trademark, by definition, must be used "to identify [the owner's] goods and distinguish them from those manufactured or sold by others."  Obviously, the "common descriptive name" of the goods cannot distinguish those goods from those made and sold by others.  For whoever makes or sells them, they bear the same "common descriptive name."

Anthony Fletcher, "Actual Confusion as to Incontestability of Descriptive Marks," 64 Trademark Rep. 252, 260-61 (1974) (citations omitted).  "No amount of purported proof that a generic term has acquired a secondary meaning associating it with a particular producer can transform that term into a registrable trademark."  *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 374 (1st Cir. 1980); see also *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct 2753 (1992) (generic terms should never properly be registered as a trademark); *Restatement (Third) of Unfair Competition* sec. 15, comment a (1995) (Generic terms "are not subject to appropriation as trademarks at common law and are ineligible for registration under state and federal trademark statutes.").

rights in a generic name "would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are."); *McCarthy*, § 12.1 at 12-6 ("Clearly, one seller cannot appropriate a previously used generic name of a thing and claim exclusive rights in it as a 'trademark' for that thing.").

Registration of a mark with the USPTO does *not* establish that a term is not generic. "[R]egistration does not create the underlying right in a trademark.  That right, which accrues from the use of a particular name or symbol, is essentially a common law property right . . . ." *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 (1st Cir. 1980).  Therefore, although a federal registration is prima facie evidence that the mark is not generic, the presumption "bursts" once the defendant presents sufficient evidence of the generic nature of the mark.  See *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938 (7th Cir. 1986) (affirming summary judgment that federally registered mark "Liquid Controls" is generic).[19]

**B.      "Wool Felt" is the Generic Term for Wool Felt.**

A generic word is "one that 'refer[s] to the genus of which the particular product is a species,'" without distinguishing its origin.  See *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *S. S. Kresge Co. v. United Factory Outlet, Inc.*, 598 F.2d 694, 696 (1st Cir. 1979).  That is, "[g]eneric marks give the general name of the product; they embrace an entire class of products."  *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047, n.8 (9th Cir. 1998) (citing *Liquid Controls* as an example of a generic term for dispensing and mixing liquids).

---

[19]  As the court stated in *Liquid Controls*:  "Plaintiff seems to argue that the registration of the term is evidence of nongenericness and therefore raises a genuine issue of material fact that prevents summary judgment.  We believe, however, that the presumption "bursts" once the defendant presents sufficient evidence of genericness and thus cannot in itself prevent the grant of summary judgment in this case."  *Liquid Controls*, 802 F.2d 938.  If the mark is not federally registered, the defendant need only raise genericness as a defense and the burden then shifts to the plaintiff to establish that the mark is not generic.  See *McCarthy*, §12.12 at 12-30 and n. 5 and cases cited therein.

A trademark "answers the buyer's questions 'Who are you?  Where do you come from?'

'Who vouches for you?'  But the name of the product answers the question 'What are you?'"

*McCarthy*, § 12.1 at 12-5.[20]  The "What are you – Who are you?" test has been described as

"[t]he clearest test for genericness," <u>see</u> *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F.Supp.

571, 581 (D.N.J. 1985), and has been applied by numerous Circuit Courts of Appeals.  <u>See</u>, <u>e.g.</u>,

*Society of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners*, 41 F.3d 223, 227 (5th Cir.

1995); *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1147 (9th Cir.

1999).  The Federal Circuit, the Court of Appeals that hears all appeals in trademark registration

matters, and the USPTO have applied this test as a two-part inquiry.  First, a court must

determine what is the "genus of goods" – that is, the class of goods – identified by the mark.  <u>See</u>

*H. Marvin Ginn Corp.*, 782 F.2d at 990.  Second, the court must determine whether the term is

"understood by the relevant public primarily to refer to that genus of goods or services."  *Id.*;

<u>accord</u> *TMEP* §1209.01(c)(i).  The relevant date by which to assess genericness is the date on

which the alleged infringer entered the subject term into the market in association with its

product.  <u>See</u> *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 120, n.3 (2d Cir.

2001).  In this matter, Plaintiff alleges that CPE entered the market "on or about October 2003."

Complaint at ¶ 14.

Under the "Who are you – What are you?" test as developed by the Federal Circuit, or by

any other rational measure, "Wool Felt" clearly is generic.  First, one cannot dispute that the

genus of the product that both Nonwovens and CPE sell is wool felt.  That is *what* it is.  The term

"wool felt" does not tell any consumer about *who* is the supplier of the product.  Simply, the

---

[20]  *McCarthy* analogized the distinction to where a person is asked "Who are you?"  It was there noted that, if the
person answers, "'I am a human, homo sapiens,' he is not telling the questioner *who* he is, but *what* he is."
*McCarthy* § 12:1 at 12-5.  "He has answered by giving his generic identification – not a name by which he can be
identified and distinguished from all other beings within that genus.  So it is with the buyer who unconsciously
asks the product, "Who are you?"  *Id.*

answer of each party to the question, "W*hat* do you sell?" is, simply, "wool felt."  Indeed, it is difficult to conceive of another term by which to identify the product.[21]

