# EXHIBIT L

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 04-30078-MAP
Pages 1-141

NATIONAL NONWOVENS, INC.

vs.

CONSUMER PRODUCTS ENTERPRISES, INC.

---------------------------------------------------
      DEPOSITION OF:  MICHALINA CENTOFANTI
---------------------------------------------------

Taken before Joanne Coyle, Certified
Shorthand Reporter, Notary Public, pursuant
to the Federal Rules of Civil Procedure, at
the offices of Bulkley, Richardson and
Gelinas, LLP, 1500 Main Street, Springfield,
Massachusetts on September 29, 2004,
commencing at 10:11 a.m.

Joanne Coyle
Certified Shorthand Reporter
License No. 106693

PERLIK and COYLE REPORTING
Certified Professional Reporters

1331 Main Street
Springfield, MA 01103
Tel. (413) 731-7931    Fax (413) 731-7451

PERLIK and COYLE REPORTING

2

```
APPEARANCES:


FOR THE PLAINTIFF:

     MCCORMICK, PAULDING & HUBER, LLP
     1350 Main Street
     Springfield, Massachusetts 01103
BY:  ARTHUR F. DIONNE, ESQUIRE and
     NICHOLAS J. TUCCILLO, ESQUIRE




FOR THE ^ DEFENDANT ^ DEFENDANTS:

     BULKLEY, RICHARDSON AND GELINAS, LLP
     1500 Main Street
     Springfield, Massachusetts 01115
BY:  JAMES C. DUDA, ESQUIRE
```

57

```
11:47:19      Q.   Has Nonwovens ever done business with
11:47:25   Hancock Fabrics since you've been involved with
11:47:30   Nonwovens?
11:47:31      A.   Yes.
11:47:31      Q.   Did Nonwovens stop doing business with
11:47:37   Hancock Fabrics more than a year ago?
11:47:38      A.   Yes.
11:47:38      Q.   More than two years ago?
11:47:41      A.   Yes.
11:47:52      Q.   Do you have an understanding why Hancock
11:47:57   Fabrics stopped doing business with National
11:47:59   Nonwovens?
11:47:59      A.   No.
11:47:59      Q.   Have you ever contacted anyone at
11:48:02   Hancock Fabrics -- you, personally?
11:48:05      A.   Yes.
11:48:05      Q.   What was the reason for that contact?
11:48:08      A.   To establish a dialogue to have them
11:48:14   purchase product from National Nonwovens.
11:48:16      Q.   Did they?
11:48:19      A.   No.
11:48:20      Q.   Did you ever talk with anyone at Hancock
11:48:31   Fabrics about CPE -- or Consumer Products
11:48:37   Enterprises?
```

PERLIK and COYLE REPORTING

11:55:22   numbers on the Bate stamps are in response to what
11:55:24   questions.
11:55:24              MR. DUDA:  I guess we need some sort
11:55:26   of a record, maybe a letter -- a brief letter --
11:55:29   number one, Bate stamps number -- something like
11:55:32   that.
11:55:32              MR. DIONNE:  Yes; no problem.
11:55:40       Q.    (BY MR. DUDA)  In response to that last
11:55:45   question, you -- I understood you to distinguish
11:55:49   the use of the word "suggest."  It was a compound
11:55:54   question in that respect so I'll try to narrow it
11:55:58   down even further, then.
11:55:59              Do you know of any documents that show
11:56:02   CPE using the WoolFelt mark in connection with the
11:56:05   sale of any product to Hancock Fabrics?
11:56:09       A.    Not to my knowledge.
11:56:12       Q.    Do you know of any other evidence -- and
11:56:28   we had trouble with "evidence" before.  Other than
11:56:31   documents, do you know of anything else -- I'll
11:56:40   leave it broadly for now -- that shows CPE using
11:56:44   the WoolFelt mark in connection with its marketing
11:56:50   or sale of products to Hancock Fabrics?
11:56:56              MR. DIONNE:  May I -- I think
11:56:58   "documents" is confusing her.

