UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NATIONAL NONWOVENS INC.

Plaintiff

v.

CONSUMER PRODUCTS ENTERPRISES, INC.

Defendant

Civil Action No.: 04-30078-MAP

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES AND MOTION FOR PROTECTIVE ORDER**

In Defendant's Opposition it was suggested that Plaintiff's Motion to Compel could be organized into four general categories: Category 1 - information on all products for sale by Defendant; Category 2 - information relating specifically to one customer, Hancock Fabrics; Category 3- identity of persons or entities that have purchased Defendant's felted wool product; and Category 4 - the dollar amount of sales of Defendant's felted wool products. Plaintiff will deal with each Category as follows.

**Legal Standard**

Defendant's definition of the legal standard in this matter is not correct. While it is true that Rule 26(b)(1) of the Federal Rules of Civil Procedure speaks of "relevant" information, the Rule clearly states that "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." (Emphasis added.) NNI believes that information sought under Category 1 and Category 3 will lead to relevant information with respect to where and

to what extent the parties directly compete. The information sought under Category 2 will lead to relevant information with respect to the issue of "wrongful intent" to be discussed in more detail below; and, the information sought under Category 4 will lead to relevant information with respect to the issue of damages, which in spite of Defendant's efforts has not been subject to bifurcation by the Court.

**Analysis**

The discovery in this case must first be put in context. The proper context is that at the beginning of this litigation, the Defendant tried to have the issue of "genericness" bifurcated from the other issues in this litigation. While the Court specifically declined to bifurcate discovery at the initial Scheduling Conference, the Defendant has continuously tried to bifurcate the issues by refusing to respond to certain of Plaintiff's Interrogatories and Document Requests based on (1) lack of "relevance" and/or (2) "proprietary information".

Defendant contends that Plaintiff has refused to provide the very same information in discovery that it is now seeking from the Defendant. Once again, the Defendant is not setting forth the complete story. The facts are that once Plaintiff received responses to its discovery, Plaintiff responded in kind to the Defendant; however, within seven days of Plaintiff's response, Plaintiff advised Defendant that it was clear that a Protective Order was needed and forwarded such an Order for Defendant's consideration (See Exhibits E and F, Plaintiff's Motion To Compel). The date of that advice was August 23, 2004, almost three months have passed with no meaningful response from the Defendant on this issue.

Defendant has suggested that Plaintiff's motives for requesting "sensitive competitive" information has little to do with trademark or copyright infringement. In support of this position, Defendant cites testimony from the Deposition of Michalina A. Centofanti on the subject of Hancock Fabrics. It is interesting that Defendant has used the noted testimony before the Deponent has even seen, not to mention, "read and sign" the deposition transcript. As will be noted in the Declaration of Michalina A. Centofanti attached hereto (Exhibit A), in February 2001, National Nonwovens Inc. (hereinafter "NNI") made an effort to establish a business relationship with Hancock Fabrics for the sale of NNI's felted wool product "WoolFelt". This effort continued until March 2003 when communications with Hancock Fabrics came to an unexplained end. The sequence of events that followed is detailed in Defendant's Answers to Plaintiff's First Set of Interrogatories and they are as follows:

**Interrogatory 14**: State the date when Defendant first became aware of Plaintiff's trademark "WOOLFELT".

**Response:** Summer of 2003 (exact date unknown)

**Interrogatory 6**: State the date of first use of the trademark "CLASSIC WOOL FELT" by the Defendant.

**Response**: September 2003

**Interrogatory 7**: State the date of first use of the trademark "IMPERIAL WOOL FELT" by the Defendant.

**Response**: October 2003

**Interrogatory 8**: State the date of first use of the Defendant's "ram" by the Defendant.

**Response**: September 2003

Plaintiff finds it curious that, approximately two to three months after the termination of business discussions between Plaintiff and Hancock Fabrics, the Defendant gained knowledge of Plaintiff's trademark "WOOLFELT" and that approximately six months after the termination of said discussions, Defendant began selling a product that it had not sold before that time most probably to Hancock Fabrics, the Company that had been negotiating with Plaintiff for the sale of the same product. The requested information also pertains to Plaintiff's claims based on unfair competition and Chapter 93A of the Massachusetts General Laws. Plaintiff believes it has a right to the requested information based simply on the above facts.