The second part of the test -- to what class of goods or services does the relevant public understand the designation primarily to refer -- can be shown by indirect evidence such as the manner in which the term is used in the media.  See, e.g., *Keebler Co.*, 624 F.2d at 375 (citing *Dan Robbins & Assocs., Inc. v. Questor Corp.*, 599 F.2d 1009, 1014 (C.C.P.A. 1979) (citing listings in trade journals, newspapers, and other publications as useful evidence)); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 12 (2d Cir. 1976) (relying on advertisements to establish genericness of term); *Birtcher Electro Medical Systems, Inc. v. Beacon Labs., Inc.*, 738 F. Supp. 417, 421 (D. Colo. 1990) (use in professional journals as a generic term).  Such use by the media can be a "strong indication of the general public's perception" that the term is a generic name.  *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989).[22]

---

[21]   Defendant has suggested "felted wool," but it appears that "felted wool" refers to a different product:

> Felted wool is made from a wool or wool blend *woven* fabric that has been processed causing the fibers to shrink and wrap more tightly around each other, making a denser fabric. . . .
> Wool felt is a *nonwoven* blend of wool and other fibers that are matted together with a process using heat, pressure and chemicals.  True felt doesn't use any bonding agents - the fibers matte together from friction and pressure.  The resulting fabric isn't as strong as felt made from woven fabric, but it's strong enough to be used for clothing.

SewNews at http://www.sewnews.com/library/sewnews/qa/aaqa0303c.htm (last viewed Nov. 4, 2004).

[22]   Consumer surveys are not useful with respect to a common term that has been appropriated by one commercial interest.  "[E]ven if a large number of customers associate a single seller with the generic name of a product, this does not give that seller an exclusive right to call that product by its name."  *McCarthy*, §12.11 at 12-28.  In this respect, even if consumer surveys show that the vast majority of consumers associate a generic term with an individual producer or service provider, no trademark rights are suggested: "All that it demonstrates is that a likely response to any generic word is the name of the best known producer or manufacturer of that product." *Eastern Air Lines, Inc. v. New York Air Lines, Inc.*, 559 F. Supp. 1270, 1275 (S.D.N.Y. 1983); see also *Hunt Masters, Inc. v. Landry's Seafood Rest., Inc.*, 240 F.3d 251,254-55 (4th Cir. 2001) (survey results showing consumer association of "Crab House" with a particular restaurant is irrelevant because consumer understanding test is not relevant to a term commonly used prior to its appropriation by plaintiff).  "[T]here is no need for a survey if other evidence overwhelmingly proves that the disputed designation is a generic name."  McCarthy, §12.15 at 12-37 (citing Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 407 (6th Cir. 2002) ("Thus, the overwhelming evidence in this case obviates the need for [defendant] to have conducted a consumer survey.")).

Overwhelming evidence shows that the relevant public clearly has understood that the term "wool felt" refers, not to any particular brand of product, but simply to the type of product itself.[23]  Attachment M to this brief presents a partial listing of the plethora of media articles identified by a Nexis search of publications that used the term "wool felt" generically in the 1980's  and the 1990's to identify wool felt.[24]  As can be seen, examples of the use of the term "wool felt" generically for wool felt during this period are diverse and abundant.  See id.[25]

The term "Wool Felt" continues to be used just as widely to identify wool felt and to market diverse types of wool felt items.  There are thousands of examples: a Google search for the exact term "Wool Felt" returns over 78,000 hits as of November 12, 2004.  See Attachment N.  These include the "The Wool Hat Trilby," "Wool Felt Deluxe" saddles, "Pressed Wool Felt" for noise and vibration control, "wool felt plugs" in the steel industry, "Wool Felt Stocking Kits"

---

[23]  Whether "wool" is considered an adjective modifying "felt" is not relevant.  Certain adjectives or other arguably "descriptive" terms communicate functional information in such a manner as to be generic when it names "some distinctive characteristic of that genus of product."  McCarthy § 12.10 at 12-24.  Perhaps the most well-known of the generic adjectives are "Light Beer" and "Lite Beer."  See Miller Brewing Co. v. Jos. Schlitz Brewing Co., 605 F.2d 990, 997-98 (7th Cir. 1979) ("Lite" registration cancelled).

[24]  These include the "Loden green wool felt hat," a "wool felt hat," "washable wool felt diaper covers," "blanket-sized pieces of wool felt that Joan Livingstone had painted," "wool felt 'Arctic' hats," dolls made of "wool felt," and "Eloise in this little wool felt boater."  These also include an article referencing a "stockier wool felt [that] comes from Pennsylvania" and the use of "dense wool felt" to improve acoustics at Carnegie Hall.  See also Beverly Gordon, Shaker Textile Arts 198 (Univ. Press of New England 1980) (noting that an 1813 account from the Soviet Union of "naped hats" was "probably wool felt").