112

```
01:15:30   I can, from your understanding, what it is that
01:15:36   troubles you or troubles Nonwovens about the use
01:15:38   of Classic Wool Felt.
01:15:43           My question is:  You were talking about
01:15:46   the particular use of the mark Classic Wool Felt.
01:15:49   Is it because the term or the mark Classic Wool
01:15:54   Felt is used in connection with CPE's product that
01:15:59   you consider to be a violation of your trademark
01:16:04   rights?
01:16:29      A.   Repeat the question.  I got sidetracked.
01:16:34              MR. DUDA:  Could you read it back?
01:17:19      Q.   (BY MR. DUDA) Well, let me put it:  What
01:17:21   is it that Nonwovens objects to about the use of
01:17:27   Classic Wool Felt by CPE?
01:17:29      A.   That it causes confusion to customers in
01:17:37   that when they purchase Classic Wool Felt they may
01:17:41   think that they are purchasing our wool felt.
01:17:43      Q.   Do you know of any occasion on which any
01:17:57   party has expressed to you or anyone at Nonwovens
01:18:03   that the party was confused about -- confused as a
01:18:10   result of CPE's use of the Classic Wool Felt term?
01:18:14      A.   No.
01:18:17      Q.   Do you know of any occasion in which any
01:18:27   party has expressed to you or to National
```

PERLIK and COYLE REPORTING

113

```
01:18:33   Nonwovens that the party was deceived by CPE's use
01:18:39   of the term or mark Classic Wool Felt?
01:18:45       A.   Not to my knowledge.
01:18:46       Q.   Do you know of any occasion on which any
01:18:52   party was confused or deceived -- do you know of
01:18:56   any occasion in which any party has expressed to
01:18:58   you or anybody at National Nonwovens that it was
01:19:00   confused or deceived by CPE's use of the term or
01:19:05   mark Imperial Wool Felt?
01:19:08       A.   Not to my knowledge.
01:19:09       Q.   Do you know of any occasion in which any
01:19:17   party expressed to anybody that the party was
01:19:21   confused or deceived by CPE's use of the term wool
01:19:26   felt.
01:19:26            MR. DIONNE:  Objection.  Only
01:19:28   because you're saying did any party express to
01:19:31   anybody?
01:19:35            MR. DUDA:  I'm just asking for her
01:19:38   personal knowledge.
01:19:38            MR. DIONNE:  Okay.
01:19:38       Q.   (BY MR. DUDA)  Your personal knowledge
01:19:40   of whether any party has expressed to any other
01:19:45   party that it was deceived or confused by CPE's
01:19:49   use of the term wool felt?
```

PERLIK and COYLE REPORTING

114

```
01:19:52        A.   Not to my knowledge.

01:20:13             MR. DUDA:  Let's mark this as the
01:20:16   next exhibit.

                      (Defendant's Deposition Exhibit
                        No. 12 offered and marked.)
01:20:49

01:20:50        Q.   (BY MR. DUDA)  I'm showing you a
01:20:51   document that we've marked as Exhibit 12, which
01:20:54   has on the upper left line, "Crafts, Wool, &
01:21:02   Industrial Felt & Outdoor Canvas by CPE Felt."
01:21:07   It's a two-page document.
01:21:11             In the first full paragraph -- I guess
01:21:16   the second full paragraph of this document --
01:21:18   there's a statement that "CPE's Craft and Wool
01:21:21   Felts are available in a wide variety of colors
01:21:24   and textures designed to excite and inspire the
01:21:28   Craft and Quilt artisan."
01:21:32             In your opinion, does CPE's use of the
01:21:35   term wool felts as shown there violate any
01:21:38   trademark rights?
01:21:39             MR. DIONNE:  Objection; calls for a
01:21:42   legal opinion and she's not qualified to give it.
01:21:44             MR. DUDA:  I understand.
01:21:45        Q.   (BY MR. DUDA)  In your lay opinion, does
01:21:49   that constitute a violation of any rights of CPE?
```