Plaintiff's demand for information in Category 1 is in fact proper in that Plaintiff must be able to show that prior to Defendant's relationship with Hancock Fabrics, Defendant did not make or sell a felted wool product. Further, as Defendant does in fact sell its products on the open market, i.e., not secretly, this fact cannot be "proprietary". The information requested in Category 3 is also proper in spite of the fact that Defendant characterizes it as "sensitive business information". Plaintiff is not aware of any Rule that excludes the discovery of "sensitive business information". Rather, Rule 26(c) of the Federal Rules provides the means by which "sensitive business information" may be disclosed to a party. The relevance of such information is fully discussed beginning on page 9 of Plaintiff's Motion to Compel.

With reference to the information sought in Categories 2 and 4, the Defendant has suggested that as Plaintiff has (1) not identified a single lost dollar caused by the trademark infringement; (2) has not provided any survey evidence that might indicate a loss of goodwill; and (3) has failed to identify a single instance of actual confusion that it follows that Plaintiff has not been harmed in any way. The obvious reason the Plaintiff has not been able to present such evidence is that the Defendant has stonewalled Plaintiff from obtaining any information relating thereto. Plaintiff is confident that once it has the opportunity to explore the areas that it has a right to explore, it will be able to make its case for infringement and unfair competition.

The final issue raised by the Defendant in its Opposition is a request to the Court to delay any disclosure of information to the Plaintiff until after the Court rules on Defendant's Motion for Summary Judgment. Once again, the Defendant is trying to bifurcate this case so as to consider only the single issue of "genericness". The Court should rule just the opposite. As noted above, Plaintiff has been unfairly prevented from obtaining the basic information it needs to conduct further proper discovery, e.g., depositions, requests for admissions, etc. Granting the Defendant's Motion for Summary Judgment in a case where there has been essentially no discovery by the Plaintiff due to Defendant's obstructionism would be unfair and not do substantial justice in this case.

It is easy for the Defendant to label Plaintiff's claims as "frivolous" and as long as Defendant is permitted to engage in its stonewalling tactics in an effort to keep this litigation to the single issue of "genericness" it will be unfairly successful.

**Conclusion**

For the foregoing reasons and the reasons set forth in Plaintiff's Motion To Compel, Defendant should be ordered to respond to Plaintiff's outstanding Interrogatories and Requests for Production and Defendant should be sanctioned by the Court for costs and attorneys' fees incurred by Plaintiff in the preparation and filing of Plaintiff's Motion to Compel and Plaintiff's Reply to Defendant's Opposition.

In addition to the above, it is respectfully requested that the Court delay any review of Defendant's Motion for Summary Judgment and Motion for Attorney's Fees until Plaintiff has had a fair opportunity to conduct its discovery.

Respectfully submitted,

National Nonwovens Inc.
By Their Attorney

Date: November 18, 2004

Arthur F. Dionne
BBO No. 125,760
J. Kevin Grogan
BBO No. 635,089
McCormick, Paulding & Huber LLP
1350 Main Street, 5th Floor
Springfield, Massachusetts 01103
Tel. (413) 736-5401
Fax (413) 733-4543

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was mailed, postage prepaid, this 18th day of November, 2004 to all counsel of record for each party.