[25]  As discussed above, in 1984, Plaintiff's then President, in connection with the filing of the application for its first trademark, swore that "no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake or to deceive . . . ."  See Attachment E, trademark application with affidavit of Herbert Goldberg (Nov. 6, 1984).  In 1996, in connection with the filing of the application for the WOOLFELT trademark, Plaintiff's President and Chief Executive Officer again swore that "no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake or to deceive . . . ."  See Attachment G, trademark application with affidavit of Anthony J. Centofanti (June 19, 1996).  As the above discussion shows, in or about both 1984 and 1996, there were hundreds, and probably thousands, of  parties using the term "Wool Felt" in association with a variety of products.  See, e.g., Attachment N.  To the extent Plaintiff believes that the use of the term "Wool Felt" by Defendant or others does, in fact, cause confusion with each of its registered trademarks, Plaintiff's above quoted sworn statements were knowingly false.  Defendant does not assert its claim of fraud on the Trademark Office at this time, however, because of the overwhelming evidence that the mark should be cancelled on the basis of genericness alone.

by Martha Stewart," and "Stegmann Wool Felt Clogs" discussed earlier.  See note 5-10, *supra*.

There also is "Pressed Wool Felt" for industrial applications from the Sutherland Felt

Company;[26] "Chalkboard Eraser Wool Felt" from the Quartet Manufacturing Company;[27] the

"Wool Felt Amanda Hat";[28] the "Wool-felt Woodsman Crusher Hat"; and many other products.[29]

See Attachment N.  There are instructions for  "How to Make a Large Flat Piece of Wool

Felt . . . ."[30]  Indeed, "wool felt" even is an industry category for purposes of financial analysis

profiles.[31]

      Plaintiff's own treatment of the term "Wool Felt" further proves its genericness.  First, all

the hundreds, and perhaps thousands, of commercial uses of "wool felt" by others have gone

unchallenged by Plaintiff.  See Centofanti Depo. at 62 (no challenges to use of any form of

"wool felt" by any party except Defendant).  This, itself, can show the generic character of the

term.  See *E. I. Du Pont de Nemours & Co. v. Yoshida Int'l, Inc.*, 393 F.Supp. 502, 528

(E.D.N.Y. 1975) (factor indicating genericness may be "a considerable period of acquiescence

by the trademark owner in generic use").  Second, the use of the term by Plaintiff in its own

advertising shows the same understanding that "wool felt" is a generic term.  For example,

Plaintiff's internet site claims that National Nonwovens "originated as a manufacturer of wool

felt . . . ."  See *National Nonwovens*, Company Profile, at http://www.nationalnonwovens.com/

compny.htm (last viewed Oct. 15, 2004).  The company also claims to be "the largest

manufacturer of wool felt in the United States today . . . ."  See National Nonwovens, Products,

---

[26]  See http://www.slfco.com/pressed.htm (last viewed Nov. 6, 2004).

[27]  See Educational Resources, http://www.edresources.com/ProductInfo.aspx?itemid=170853 (last viewed Nov. 6, 2004)

[28]  See FredaL.A.com, http://fredala.com/wofeamhat.html (last viewed Nov. 6, 2004)

[29]  See Lexington Outdoors, www.predatorpee.com/Merchant2/merchant.mv?Screen=CTGY&Store_Code=LE&Category_Code=BUG (last viewed Nov. 6, 2004).

[30]  See http://www.gfwsheep.com/flatfelt/flatfelt1.html (last viewed Nov. 10, 2004).

[31]  See BizMiner, www.bizminer.com/3_order4.asp?groupID=43&industryID=406&subID= 1828&SIC=2353%2E9903 (offering "industry-wide version of "Financial Analysis Profiles" for, inter alia, "fur felt" and "wool felt")

at http://www.nationalnonwovens.com/products.htm (last viewed Oct. 15, 2004). See also

Attachment O.[32]  A search conducted on Google for the term "WOOLFELT" (one word)

returned the following statement from National Nonwovens' own web site, listed on the first

page of the 5,300 hits, which uses three variations of the generic term "wool felt":  "National

Nonwovens **Wool Felt -- WoolFelt** is the original **wool felt**." See Attachment P.  Compare

*Turtle Wax, Inc. v. Blue Coral, Inc.*, 2 U.S.P.Q.2d (BNA) 1534 (T.T.A.B. 1979) (persuasive

evidence of genericness provided by plaintiff's own use of the term in a generic, non-source

indicating manner); *Birtcher Electro Medical Sys.,* 738 F. Supp. at 420 (use of "Argon beam

coagulator" as a noun by proponent of trademark status evidence of generic significance);

*Pilates, Inc. v. Current Concepts, Inc.*, 120 F.Supp. 2d 286, 299 (S.D.N.Y. 2000) (use by

plaintiff and its predecessors of term "Pilates" in a generic sense to name a method of exercise

and type of equipment).[33]