PERLIK and COYLE REPORTING

115

01:21:55          MR. DIONNE:  You're asking for her
01:21:56   opinion on a legal issue, whether you call it lay
01:21:59   or anything else.
01:22:01          You couched this question in terms of a
01:22:03   legal issue.  She is not qualified to answer that.
01:22:05          MR. DUDA:  Your objection is noted.
01:22:08   Want me to repeat the question?
01:22:11      Q.   (BY MR. DUDA)  In your opinion, does the
01:22:13   use of the term wool felts as shown on this
01:22:18   document constitute a violation of any rights of
01:22:22   National Nonwovens?
01:22:22      A.   Should I answer?
01:22:25          MR. DIONNE:  Yes; you can answer.
01:22:26          THE WITNESS:  In my opinion, yes.
01:22:28      Q.   (BY MR. DUDA)  It does?  Okay.  In your
01:22:32   opinion, is the use of the term wool felts as
01:22:36   shown in there likely to cause confusion among any
01:22:43   of your customers?
01:22:44      A.   Yes.
01:22:58      Q.   Do you believe that Nonwovens --
01:23:03   National Nonwovens -- has been damaged in any way
01:23:06   by CPE's use of the term wool felt?
01:23:11      A.   In my opinion?
01:23:13      Q.   Yes.

PERLIK and COYLE REPORTING

116

```
01:23:14        A.   Yes.
01:23:14        Q.   How has National Nonwovens been damaged
01:23:17   by CPE's use of the term wool felt?
01:23:22             MR. DIONNE:  This is interesting.
01:23:26   That's what we filed the lawsuit for, to find out
01:23:29   how badly we've been damaged.
01:23:31             If you want to ask her about how she
01:23:35   thinks we might have been damaged, that's fine.
01:23:38             MR. DUDA:  I would hope, if you
01:23:39   filed this lawsuit, you would agree that you've
01:23:42   been damaged, otherwise I don't know why you filed
01:23:46   the lawsuit.
01:23:47             MR. DIONNE:  Infringement is a
01:23:48   damage.
01:23:49             MR. DUDA:  In any event, I'm going
01:23:50   to ask the question.
01:23:51             MR. DIONNE:  Ask the question.
01:23:53             MR. DUDA:  I have a right to find
01:23:55   out, if you're suing my client for money, I have a
01:23:58   right to know what the damages are.
01:23:59        Q.   (BY MR. DUDA)  Could you please describe
01:24:01   how Nonwovens was damaged by CPE's use of the term
01:24:06   wool felt?
01:24:06        A.   By just the term wool felt?
```

117

01:24:08     Q.   By its use of the term wool felt.

01:24:11     A.   By its use of the term wool felt, it is

01:24:18  causing our customers and consumers to believe or

01:24:23  possibly believe that the product that they are

01:24:25  purchasing from CPE is manufactured and it is our

01:24:30  wool felt product.

01:24:33     Q.   What evidence do you have of that?

01:24:35     A.   The evidence is that we have used the

01:24:43  term wool felt to identify our felted wool product

01:24:47  in a specific market, promoted that product as

01:24:53  wool felt.  It is identified out there, designers,

01:24:56  customers, consumers identify wool felt and

01:25:02  National Nonwovens' felted wool.

01:25:04          When they see another product come out

01:25:08  and it is not under a different product name and

01:25:10  they see the words wool felt, that can cause them

01:25:14  to think that that is our product when it is not

01:25:19  and we have no right in terms of the quality of

01:25:23  the product.

01:25:24          We don't -- can't guarantee anything

01:25:27  about CPE's product.  It's not our product.

01:25:31     Q.   Do you have any -- other than what you

01:25:35  just said in terms -- I understand your rationale,

01:25:38  but do you have any evidence of any such damages

118

01:25:43  by National Nonwovens -- or that National
01:25:45  Nonwovens has suffered?
01:25:46       A.   No.
01:25:54       Q.   Do you believe that National Nonwovens
01:25:57  has been damaged by CPE's use of a sheep design?
01:26:03       A.   Yes.
01:26:04       Q.   Can you describe how you understand that
01:26:10  National Nonwovens has been damaged by CPE's use
01:26:14  of the sheep design?
01:26:14       A.   The sheep design has been used in
01:26:23  association with our wool felt product.  Our
01:26:27  customers, designers, have come to associate that
01:26:32  sheep design with National Nonwovens.
01:26:34            By using that design closely mirroring
01:26:44  our product line, our descriptions, our
01:26:46  suggestions, it again makes them think that
01:26:50  they -- when they purchase a CPE product, that it
01:26:54  is National Nonwovens' product when, in fact, it
01:26:57  is not.
01:26:57       Q.   Other than the description you just
01:27:11  provided, do you have any actual evidence of
01:27:17  damage that National Nonwovens has suffered due to
01:27:20  the use of CPE's sheep design?
01:27:23       A.   No.