Arthur F. Dionne

[6020-0011-1]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NATIONAL NONWOVENS INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No.: 04-30078-MAP |
| | ) | |
| CONSUMER PRODUCTS ENTERPRISES, INC. | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

**Declaration of Michalina A. Centofanti**

I, Michalina A. Centofanti, declare and say that:

1. I am Vice President of the Plaintiff National Nonwovens Inc. ("NNI") in the above-entitled litigation.

2. On information and belief, prior to 1993 a predecessor in interest to NNI had a business relationship with Hancock Fabrics of Tupelo, Mississippi ("Hancock")

3. On information and belief, in 1993 the relationship between NNI's predecessor in interest and Hancock was terminated.

4. On or about February 2001, NNI contacted Hancock and forwarded product information materials in an attempt to re-establish a business relationship whereby NNI would sell NNI's felted wool product "WoolFelt" to Hancock. (Exhibit 1)

5. On or about March 2001, June 2001, August 2001, November 2001 and February 2002, I made telephone calls to Hancock in an effort to follow-up on the original contact with Hancock noted above in paragraph 4.

6. On or about June 2002, I again contacted Hancock and forwarded product information materials in an attempt to re-establish a business relationship whereby NNI would sell NNI's felted wool product "WoolFelt" to Hancock. (Exhibit 2).

7. On or about July 2002, I called Hancock as a follow-up to the contact noted above in paragraph 6.

8. On or about February 2003, NNI again called Hancock as a follow-up to the contact noted above in paragraph 6. Other than a short telephone contact on or



about March 2003, this was the last contact that NNI had with Hancock prior to Hancock purchasing felted wool products known as "Classic Wool Felt" and "Imperial Wool Felt" from Defendant Consumer Products Enterprises, Inc.

I, Michalina A; Centofanti, declare and says that all statements made herein of my own knowledge are true; and that all statements made on information and belief are believed to be true; and further, that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

Date: November 17, 2004

Michalina A. Centofanti




February 15, 2001

Mr. Brad Berg
Hancock Fabrics
3406 W. Main St.
Tupelo, MS 38801

Dear Brad:

Thank you for the time you afforded me the other day relative to Hancock's felt requirements. I appreciate your honestly relative to the acrylic suppliers. I would, however, like to re-introduce WoolFelt® and the vast popularity of the product over the past three years. Unlike the acrylic felt, it targets quilters, doll makers and designers wanting heirloom designs for their homes. The most popular put-up is 36" wide folded to 18", 10 yards on a bolt. This smaller SKU allows for more colors and less merchandising space.

I have enclosed a brief summary of the WoolFelt® products and color cards for the top two styles. The most popular colors are highlighted. I believe the price point is attractive and would interest your consumers that normally would shy away from the 100% Wool product due to cost.

May I thank you in advance for reviewing the information, if you have any questions, please feel free to contact me at (413) 529-1635. If agreeable, I will contact you the first week in March and I look forward to speaking with you.

Best regards,

Michalina A. Centofanti
Vice President – Corporate Administration

/m
enc.






June 13, 2002

Hancock Fabrics
Mr. Carl Zander, Vice President – Fabric Buyer
P. O. Box 2400
3406 West Main Street
Tupelo, MS 38803-2400

Dear Mr. Zander:

It was a pleasure meeting you at the Spring Quilt Market. National Nonwovens is interested in working together with Hancock Fabrics in expanding the distribution and excitement of our WoolFelt® products.

As we discussed on the telephone, I have put together a brief outline about our company and the product lines. In conversations with Brad Berg, I think the best offering for Hancock Fabrics is 36" wide folded down to 18" 10 yards on a bolt. They are the most popular. We have created separate color cards in the package recommending a "starter package" and four options of "accent colors". We feel these colors are the most popular in the two product lines based on books, patterns, kits, magazine projects, etc. I have included on the last page a statistical summary of our top 20 colors by product line. Also enclosed are our original color cards for your review as the you have the final decision on which colors you would like to carry.

Please look over the information and call me at 413-529-1635 with any questions you may have. I hope you have a good trip and I look forward to talking with you late June or early July.

Best regards,

Michalina A. Centofanti
Vice President – Corporate Administration

/m
cc: Brad Berg, Buyer

P.O. Box 150 Easthampton, MA 01027 Tel: 413•527•3445/800•333•3469
Customer Service Fax: 413•527•0456 Corporate Fax: 413•527•9570