Plaintiff also admitted that "Wool Felt" is generic in its application for trademark of the

slogan and design: "WoolFelt – There's Nothing Like The Real Thing."  In its application for

registration of that mark, Nonwovens identified the goods to which the trademark was to apply

as "wool felt."  See Attachment E.  This statement was in compliance with the requirement of

section 1402.01 of the Trademark Manual of Examining Procedure that the identification of

goods in the application "should set forth *common names*, using terminology that is generally

---

[32]  At least one court has indicated that a form of estoppel arises if a party consistently and publicly uses a term in its generic sense and then attempts to claim trademark status for the term.  See *BellSouth Corp. v. White Directory Publishers, Inc.*, 42 F. Supp. 2d 598, 610 n. 5 (M.D.N.C. 1999) (AT&T's use of the "Walking Fingers" logo).  These "generic adjectives" cannot be trademarks.  See *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 80 (7th Cir. 1977) (an adjective can be a generic term).

[33]  It is immaterial how many times Nonwovens has used the term "wool felt" as a trademark for its products.  One party "cannot appropriate a generic name of a thing and take it out of the public domain, merely by use and advertising, to be a trademark for that thing."  *McCarthy*, §12.10 at 12-26.  "No manufacturer can take out of the language a word, even a slang term, that has generic meaning as to a category of products and appropriate it for its own trademark use."  *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 810 (2d Cir. 1999) (holding that "HOG" is a generic name for a large motorcycle and could not be appropriated as a trademark).

14

understood."  "Common name" means the generic term for the product.  See, e.g., *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985) (a "generic mark is the common name of a product or service"); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996) ("generic terms are the common name of a product or service itself"); *Banff, Ltd. v. Federated Dep't Stores, Inc.,* 841 F.2d 486, 489 (2d Cir. 1988) ("a generic term is a common name").  Therefore, by stating in its registration application that "wool felt" was the "common name" for the product identified by its trademark, Plaintiff admitted as early as 1984 that "wool felt" was the generic term for that product.[34]

## C.    Joining Of The Individually Generic Words WOOL And FELT Lends No Additional Meaning To The Terms, So That The Compound Term WOOLFELT Is Also Generic.

Merely combining the two words of a generic term by removing the space between them rarely, if ever, creates a non-generic term.  To the contrary, where individual generic words are combined into a compound word, the compound word will still be found to be generic if "the joining of the words lends no additional meaning to the term."  *McCarthy*, §12:39 at 12-96.

The Federal Circuit has thus ruled that "SCREENWIPE" is a generic composite name for a cloth that cleans television and computer screens.  See *In re Gould Paper Corp.*, 834 F.2d 1017, 1018 (Fed. Cir. 1987).  The court in that matter noted that the Trademark Board had found that "wipe" was simply a common, generic term for wiping or cleaning cloths.  *Id.*  The court

---

[34]  Even if there were another term by which to identify "Wool Felt," that would be irrelevant.  When there is more than one generic name for a product, *all* of the generic names remain in the public domain.  See *In re Sun Oil Co.*, 426 F.2d 401 (C.C.P.A. 1970); see also *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.* 205 F.3d 137, 141 (4th Cir. 2000) ("ale house" is a generic name even though it is one of several names, such as "pub," "bar," and "lounge," for places that serve beer); *Loctite Corp. v. Nat'l Starch & Chemical Corp.*, 516 F. Supp. 190, 201 (S.D.N.Y. 1983) (fact that there are generic names other than "Super Glue," such as "Instant Glue" or "Ten Second Glue" does not preclude generic status); accord *S. S. Kresge Co.*, 598 F.2d at 696 ("The question . . . is not whether a term is more frequently chosen colloquially than any of its synonyms, but whether it still retains its generic meaning.").  Therefore, even if there were another practical way to identify "Wool Felt," which is doubtful, that would not affect the rather obvious conclusion that, because the term identifies *what* the product is – "wool felt" –  it is generic.

then went on to state that "because [the applicant's] wipes are used on television and computer

screens, and the combination of "SCREEN" and "WIPE" does not render [the] mark unique or

incongruous, the common descriptive aspect of [the] mark is not lost in the combined form." *Id.*

> Nothing is left for speculation or conjecture in the alleged trademark. The
> compound immediately and unequivocally describes the purpose, function and
> nature of the goods as [Appellant] itself tells us.

*Id.* at 1019. The court thus reasoned that the purported trademark owner had "simply joined the

two most pertinent and individually generic terms applicable to its product, and then attempt[ed]

to appropriate the ordinary compound thus created as its trademark." *Id.* As a result, "the terms

remain as generic in the compound as individually, and the compound thus created is itself

generic." *Id.*

The Trademark Trial and Appeal Board reached a similar conclusion regarding the

compound word "RUSSIANART." <u>See</u> *In re A La Vieille Russie, Inc.*, 2001 WL 862510, at *7

(T.T.A.B. 2001). In doing so, the Board applied two principles. First, where the term is a

compound word formed by the union of words, the term may be generic if evidence shows that

"the public understands the individual terms to be generic for a genus of goods or services, and

the joining of the individual terms into one compound word lends 'no additional meaning to the

term.'" *Id.* at *4 (quoting *In re Dial-A-Mattress Operation Corp.*, 240 F.3d 1341, 567

U.S.P.Q.2d (BNA) 1807, 1810 (Fed. Cir. 2001)).