119

```
01:27:31       Q.   Do you believe that National Nonwovens
01:27:37   has been damaged in any other way by CPE's use of
01:27:44   a trademark or copyright that National Nonwovens
01:27:49   owns?
01:27:49       A.   I don't understand your question, other
01:28:01   than -- what is different from the last two
01:28:05   questions.
01:28:05       Q.   I'm trying to find out if there is
01:28:07   anything more.
01:28:08            Let me try it this way.  Do you believe
01:28:10   that National Nonwovens has been damage by CPE's
01:28:15   use of any other mark or symbol that National
01:28:23   Nonwovens owns other than what we've just
01:28:25   identified?
01:28:29            MR. DIONNE:  I'm going to suggest
01:28:31   that my client have a chance to look at the
01:28:33   complaint and she can pick up from the complaint
01:28:36   where we have all those answers.
01:28:39            I don't believe she's quite capable with
01:28:42   the legal expertise to keep track in her mind all
01:28:46   the aspects of the complaint and that's, frankly,
01:28:48   what you're asking her about.
01:28:50            I think it's totally unfair that you
01:28:52   don't put the complaint in front of her and go
```

120

```
01:28:54   through it that way.
01:28:55             MR. DUDA:  I'm not really interested
01:28:57   in the complaint.
01:28:58       Q.   (BY MR. DUDA)  I'm interested in what
01:29:00   you know and what you believe.  I understand your
01:29:02   counsel prepared the complaint and I understand it
01:29:04   is there.
01:29:05             I just want to ask you the question one
01:29:06   more time.
01:29:07             MR. DIONNE:  How much longer are you
01:29:09   going to keep this up?  I'm getting hungry and so
01:29:12   is she.
01:29:13             MR. DUDA:  Can I just finish the
01:29:14   question.
01:29:14             MR. DIONNE:  Have you got a half an
01:29:16   hour, maybe we'll stay, but if you have two hours.
01:29:19             MR. DUDA:  We have a few more
01:29:22   minutes of this line of questioning.
01:29:23             MR. DIONNE:  I'm sorry to interrupt
01:29:25   you, then.
01:29:26       Q.   (BY MR. DUDA)  Let's ask the question
01:29:27   one more time.
01:29:28             Do you believe that Nonwovens has been
01:29:31   damaged by CPE's use of any other trademark or
```

121

```
01:29:37    copyrighted symbol that Nonwovens owns other than
01:29:43    the trademark and copyrighted item that you just
01:29:46    discussed?
01:29:46         A.   The items that we just discussed being
01:29:53    wool felt and the sheep design?
01:29:56         Q.   Yes.
01:29:56         A.   The boiled wool felt instructions.
01:30:00         Q.   How has National Nonwovens been damaged
01:30:07    by the, I guess CPE's use of boiled felt
01:30:15    instructions?
01:30:15              MR. DIONNE:  Jim, I'm sorry, I have
01:30:17    no objection to this.  You're talking copyright.
01:30:20    There's statutory damages involved just for the
01:30:24    printing of these things.
01:30:26              She has no concept of that and to try to
01:30:28    ask her what the damages are going to be, that's a
01:30:31    legal question.  We have experts who will testify
01:30:33    to damages and I'm just -- you can ask your
01:30:36    questions, but they're unfair.
01:30:40              MR. DUDA:  I think it's pretty fair.
01:30:42    She's the party, not you.
01:30:44              MR. DIONNE:  You're unfair.  Just
01:30:47    remember this, sir, it's a two-edged sword.
01:30:50    Whatever you do here, we'll come back.
```

PERLIK and COYLE REPORTING