> In other words, if the compound word would plainly have no different meaning from its
> constituent words, and dictionaries, or other evidentiary sources, establish the meaning of
> those words to be generic, then the compound word too has been proved generic.

*Id.* at *5. In such a case, "[n]o additional proof of the genericness of the compound word is

required." *Id.* In the case before the Board, the compound term "RUSSIANART" formed by the

union of the generic words "RUSSIAN" and "ART," "would plainly have no different meaning

from its constituent words." *Id.* That is, emphasized the Board, "the words 'Russian art' are not

16

lent any additional meaning simply by virtue of their having been combined into the compound term RUSSIANART." *Id.*

"WOOLFELT" is an even more obvious instance of a combination of two generic words that adds no further distinctiveness to the term. That is, the combined form, "WOOLFELT," means nothing more, is no more "unique or incongruous," and is no less generic than the two words "wool" and "felt" successively presented but separated by a space. Nonwovens simply made a trivial variation to the compound generic term applicable to its product and then attempted to appropriate it as its trademark. See *In re Gould Paper Corp.*, 834 F.2d at 1019.

The genericness of the compound word WOOLFELT is further demonstrated by the extensive use of WOOLFELT by the public as simply another version of WOOL FELT. For example, a search for WOOLFELT on Google recently returned 2,480 hits. See Attachment P.[35] Indeed, at least one party referencing Nonwovens' product failed to recognize the distinction between WoolFelt and Wool Felt, as shown by its reference to National Nonwovens "Wool Felt Swatch Cards." See Colonial Crafts, http://www.colonialcrafts.com/shopcart/woolfelt/nn100.asp (last viewed Nov. 12, 2004).

As the foregoing discussion demonstrates, "WOOLFELT," like its virtually identical

---

[35]   These include, for example, "Stegmann Men's Original Woolfelt Comfort Clog;" "Woolfelt available from Mulberry Folk Art," Mulberry Folk Art, http://www.mulberryfolkart.com/woolfelt.htm (last viewed Nov. 10, 2004); "WOOLFELT" from Barn Cat Primitives, see http://barncatprimitives.com/GENERAL%2038%20woolfelt.htm (last viewed Nov. 10, 2004); "Woolfelt" from De Witte Engel, see http://www.witteengel.nl/stoffen/en_wolvilt.asp (last viewed Nov. 10, 2004) (listed with, *inter alia*, "silk," "flannel," and "elastic terry cloth"); "WoolFelt" as one of a number of categories of patterns, which also include ("Children," "Gear/Pets," "Horse Patterns," "pants," "shirts," http://www.rockywoods.com/patterns_main.htm#WoolFelt (last viewed Nov. 10, 2004); the "Women's Original Woolfelt Comfort Clog," see http://www.shoprankings.com/categories/clothing_apparel/loafers/women-s-original-woolfelt-comfort-clog.html (last viewed Nov. 10, 2004); "WoolFelt Color Swatch Set -- sheet of color swatches for Woolfelt yardage, currently 10 colors available," see http://www.judithm.com/shop/?page=shop/flypage&product_id=4260&category_id=59fd831f8120ef873545a4df7c74a481&PHPSESSID=bcc0400503262dadf9c7ac84099ec95f (last viewed Nov. 10, 2004); and Memere's Garden catalogue page, which, in its discussion under the "WOOLFELT" heading, notes, "There seems to be confusion over the wool and woolfelt." See http://www.memeresgarden.com/html/catalog.htm (last viewed Nov. 10, 2004); (last viewed Nov. 10, 2004).

term "WOOL FELT," is "the common descriptive name of a class of goods or services." See *H. Marvin Ginn Corp.*, 782 F.2d at 989. It thus should be "accorded no protection at all" as an identifier of any particular seller's goods, see *Larsen*, 151 F.3d at 148, and it should never have been allowed registration as a trademark. See *Two Pesos*, 505 U.S. at 768. This Court, therefore, must dismiss Count Three of the Amended Complaint and order that USPTO Registration No. 2,073,811 for the WOOLFELT trademark be cancelled. 15 U.S.C. § 1119.

## II.    CPE's Commercial Use Of The Term Wool Felt Bears No Resemblance To Plaintiff's Design Trademark So That Count Two Of The Complaint Is Also Frivolous and Must Be Dismissed.

Plaintiff's claim that CPE violated the design mark "WoolFelt – There's Nothing Like the Real Thing" by using the terms "Classic Wool Felt" and "Imperial Wool Felt" is without basis whatsoever. Registration of a trademark composed of a generic term combined with distinctive lettering or a distinctive design does not give any exclusive right to the use of the generic term.[36] Rather, the trademark rights are limited to the exact "picture" of the mark in its distinctive design. See *Time, Inc. v. Petersen Publ. Co. L.L.C.*, 173 F.3d 113, 118 (2d Cir. 1999) (trademark rights in the stylized appearance of the words are distinct form rights in the word itself). The trademark rights in such a case are no more than rights in the picture or design presented:

> [O]ne must view such registered composites in the same way that an illiterate person would. For example, to the uninitiated, ancient Egyptian hieroglyphics look like picture writing, whereas in fact, the pictures are symbols that spell out pronounceable syllables. It is with the same perspective that one must view, for example, a registration of a composite of a design and the generic word "computer" in distinctive and fanciful lettering.

*McCarthy,* §12:40 at 12-101.

Registration of a logo containing a generic term, therefore, does not provide the registrant

---

[36] See, e.g., *In re Trail-R-Van, Inc.*, 188 U.S.P.Q. (BNA) 590 (T.T.A.B. 1975) (generic term "TRAIL-R-VAN," when presented a distinctive geometric design, may be part of a registered trademark).

with any rights to prevent others from using the generic term except as specifically used in the trademark logo. Thus, registration of a stylized version of the word "Sweats" gave no right to the registrant to prevent another party from using the term "ULTRA SWEATS." See *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560 (Fed. Cir. 1987). Rather, the registration of the logo protected "only the particular manner in which it displays the word 'sweats.'" *Id.* at 1566.

In this case, the *only* feature that "Classic Wool Felt" and "Imperial Wool Felt" have in common with "WoolFelt – There's Nothing Like the Real Thing" is the term "wool felt."[37] As the foregoing discussion demonstrates, however, Plaintiff does not – and cannot – have trademark rights in the generic term WOOLFELT. Indeed, in its application for this mark, Plaintiff itself expressly disclaimed any rights to the term "wool felt" except as it appeared in the mark. See Attachment B. Most importantly, on its face, neither "Classic Wool Felt" nor "Imperial Wool Felt" looks anything like "WoolFelt – There's Nothing Like the Real Thing," and, as an identifier of the source of wool felt products, could not possibly lead to customer confusion. This Court must therefore dismiss Count Two of the Amended Complaint.

**III.    There Is No Similarity Between The Parties' Respective Expressions Of Instructions For Boiling Wool Felt Except That Required By The Concepts Necessarily Conveyed By The Instructions, So That This Court Must Also Dismiss Count 6 of The Amended Complaint.**

The Plaintiff has also stated claims for copyright infringement, alleging infringement of Nonwovens' instructions for treating wool felt by boiling to create a fleece-like surface, claiming that Defendant's instructions for the same process are a copyright infringement. *See* Amended Complaint, at 10, Count 6. The only similarities between the two sets of instructions, however, are the ideas conveyed by those instructions.

---

[37] Note that Plaintiff's design trademark present "Wool" in white shading and "Felt" in black shading. See Attachment B.

Fundamental to the law of copyright is that it protects expression, *not* ideas. "[M]ere identity of ideas expressed by two works is not *substantial* similarity giving rise to an infringement action." *Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 606 (1st Cir. 1988). Because "[i]deas cannot be copyrighted . . . [a]n artist "can claim to 'own' only an original manner of expressing ideas," not the ideas themselves. *Id.*; see also *CMM Cable Rep., Inc. v. Ocean Coast Prop., Inc.*, 97 F.3d 1504, 1522 (1st Cir. 1996) (holding there is no copyright infringement if similarities between the works arise only because the two parties used the same underlying idea for a radio promotion).

To prevail on a claim of copyright infringement, the plaintiff must show both ownership of a valid copyright in a particular expression and illicit copying of that expression. See *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 36 (2001). Whether there has been illicit copying is a further two-part test. A plaintiff must first prove that the defendant copied the plaintiff's work, either directly or through indirect evidence; and second, the plaintiff must prove that the copying of the specific expression was so extensive that it rendered the infringing and original works "substantially similar." *Id.* at 36. For purposes of this motion, it is not necessary to consider the first part of the test, because a comparison of the works readily shows that there is no "substantial similarity" between any expressive elements of the two wool felt boiling instructions.

In statements of instructions, or of other statements of fact that allow for limited creative expression, determination of copyright infringement first requires "dissection" of the plaintiff's work to identify what is the copyrightable expression within the work. See *CMM Cable Rep.*, 97 F.3d at 1514. "Substantial similarity" between the works is then measured by considering only the uniquely expressive elements, not the work as a whole.

Facts are not creative expression and thus are not copyrightable. *Feist Publ'ns, Inc. v.*

20

*Rural Tel. Serv. Co.*, 499 U.S. 340, 344, 111 S. Ct. 1282, 1287, 113 L. Ed. 2d 358 (1991).

Similarly, content that relates only to a "method of operation" or is "functional" is also not

protectable. *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 816 (1st Cir. 1995) (computer

program menu command hierarchy was method of operation and therefore uncopyrightable);

*CMM Cable Rep.*, 97 F.3d at 1520 (phraseology that communicates a radio promotion's "rules of

the game" is functional and therefore not protectable); *Morrissey v. Proctor & Gamble Co.*, 379

F.2d 675, 678 (1st Cir. 1967) (where the rules of a sweepstakes contest were straightforward and

simple, they were not protected by copyright). Short phrases are also not copyrightable. *CMM

Cable Rep.*, 97 F.3d at 1520; *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th

Cir. 1972) (descriptive language for personal hygiene spray not sufficiently original for

copyright protection). Finally, "[w]hen there is essentially only one way to express an idea, the

idea and its expression are inseparable and copyright is no bar to copying that expression."

*Yankee Candle*, 259 F.3d at 36.[38]  When, after identification of facts, functional information, and

scenes a faire, there remains only limited expressive elements of a work subject to copyright

protection, "the burden of proof is heavy on the plaintiff who may have to show 'near identity'

between the works at issue." *Concrete Mach.*, 843 F.2d at 606-07.

    In this case, we are dealing with instructions for boiling wool felt. As is readily apparent

from a comparison of the parties' instructions, the instructions that Plaintiff claims are infringing

are no more similar to the copyrighted instructions than is required to convey, as both sets of

instructions do, the information about how to successfully complete the task of boiling wool felt

without ruining it. Below are the parties' respective instructions:

---

[38]  A related version of this fundamental principle is "*scenes a faire*," which provides that the similarity of
expression that results from stock scenes or elements necessarily flow from a common idea and is not protectable
expression. *CMM Cable Rep.*, 97 F.3d at 1522, n.25.

| National Nonwovens (Complaint Exh. F)[39] | CPE (Complaint Exh. H) |
|---|---|
| 1.Wet National Nonwovens' WoolFelt® completely in a sink or basin. Do not rub or agitate. Wash each color separately (some dye may be released into the water – this is normal). | Step 1: Completely soak the Classic Wool Felt in cold water. Caution should be used if you wet mixed colors as bleeding may occur. |
| 2. Squeeze by hand to remove as much water as possible. Avoid wringing as it may stretch the material. | Step 2: Remove as much water as possible by squeezing. Do not wring. Wringing may stretch the felt. |
| 3. Place in a standard tumble clothes dryer on regular setting until WoolFelt® is nearly dry (Approximately 35 minutes). Do not over dry. Dry light colors separately from darker colors. Colors may change slightly during drying process, but will return to original shade once completely dry. | Step 3: On a medium setting, dry the Classic Wool Felt until it's almost dry. Dry time approximately 30-35 minutes, depending upon your dryer. Do not over dry. |
| 4. Lay flat to dry completely, smoothing fabric gently by hand. Large wrinkles may be removed by using a light steam iron held just above the surface of the fabric. The Felt can be returned to its original form by pressing with a steam iron.<br><br>. . . .  To avoid future shrinkage upon completion, dry cleaning is recommended. | Step 4: To finish drying, lay flat. Remove any large wrinkles using light steam. Do not lay the iron on the felt, hold just above the surface of the felt.<br><br>Note: Classic Wool Felt can be returned to its original form by ironing with a steam iron. Recommendation: Dry Clean Only after boiling Classic Wool Felt to avoid further shrinkage and color bleeding. |

Any similarity between the two sets of instructions is solely the result of conveying the necessary steps for creating a fleece surface to wool felt, as explained by the National Nonwovens' Rule 30(b)(6) witness. She described at length the elements of the instructions that are necessary to create the textured finish, including that using cold water instead of hot and handling colors separately minimizes bleeding, that squeezing is necessary to remove excess water, that wringing would stretch the fabric, that drying in a clothes dryer helps to bring out the texture, that over-drying will shrink the wool, that drying the fabric flat prevents wrinkles, and that wrinkles can be steamed out. Centofanti Depo. at p. 116-121. After dissecting the Plaintiff's instructions to remove this factual informative content and comparing the two works,

---

[39]  The text of the instructions in Copyright Reg. No. TX 5-869-234 is essentially the same.

it is easily seen that there is little protectable expression remaining and that any similarity between the instructions is only because both works describe the same functional steps.[40] Defendant, therefore, cannot have infringed any copyright that Plaintiff may have in its instructions for boiling wool felt.  Compare *Morrissey*, 379 F.2d at 678-79 (no infringement of contest entry rules).

**IV.    There Is No Evidence At All Of Infringement by CPE Of Nonwovens Asserted Copyright In "Franny's Features" So That Count 7 Of The Amended Complaint Also Is Frivolous And Must Be Dismissed.**

Count 7 alleges infringement of a web page entitled "Franny's Features," see Amended Complaint at 11, although nowhere in the Complaint does the Plaintiff identify what the Defendant has done to infringe the copyright in the work.  See Amended Complaint, ¶¶ 58-63.  Presumably the alleged infringement is of a sheep design, as explained by the National Nonwovens Rule 30(b)(6) witness.  Centofanti Depo. at p. 57 (stating that CPE uses a sheep design copyrighted by National Nonwovens).  If indeed this is what Plaintiff is alleging in Count 7, it is utterly without merit, as no rational fact finder could find that any CPE design infringes National Nonwovens' "Franny."

Without belaboring the point, it is obvious from simply looking at the two designs that they have nothing more in common other than that the subject matter of both is sheep.  *See* Attachment Q (Plaintiff's design of an anthropomorphic sheep wearing an apron and glasses from Amended Complaint Exh. G and Defendant's accused design of a sheep in profile from Amended Complaint Exh. E).  As noted above, "[i]deas cannot be copyrighted."  *Harper & Row, Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 547, 105 S. Ct. 2218, 2224, 85 L. Ed. 2d 588

---

[40]  For example, the parties' respective second steps are as follows:  (Plaintiff)  "2.  Squeeze by hand to remove as much water as possible."  (Defendant) "Step 2: Remove as much water as possible by squeezing."  (Plaintiff) "Avoid wringing as it may stretch the material."  (Defendant) "Do not wring. Wringing may stretch the felt." There are simply no other ways to express the concept of squeezing fabric without wringing and therefore no copyright infringement; the same is true in comparing all of the other steps in the process.

(1985).  Other than that they are sheep, they have no similarity whatsoever.  Defendant has not infringed any copyright in a sheep design.

**V.    The Remaining Counts Are Based Upon Vague And Frivolous Allegations and Must Be Dismissed.**

Plaintiff has made several other ambiguous claims in the remaining counts of its Amended Complaint, all without evidentiary support.  It claims that Defendant's use of "naturally better" in connection with wool felt is a false designation of origin, Amended Complaint at ¶ 44, but does not identify any basis for the claim.  One of Plaintiff's trademark registrations includes the slogan "There's Nothing Like the Real Thing," but no consumer could possibly be confused by that phrase and "Naturally Better."

Natural Nonwovens also complains that Defendant's use of a "ram" design is a "false designation of origin," etc., Amended Complaint ¶ 45, but again does not identify what it is of Plaintiff's that the design supposedly infringes.  Plaintiff has supplied at least five remarkably different sheep designs in its Amended Complaint, *see* Attachment R (compilation of sheep designs from Amended Complaint Exhs. D, F, G), but has provided no evidence that any one of these designs functions as a trademark for Plaintiff or that there is likelihood of confusion.  See *Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994, 1006 (D. Mass. 1988) ("Under [Section 43(a)], plaintiff is required to prove the following three elements to succeed in an infringement suit: (1) the ownership of a distinctive mark entitled to trademark protection; (2) the use of that name in interstate commerce; and (3) its use by another in a manner likely to cause confusion as to the origin of the goods or services.").  Surely there cannot be a false designation of origin simply because two parties use different sheep designs in association with wool.

Plaintiff has also alleged that Defendant wrongfully used packaging, advertisements and

promotional materials "substantially identical to those of Plaintiff."  <u>See</u> Amended Complaint ¶ 50.  Nowhere in its Amended Complaint or discovery has Plaintiff identified a single piece of evidence in support of such a claim, much less made a prima facie case.

Finally, Count 8 is asserted under Mass. Gen. Laws, Title XV, Ch. 93A.  Plaintiff alleges violation of Chapter 93A "[b]y virtue of Defendant's unfair competition, infringement of Plaintiff's trademarks, false designation of origin, infringement of trade dress, and copyright infringement . . . ."  Amended Complaint ¶ 65.  No violation of 93A independent of the trademark, unfair competition and copyright infringement counts has been alleged, however.[41] These have already been shown, above, to be frivolous, and thus judgment for the Defendant on Count 8 should also be entered.

---

[41]  <u>See also</u>  *Liquid Controls*, 802 F.2d at 939-40 (stating that "if a term was generic, use of that term alone could not give rise to an unfair competition claim, even if many people had come to associate the term with the plaintiff,' and rejecting unfair competition and "passing off" claims as alternative theories of liability with respect to a generic term where there was no evidence of actually confusion of fraud.)

## CONCLUSION

For the foregoing reasons, Defendant requests that the Court dismiss all Counts within

Plaintiff's Amended Complaint and that the Plaintiff's Trademark Registration Number

1,385,577 be cancelled.

> Respectfully submitted,
> CONSUMER PRODUCTS
> ENTERPRISES, INC.
> By Its Attorneys:


> _____/s/_____
Dated: November 12, 2004
> James C. Duda
>   BBO No. 551207
> Joshua P. Grey
>   BBO No. 650544
> Bulkley, Richardson and Gelinas, LLP
> 1500 Main Street, Suite 2700
> Springfield, MA 01115
> Tel: 413-781-2820
> Fax: 413-272-6806
> e-mail: jduda@bulkley.com
>         jgrey@bulkley.com