UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL NONWOVENS INC. )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>CONSUMER PRODUCTS ENTERPRISES, INC. )<br>)<br>)<br>Defendant )  | Civil Action No.: 04-30078-MAP |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Plaintiff's Complaint, as amended, presents counts for trademark infringement under 15 U.S.C. § 1051 and copyright infringement under 17 U.S.C. § 101, in addition to unfair competition, false designation of origin and trade dress infringement under 15 U.S.C. § 1125(a), and unfair methods of competition in violation of Chapter 93A of the Massachusetts General Laws. CPE counterclaimed, *inter alia*, that Plaintiff's trademarks are invalid on the basis of genericness and fraud under 15 U.S.C. § 1064, and seeks to cancel Plaintiff's trademark registration pursuant to 15 U.S.C. § 1119. The main focus of CPE's Motion for Summary Judgment is that Plaintiff's trademarks are allegedly generic. (See Motion, pp. 7-19). Regarding Plaintiff's other counts, CPE asserts that judgment should be entered for CPE based on CPE's own conclusions. (See Motion, pp. 19-25).

I. **STATEMENT OF RELEVANT FACTS**

A. **Plaintiff's "WOOLFELT" Trademarks**

Plaintiff primarily markets felted wool products to the craft, novelty, quilt and apparel industries. Plaintiff has been using the trademark "WOOLFELT" in conjunction with felted wool products since at least July 1982. Plaintiff sells "WOOLFELT" felted wool fabric to about 1,000 outlets and distributors.

On March 4, 1986, Plaintiff was issued U.S. Trademark Registration No. 1,385,577 on the Supplemental Register for a stylistic mark "WOOLFELT – THERE'S NOTHING BETTER THAN THE REAL THING" in connection with wool felt. (See Def.'s Att. B). On June 24, 1997, Plaintiff was issued U.S. Trademark Registration No. 2,073,811 on the Principal Register for the word mark "WOOLFELT" in connection with Fabric, namely, felt consisting of wool.[1] (See Def.'s Att. F).

The application for U.S. Trademark Registration No. 1,385,577 (Def.'s Att. B) was filed on November 23, 1984, by Plaintiff's predecessor-in-interest, Commonwealth Felt Co. (See Def.'s Att. E). The application was for a stylistic representation of the term "WOOLFELT" with the slogan "THERE'S NOTHING LIKE THE REAL THING". (See Def.'s Atts. B, E). This mark was initially sought with respect to "felt". (See Def.'s Att. E). In an Office Action from the Trademark Office dated January 29, 1985, the Examining Attorney refused registration of the mark on the Principal Register "because the mark, when applied to the goods, was considered to be <u>merely descriptive</u> thereof." (See Def.'s Att. C, p.1 (emphasis added)). The Examining Attorney further required Plaintiff to amend the identification of the goods from "felt" to "wool felt". (See Def.'s Att. C, p.1). The Examining Attorney suggested the phrase "wool felt" for the identification of goods, yet only refused registration on the basis of mere descriptiveness. (See Def.'s Att. C, p.1 ("The matter presented <u>merely describes</u> a characteristic of applicant's goods, <u>that they are wool felt</u>, and that there is nothing as good as real wool felt.") (emphasis added)).

In a Final Office Action dated August 26, 1985, the Examining Attorney maintained the refusal to register the mark on the Principal Register on the basis of mere descriptiveness. (See Def.'s Att. D). In so doing, the Examining Attorney identified "WOOLFELT" as the dominant feature of the applied-for mark, and confirmed that "WOOLFELT" "is descriptive of a characteristic of applicant's goods which are wool felt. The disclaimer of record supports this contention." (Def.'s Att. D, p.1). As reflected in CPE's Attachment B, the mark was ultimately registered on the Supplemental Register. The Examining Attorney <u>never</u> refused registration of the mark on the grounds that it was generic. Applicant's disclaimer clearly was made in

---

[1] U.S. Trademark Registration No. 2,073,811 was original printed with a typographical error identifying the goods for the "WOOLFELT" mark as "fabric, namely, felt consisting of wood." (See Def.'s Att. G (original application identifying goods as "fabric – namely, felt including a percentage of wool"); Pl.'s Att. A (amendment substituting "consisting" for "including a percentage")). This error was corrected by

connection with the descriptive aspect of the term "WOOLFELT", and not for any genericness of the term. See 15 U.S.C. § 1056(a) (disclaimers required for "unregistrable component" of mark, not strictly generic component); TMEP § 1213.03(a).

Plaintiff's application for U.S. Trademark Registration No. 2,073,811 (Def.'s Att. F) was filed on June 28, 1996. (See Def.'s Att. G). This application was solely directed to the word mark "WOOLFELT" in connection with "fabric, namely, felt including a percentage of wool". (Def.'s Att. G). The application specifically referred to U.S. Registration No. 1,385,577 in which Plaintiff had disclaimed the term "wool felt". (See Def.'s Att. G). In an Office Action dated October 11, 1996, the Examining Attorney objected to the identification of the goods and also refused registration on the basis that the "WOOLFELT" mark was merely descriptive. (See Pl.'s Att. C ("[T]he mark immediately indicates the feature, ingredient, quality, and characteristic of the goods. That is, a consumer, upon encountering the word mark WOOLFELT will know that the goods are felt fabrics made of or with wool.")). By Amendment dated November 22, 1996, the identification of goods was changed to "fabric, namely, felt consisting of wool", and evidence was provided of secondary meaning for Plaintiff's "WOOLFELT" mark pursuant to 37 C.F.R. § 2.41. (See Pl.'s Att. A). Despite the prior disclaimer, Plaintiff was granted a trademark for "WOOLFELT". (See Pl.'s Att. D). See also 15 U.S.C. § 1056(b) ("No disclaimer . . . shall prejudice or affect the applicant's or registrant's rights then existing or thereafter arising in the disclaimed matter. or his right of registration on another application if the disclaimed matter be or shall have become distinctive of his goods or services."); TMEP § 1213.11. Plaintiff's "WOOLFELT" trademark was never refused registration on the grounds that the mark was generic.

**B.**   **The Relevant Public for Plaintiff's "WOOLFELT" Brand Felted Fabrics**

CPE's Motion cites several uses of the terms "woolfelt" or "wool felt" that CPE asserts establish the genericness of Plaintiff's "WOOLFELT" trademark. (See, e.g., Motion, pp. 3, 12-13, 17 & accompanying notes; Def.'s Atts. O, P). Fatal to CPE's assertions is the fact that several of these references are actually referring to Plaintiff's trademarked products. Plaintiff sells its "WOOLFELT" felted wool fabrics to about 1,000 outlets and distributors. Many of

---

the Trademark Office on April 6, 2004. (See Def.'s Att. F; see also Pl.'s Att. B (Request for Certificate for Correction under 37 C.F.R. 2,174)).

these are those identified by CPE's searches. For example, Plaintiff's Attachment E includes a representative sample of websites identified in Google searches for "wool felt" and "woolfelt" that identify Plaintiff's "WOOLFELT" brand felted wool fabric, by source, as used in the relevant public (i.e., the craft, novelty, quilt and apparel industries), including:

- www.indygojunctioninc.com, *The Junction Journal* ("Indygo Junction has a bouquet of ideas to get you in the spirit starting with some very fun and festive ideas for WoolFelt®.");
- www.primmart.com/patterns/pattern25p.html ("WoolFelt by National Nonwovens");
- www.rusticraggedys.com/shabbychiccottagepatterns.htm ("Made with National Nonwoven's® new yummy colors of WoolFelt® . . . .");
- www.cleaandme.com/cam_woolfelt.html ("Authorized Dealer of the 'Original WoolFelt®'.");
- www.littlestitchespatterns.com/needful_things.htm ("Use scrap wool or WoolFelt$^{TM}$ for the flowers, leaves & vines.");
- www.birdbraindesigns.net/Department.aspx ("WoolFelt is a blend of wool (20% or 35% depending on color) and rayon from National Nonwovens.");
- homeaccentstoday.com/industry_news0901.asp ("National Nonwovens introduces Natural Elements WoolFelt.");
- www.ericas.com/appliqué/kits/woolfelt.htm ("Kit Contains: WoolFelt®, embroidery floss, satin cord, pearl cotton, beads. Felt included is 80% Rayon/20% Wool.");
- mandldesigns.com/pennyrugs.html ("Each kit includes enough die cut shapes from WoolFelt® . . . .");
- www.applecreekdesigns.com/woolfelt%20material.htm ("WoolFelt® is made by the company, National Nonwovens.");
- www.hantex.co.uk ("The original Woolfelt® is now available from Hantex in the UK.").

(Pl.'s Att. E). Also, SuperPages.com, online yellow pages, identifies "WOOLFELT" as a brand in connection with a search for fabric shops. (See phonebook.superpages.com/yellowpages/C-Fabric+Shops/S-NV/T-Las+Vegas/, Pl.'s Att. E). Further, CPE expressly references some of Plaintiff's customers in its Motion, including Martha Stewart (see p. 3 & n. 9), Memere's Garden (see p. 17 n.35), and Colonial Crafts (see p. 17).

Regarding the other alleged uses of "woolfelt" or "wool felt" in CPE's Motion, several of the uses cited are directed at different industries and different consumers than Plaintiff's "WOOLFELT" felted wool fabric. For example, CPE identifies websites marketing saddles, footwear, fabrics for noise and vibration control, and plugs for the steel industry. (See Motion, pp. 3, 12-13). Several of these industries actually use industrial felts or SAE felts for these products, marketed by Plaintiff under the PHOENIXFELT® brand. Such industrial felts are made from a different process that endears the fabrics for industrial applications. Such fabrics

are typically not desirable for craft, novelty, quilt and apparel uses, so many of the websites cited by CPE are not referencing the products sold in connection with Plaintiff's "WOOLFELT" trademark, or even CPE's "CLASSIC WOOL FELT" and "IMPERIAL WOOL FELT" logos for that matter.

### C.   CPE's Infringement

CPE began selling felted wool in about September 2003. (See Def.'s Att. H, Response to Interrogatory No. 6; Motion, p. 5). CPE readily admits marketing felted wool products under the designations "CLASSIC WOOL FELT" and "IMPERIAL WOOL FELT." (See Motion, p. 5). CPE acknowledges first using the designation "CLASSIC WOOL FELT" in September 2003. (See Def.'s Att. H, Response to Interrogatory No. 6). CPE further acknowledges first using the designation "IMPERIAL WOOL FELT" in October 2003. (See Def.'s Att. H, Response to Interrogatory No. 7). CPE also admits being aware of Plaintiff's "WOOLFELT" trademark in Summer 2003, though it cannot recall the exact date when it first became aware of Plaintiff trademark. (See Def.'s Att. H, Response to Interrogatory No. 14).

CPE's marketing materials for these two products use the respective designations "CLASSIC WOOL FELT" and "IMPERIAL WOOL FELT" in a trademark sense. (See, e.g., Def.'s Att. I (presenting the designations in quotes)). In fact, the announcement of these products on CPE's website refers to the products generically as "felt fabric" and "this new felt product". (See Pl.'s Att. F, cpe-felt.com/felt_newproducts_classic.html ("CPE, The Felt Company, has introduced Classic Wool Felt, a 40% wool/60% rayon blend felt fabric. This new felt product combines a high wool content with rayon to provide the customer with a versatile classic product at an affordable price."); cpe-felt.com/felt_newproducts_imperial.html ("Imperial Wool Felt, a luxurious felt fabric, fit for royalty and now available to the quilting and crafting consumers, was introduced at the International Quilt Market in Houston, Texas by CPE, The Felt Company.")).

On August 5, 2003, a trademark application was filed with the U.S. Patent & Trademark Office ("Trademark Office") by New CPE, Inc. for a "CLASSIC WOOL FELT" logo in connection with "Textile articles, namely needlepunch fabric of synthetic fibers". (See Pl.'s Att. G). On the same day, New CPE Inc. also filed a trademark application with the Trademark Office for an "IMPERIAL WOOL FELT" logo in connection with "Textile articles, namely

stiffened needlepunch fabric of synthetic fibers". (See Pl.'s Att. H). Upon information and belief, New CPE, Inc. is related to Defendant CPE.[2] Clearly, CPE is using the "CLASSIC WOOL FELT" and "IMPERIAL WOOL FELT" logos in connection with its felted wool fabrics. (See, e.g., Pl.'s Att. F; Def.'s Att. I). Both of the New CPE, Inc. trademark applications were filed after CPE had entered an Answer in the present Action specifically alleging that Plaintiff's "WOOLFELT" trademark is generic. (See, e.g., Docket # 3 (Answer and Counterclaims filed May 13, 2004)). Interestingly, no disclaimer was filed in either application disclaiming the term "WOOL FELT" as generic, or even descriptive or deceptively misdescriptive for that matter. (See Pl.'s Atts. G, H).[3]

### D.   CPE's Unfair Competition with Respect to the "WOOLFELT" Marks

In February 2001, Plaintiff made an effort to establish a business relationship with Hancock Fabrics for the sale of Plaintiff's 'WOOLFELT' brand felted wool. (See Declaration of Michalina A. Centofanti, Pl.'s Att. I, ¶ 4 & Exh. 1 (hereinafter "Centofanti Decl.")). This effort continued until March 2003 when communications with Hancock Fabrics came to an unexplained end. (See Centofanti Decl., Pl.'s Att. I, ¶ 8). As noted above, CPE first became aware of Plaintiff's "WOOLFELT" trademark in Summer 2003, within two or three months after the termination of business discussions between Plaintiff and Hancock Fabrics. (See Def.'s Att. H, Response to Interrogatory No. 14). Shortly thereafter, CPE introduced new felted wool products to the market, and likely to Hancock Fabrics.[4] In fact, Hancock Fabrics currently sells "Classic Wool Felt Fabric" on its website. (See Pl.'s Att. J (www.hancockfabrics.com/shopping/ product/detailman.jsp?itemID=PRODUCT&iMainCat=5&iSubCat=57&iPorductID=10918)).

---

[2] The Trademark Applications are both signed by John L. Pugh, who CPE has identified as the CEO and a Director of Defendant CPE. (See Def.'s Att. H, Response to Interrogatory No. 1).

[3] Though CPE's applications reference "needlepunch fabric of synthetic fibers", CPE's website and other marketing materials clearly use the "CLASSIC WOOL FELT" and "IMPERIAL WOOL FELT" logos in connection with felt fabrics having 40% wool and 100 % wool, respectively. (See Pl.'s Att. F; Def.'s Att. I). Of note, Plaintiff's first trademark application was refused registration, in part, "because the matter presented is deceptive under Section 2(a) or deceptively misdescriptive as applied to felt other than felt made of wool." (See Def.'s Att. C, p. 2).

[4] Plaintiff has requested information from CPE in discovery requests pertaining to its business relations with Hancock Fabrics. To this date, Defendant has stone-walled and has refused to provide Plaintiff with any discovery responses pertaining to Hancock Fabrics. Accordingly, Plaintiff has filed a Motion to Compel this and other requested information that Defendant refuses to provide. (See Docket # 18).

E.  **Plaintiff's Enforcement of Its "WOOLFELT" Trademark Against CPE**

Upon learning of CPE's use of the phrases "CLASSIC WOOL FELT" and "IMPERIAL WOOL FELT" in connection with felted wool fabrics, Plaintiff provided CPE with notice of its federally registered trademark for the term "WOOLFELT", by way of a letter dated November 10, 2003. (See Def.'s Att. J). CPE's counsel, by way of a letter dated December 8, 2003, refused to cease and desist use of the allegedly infringing designations. (See Def.'s Att. K). On April 20, 2004, Plaintiff filed the Complaint in this matter against CPE, alleging, *inter alia*, infringement by way of CPE's use of the phrases "CLASSIC WOOL FELT" and "IMPERIAL WOOL FELT". (See Docket #1). Plaintiff filed an Amended Complaint on May 27, 2004. (See Docket #10).

II.  **ARGUMENT**

A.  **Summary Judgment Standard**

Summary judgment is appropriate only if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1204 (1st Cir. 1983). A factual dispute is material if it "affects the outcome of the litigation." Id. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). "In passing on a summary judgment motion, the court must view the record and draw inferences in the light most favorable to the opposing party." Kazmaier v. Wooten, 761 F.2d 46, 48-49 (1st Cir. 1985). Accordingly, before summary judgment can properly be granted in this matter, the court must view the record favorable to Plaintiff and be satisfied that CPE has establish that no genuine issues as to material facts regarding all of Plaintiff's counts exist.

B.  **The Burden Lies with CPE to Establish that the "WOOLFELT" Trademark is Generic by Way of Evidence Showing the Understanding of the Relevant Public**

A trademark is defined in the Lanham Act as including "any word, name, symbol, or device or any combination thereof" used by any person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the

source of the goods, even if that source is unknown." 15 U.S.C. § 1127. The Lanham Act was enacted to make "actionable the deceptive and misleading use of marks" and "to protect persons engaged in . . . commerce against unfair competition." Id. The protectibility of a trademark depends on the degree to which the mark distinguishes the owner's products or services from those of another. See Boustony v. Boston Dental Group, Inc., 42 F. Supp. 2d 100, 105 (D. Mass. 1999). More particularly, whether a particular mark is entitled to legal protection depends on whether it is classified, in generally increasing order of eligibility for protection, as (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. See Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976). The latter three categories of marks are deemed inherently distinctive and are automatically entitled to protection "because their intrinsic nature serves to identify a particular source of a product." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 2757 (1992). By contrast, generic and descriptive marks are not entitled to automatic trademark protection. See id. at 768-69, 112 S. Ct. at 2757.

Generic marks are those that "refe[r] to the genus of which the particular product is a species" and therefore cannot be registered. Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194, 105 S. Ct. 658, 661 (1995). A "merely descriptive" mark portrays the qualities, characteristics or functions of the good or service to which it refers. See id. Unlike generic marks, a "merely descriptive" mark may be registered if the registrant shows that the mark has acquired secondary meaning so that the consumer associates the mark with a particular source's goods or services – i.e., the mark "has become distinctive of the applicant's goods in commerce." 15 U.S.C. §§ 1052(e), (f). The distinction between a merely descriptive mark and a generic mark "is not easily visible to the naked eye," Henri's Food Prods. Co. v. Tasty Snacks, Inc., 817 F.2d 1303, 1305-06 (7th Cir. 1987) (TASTY for salad dressing is not generic, but merely descriptive and has acquired secondary meaning); however, the difference is critical to the extent that a generic mark cannot be registered while a merely descriptive mark may acquire distinctiveness in the minds of the consuming public. See, e.g., Boustony, 42 F. Supp. 2d 100, 106 & n.5 (D. Mass. 1999) (BOSTON DENTAL for dental services not generic); Calamari Fisheries, Inc. v. Village Catch, Inc., 698 F. Supp. 994, 1007 (D. Mass. 1988) (use of term "CATCH" in connection with restaurant services is not generic); Vision Ctr. v. Opticles, Inc., 596 F.2d 111, 117 (5th Cir. 1979) (VISION CENTER not descriptive in connection with a place where one may purchase eyeglasses (discussed in Calamari Fisheries, 698 F. Supp. at 1007)).

CPE has alleged that Plaintiff's "WOOLFELT" trademark is generic, and therefore not deserving of trademark protection under the Lanham Act. (See Motion, pp. 9-15). The only test of genericness is set out in the Lanham Act:

> A registered mark shall not be deemed to be the generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service. The primary significance of the registered mark to the relevant public rather than the purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used.

15 U.S.C. § 1064(3) (codifying Bayer Co. v. United Drug Co., 272 F. 505, 509 (S.D.N.Y. 1921) ("What do the buyers understand by the word for whose use the parties are contending?")); see also Magic Wand, Inc. v. RDB, Inc., 940 F.2d 638, 640 (Fed. Cir. 1991) ("The 1984 amendment makes the understanding of the 'relevant public' central to the genericness inquiry."). Whether a mark is generic is a question of fact. See In re Northland Aluminum Prods., Inc., 777 F.2d 1556, 1559 (Fed. Cir. 1985).

Where a trademark is federally registered, there is a strong presumption that the registration is valid and that the mark is not generic. See 15 U.S.C. § 1057(b); Glover v. Ampak, Inc., 74 F.3d 57, 59 (4th Cir. 1996). The challenger of the trademark bears the burden of overcoming this presumption. See 2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*, § 12.12 (hereinafter "*McCarthy*"). A party seeking to cancel a federal registration on the basis that the mark is or has become generic can carry its burden "[o]nly by showing that the [relevant] public understands by the mark the class of goods or services of which the trademarked product or service is a part . . . ." Glover, 74 F.3d at 59. Therefore, to establish the alleged genericness of Plaintiff's "WOOLFELT" trademark, CPE must (1) identify the class of product to which the use of the "WOOLFELT" mark is relevant; (2) determine the make-up of the relevant consuming public for felted wool products; and (3) prove that the primary significance of the term "WOOLFELT" means to such customers is to identify the class of product to which the mark relates. See Berner Int'l Corp. v. Mars Sales Co., 987 F.2d 975, 983 (3d Cir. 1993); see also Glover, 74 F.3d at 59 ("[P]roof that a mark has become an indicator of a class of product or service and not its source requires more than the subjective view of a casual purchaser; there must be evidence that this is the mark's primary significance to the members of the 'relevant public.'").

"Evidence of the public's understanding of the term may be obtained from any competent source, such as purchaser testimony, consumer surveys, listings in dictionaries, trade journals, newspapers, and other publications." In re Merrill Lynch, Pierce, Fenner, and Smith, Inc., 828 F.2d 1567, 1570 (Fed. Cir. 1987). Direct evidence of the relevant public's understanding – namely consumer surveys, testimony and affidavits – is more preferable than indirect forms of evidence – namely, dictionaries, trade journals and newspapers. See Berner Int'l, 987 F.2d at 982-83.

As established below, CPE's proffered evidence that Plaintiff's "WOOLFELT" trademark is generic is insufficient to overcome the presumption of validity presented by Plaintiff's federal registrations. Significantly, CPE fails to identify the appropriate relevant public central to the genericness inquiry. Instead, CPE relies on evidence showing use of the term "WOOLFELT" by the general public, including unscientific searches of general newspapers and the Internet. Moreover, CPE fails to cite any direct consumer evidence, such as consumer surveys or testimony, that would lend support to its assertions of genericness.

### C. Plaintiff's "WOOLFELT" Trademark Identifies the Source of Plaintiff's Felted Wool Products

Plaintiff primarily markets felted wool fabrics under the designation "WOOLFELT" to the craft, novelty, quilt and apparel industries, and indeed has done so since at least July 1982. (See, e.g., Def.'s Atts. B, F). Generically, felted wool is "fabric" or "felt". That is <u>what</u> it is. CPE asserts that the undisputed genus of Plaintiff's product is "wool felt". (See Motion, p. 10). Clearly, a dispute exists as to what the class of product of product to which Plaintiff's "WOOLFELT" mark is relevant. This disputed designation is critical to any genericness inquiry. See Park 'N Fly, 469 U.S. at 194, 105 S. Ct. at 661 ("A generic term is one that refers to the genus of which the particular product is a species."). Understandably, CPE needs to present the class of goods as the mark itself in order to advance its genericness argument. Nevertheless, Plaintiff maintains that the "WOOLFELT" trademark was at the outset of its use merely descriptive of its products, namely fabric or felt, which is consistent with the treatment of Plaintiffs' trademark applications by the Trademark Office. (See, e.g., Def.'s Att. D ("With respect to 'WOOL FELT', which is the dominant feature of applicant's mark, this is descriptive of a characteristic of applicant's goods which are wool felt."); Pl.'s Att. C ("[T]he mark

immediately indicates the feature, ingredient, quality, and characteristic of the goods. That is, a consumer, upon encountering the word mark WOOLFELT will know that the goods are felt fabrics made of or with wool.")).

Plaintiff is entitled to federal protection for its "WOOLFELT" trademark because the mark has become inherently distinctive through the acquisition of secondary meaning in the minds of the relevant purchasing public. See 15 U.S.C. § 1052(f). Since Plaintiff owns a federal registration for its "WOOLFELT" trademark, there is a presumption that the registration is valid and that "WOOLFELT" is non-generic. See 15 U.S.C. § 1057(b). CPE bears the burden of overcoming this presumption by a preponderance of the evidence. See Glover, 74 F.3d at 59. This burden can only be overcome by a presentation of evidence showing that "the [relevant] public understands by the mark the class of goods or services of which the trademarked product or service is a part . . . ." Glover, 74 F.3d at 59.

A closer examination of the "WOOLFELT" terminology is helpful in assessing CPE's allegations. No dictionary definitions are available for the term "WOOLFELT". In fact, fabric and textile dictionaries do not define the term. (See, e.g., Pl.'s Att. K, excerpts from "FabricLink", www.fabriclink.com). The terms "wool", "felt" and "felted" are common definitions available in dictionaries.

In general, the term "wool" is defined as:

> [A] textile fiber produced from raw wool that is characterized by absorbency, insulation, resiliency, a tendency to shrink in hot water, and ability to take and hold dyes well and that may be spun into woolen or worsted yarn or used for felt, flock or stuffing.

Webster's Third New Int'l Dictionary at 2632 (1961).

"Felt" is generally defined as:

> [A] cloth constructed usually of wool and fur fibers often mixed with natural or synthetic fibers by the interlocking of the loose fibers through the action of heat, moisture, chemicals, and pressure without spinning, weaving or knitting. . . . a firm woven cloth of wool or cotton heavily napped and shrunk to form a smooth resilient texture and used widely by manufacturers especially of printing presses, pianos and textiles.

Id. at 836 (1961). Similarly, the term "felted" is defined as "made of or into felt". Id. The definition of "felted wool" is essentially wool made into felt. Therefore, "felted wool fabric" is an apt description of the goods marketed with Plaintiff's "WOOLFELT" trademark.

### D. CPE's Evidence of Genericness Is Based on Searches of Sources Related to the General Public

It is clear that the relevant purchasing public is "central to the genericness inquiry." Magic Wand, 940 F.2d at 640. Pursuant to the Lanham Act and the "primary significance" test for determining genericness, the term "relevant public" means "the relevant public which does or may purchase the goods or services in the marketplace." Id. ("This meaning is evident from the context and history of the 1984 amendment.").

CPE's proof of genericness essentially boils down to indirect evidence of genericness from the general public in the form of searches of the Internet and NEXIS. (See, e.g., Motion, pp. 12-13; Def.'s Atts. M, N). CPE's methodology is flawed for several reasons. First, these searches depict results showing use of the searched term by the general public. Second, using CPE's methodology, any trademark can be established as "generic" because uses of terms on the Internet or in the general press are not limited. Further, CPE's own searches identify numerous uses of Plaintiff's "WOOLFELT" trademark in a source identifying sense. Lastly, reliance on searches of general public sources, such as the Internet or major U.S. newspapers, has been met with skepticism where no direct evidence of genericness (e.g., consumer surveys and testimony) is provided.

### E. Evidence of Genericness Must Assess the Relevant Public

CPE cites Murphy Door Bed Co. v. Interior Sleep Sys., Inc., 874 F.2d 95, 101 (2d Cir. 1989) for the proposition that allegedly generic "use by the media can be a 'strong indication of the general public's perception' that a term is a generic name." (Motion, p. 11 (emphasis added)). However, it is clear that the primary significance test codified in the Lanham Act focuses on the relevant purchasing public, and not the general public as a whole. See 15 U.S.C. § 1064(3); Magic Wand, 940 F.2d at 640 ("The 1984 amendment makes the understanding of the 'relevant public' central to the genericness inquiry."); see also Restatement (Third) of Unfair Competition § 15, comment c (1995) ("It is the use and understanding of the term in the context of purchasing decisions, however, that determine the primary significance of a designation."). Therefore, "proof that a mark has become an indicator of a class of product or service and not its source requires more than the subjective view of a casual purchaser; there must be evidence that

this is the mark's primary significance to members of the 'relevant public.'" Glover v. Ampak, Inc., 74 F.3d 57, 59 (4th Cir. 1996) (WHITE TAIL not generic for pocket knives).

Indeed, in Marks v. Polaroid Corp., 129 F. Supp. 243 (D. Mass. 1955), this Court followed the Learned Hand primary significance test eventually codified in the Lanham Act in maintaining the trademark significance of POLAROID. Evidence was presented of generic use the term "Polaroid" in the general public:

> [O]ne would have to be blind to deny that there has been a widespread generic use of the word "polaroid". This use has bene [sic] so widespread in fact that it has found its way to the lexicographers, though most dictionary definitions quoted also recognize that the word is a trademark. It is further evidence that the use of "Polaroid" as a common noun has extended to stereoscopic viewers as well as to polarizing material in other applications.

Id. at 270. Despite this evidence of genericness, the Court noted that POLAROID had not lost its distinctiveness among the relevant trade and consuming public. "Where the possibility of some deception remains real and the need of competitors to satisfactorily describe their products is satisfied by the availability of several common nouns or adjectives suitable for that purpose, this Court will protect the interest of the owner in his trademark." Id.

Similarly, evidence of generic use by merely a portion of the relevant purchasing public has limited probative value. See, e.g., Magic Wand, Inc. v. RDB, Inc., 940 F.2d 638, 641 (Fed. Cir. 1991) (relevant purchasing public for automobile washing services associated with TOUCHLESS mark encompasses automobile owners and operators; it was improper to limit the genericness evidence to vendors, operators and manufacturers of automobile washing equipment); Burger King Corp. v. Pilgrim's Pride Corp., 705 F. Supp. 1522, 1525 (S.D. Fla. 1988), aff'd without opinion, 894 F.2d 412 (11th Cir. 1990) (CHICKEN TENDERS not generic to the consuming public even though evidence existed that the term might be regarded as generic within the chicken industry).

Clearly, CPE's reliance of uses of "woolfelt" or "wool felt" in the general public is insufficient to establish that Plaintiff's "WOOLFELT" trademark has become generic in the minds of the relevant public. CPE's failure to even identify the relevant public establishes that summary judgment in not appropriate. See Glover, 74 F.3d at 59.

### F.  CPE's Methodology Is Unreliable Proof that "WOOLFELT" is Generic to the Relevant Public

CPE has conducted a NEXIS search of media publications that purport to use the term "wool felt" generically in the 1980s and 1990s. (See Motion, p. 12; Def.'s Att. M). Additionally, CPE has conducted Google searches for "wool felt" and "woolfelt". (See Motion, pp. 12-14, 17; Def.'s Atts. N, P ("wool felt" search apparently had over 78,000 hits; "woolfelt" apparently had either 5,300 or 2,480 hits)). CPE proffers these searches as evidence that Plaintiff's "WOOLFELT" trademark is generic. Admittedly, "[e]vidence of the public's understanding of the term [at issue] may be obtained from any competent source, such as purchaser testimony, consumer surveys, listing in dictionaries, trade journals, newspapers, and other publications." In re Merrill Lynch, Pierce, Fenner, & Smith, Inc., 828 F.2d 1567, 1570 (Fed. Cir. 1987). However, "casual, non-purchasing uses of terms are very weak evidence of generic usage." *McCarthy*, § 12.8 (discussing widespread use of Xerox and Kleenex by the general public).

As noted above, CPE's searches are questionable because they do not focus on the relevant public. A closer review of CPE's search results reveals many flaws in CPE's methodology, including the fact that the searches merely indicate views of the general public's understanding of a term. CPE has cited no trade publications specifically directed at the craft, novelty, quilt or apparel industries. Plaintiff includes examples of trade publications that identify Plaintiff's "WOOLFELT" fabric in a source identifying sense in Plaintiff's Attachment E, including the following:

- *SewNews*, "Do you know a source for wool or wool-blend felt? Colonial Crafts . . . stocks WoolFelt, a 20% wool/80% rayon blend." (www.sewnews.com/library/sewnews/mc/aamc0302e.htm);
- *The Junction Journal*, "Indygo Junction has a bouquet of ideas to get you in the spirit starting with some very fun and festive ideas for WoolFelt®." (www.indygojunctioninc.com); and
- *Home Accent Today*, "National Nonwovens introduces Natural Elements WoolFelt" (www.homeaccentstoday.com/industry_news0901.asp).

CPE's searches are further flawed because many of the results are presented out of context. Use of the terms "wool" and "felt" in the newspaper articles are provided in brief clips. It is difficult to determine if some of the results, namely those relating to the relevant universe, are actually discussing Plaintiff's "WOOLFELT" products, or at least products manufactured by

Plaintiff's own customers. Indeed, CPE's Google searches reveals that several hits are actually referring to Plaintiff's "WOOLFELT" products, and closer inspection of the referenced websites clearly use the term "WOOLFELT" in a trademark sense. (See Pl.'s Att. E (providing examples of websites identified in CPE's searches using "WOOLFELT" as a trademark)).

Moreover, a substantial number of the newspaper articles cited in CPE's searches appear to use "wool", "felt" and "wool felt" in a purely descriptive sense with respect to different industries and uses. Indeed, articles identifying hats, coats, clogs, or other garments manufactured from felt fabric, are likely not written by or directed to the relevant public – i.e., purchasers of such fabric.

CPE's methodology is further questionable because it could easily be used to establish that any trademark is generic. For example, a Google search of the term "Teflon" yielded about 2,090,000 hits as of November 29, 2004. (See, e.g., Pl.'s Att. L (initial listing from Googl search)). Many of these hits use the term "Teflon" in a similar manner to those uses of "wool felt" cited in CPE's Motion. (Cf. Motion, pp. 12-13 with Pl.'s Att. L (representative samples of uses of "Teflon" on the Internet)). Plaintiff's Attachment M similarly presents a representative listing of media articles identified by a NEXIS search of media publications that used the term "Teflon" in the 1980s and 1990s (totaling 12,426 references between 1980 and 2004). In E.I. Du Pont de Nemours & Co. v. Yoshida Int'l, Inc., 393 F. Supp. 502 (S.D.N.Y. 1975), the Southern District of New York ruled that the mark "TEFLON" was not generic, relying in part on consumer survey evidence. Were we to rely on CPE's methodology, without resorting to a consumer survey, "TEFLON" would be generic simply because of the number of hits resulting from NEXIS and Google searches of general public sources.

G.  **Courts Remain Skeptical of Indirect Evidence of Genericness without Any Direct Evidence from the Relevant Public**

As noted, the relevant sources of information that can be used to prove, or disprove, genericness are numerous. See In re Merrill Lynch, 828 F.2d at 1570. Such evidence can be divided into direct evidence and indirect evidence. Direct consumer evidence generally includes consumer surveys, testimony and affidavits, and are "preferable to indirect forms of evidence." Berner Int'l, 987 F.2d at 982. Indirect evidence includes listings in dictionaries, trade journals, newspapers and other publications. "While [such] types of evidence may be helpful in Lanham

Act cases, they are problematic." Id. at 983. For example, "[a]rticles in trade journals may indicate what a term means to the producer but not what it means to the relevant consuming public." Id. (AIR DOOR not generic for a barrier of moving air directed across an open doorway). A NEXIS search was deemed to be indeterminate where some media uses of a term were as a trademark while others were used as a generic name, so that insufficient proof of genericness existed. See In re Merrill Lynch, 828 F.2d at 1570-71 (CASE MANAGEMENT ACCOUNT not generic for brokerage services). Similar skepticism was expressed about a compilation of Internet website pages, especially where "none of the websites produced in the appellate appendix came from traditionally competent sources such as newspapers or trade journals." Creative Gifts, Inc. v. UFO, 235 F.3d 540, 546 (10th Cir. 2000) (LEVITRON not generic for an anti-gravity top).

Here, CPE has not presented any direct consumer evidence with respect to the 'WOOLFELT" trademark. CPE has not even specifically cited trade journals or publications relating to the relevant public. Instead, CPE relies strictly on searches of general public sources such as Google and NEXIS (major newspapers). Accordingly, CPE's evidence that 'WOOLFELT" is generic is extremely suspect absent any evidence of how the relevant consuming public views the "WOOLFELT" trademark.

### H.   CPE Has Filed Trademark Applications for "CLASSIC WOOL FELT" and "IMPERIAL WOOL FELT"

CPE vehemently asserts that Plaintiff's "WOOLFELT" trademark is generic. In support of this assertion, CPE cites searches from NEXIS and Google purportedly showing use of the term "WOOLFELT" by the general public in a generic sense. (See Def.'s Atts. M, N, P). CPE also refers to Plaintiff's disclaimer of "wool felt" in U.S. Trademark Registration No. 1,385,577 as evidence that Plaintiff admitted that the term "WOOLFELT" is generic. (See Motion, pp. 14-15). At the same time, however, New CPE, Inc., believed to be associated with CPE, has filed trademark applications for "CLASSIC WOOL FELT" and "IMPERIAL WOOL FELT" logos in connection with "textiles articles" including "needlepunch fabric of synthetic fibers." (See Pl.'s

Atts. G, H).[5] CPE uses both of these logos in connection with felted wool fabrics. (See Def.'s Att. I). The term "wool felt" was not disclaimed in either of these applications.

Similarly, CPE's use of the term "WOOL FELT" in its own marketing materials and website is in a trademark sense and not a generic sense. For example, CPE's website states that "CPE, The Felt Company, has introduced Classic Wool Felt, a 40% wool/60% rayon blend felt fabric" and "Imperial Wool Felt, a luxurious felt fabric, fit for royalty and now available to the quilting and crafting consumers, was introduced at the International Quilt Market in Houston, Texas by CPE, The Felt Company." (Pl.'s Att. E).

Clearly, CPE's own treatment of the "CLASSIC WOOL FELT" and "IMPERIAL WOOL FELT" designations create a genuine issue as to whether Plaintiff's "WOOLFELT" trademark is generic or not.

## I.  CPE has Provided No Direct Evidence, Such as Consumer Surveys and Testimony, of the Relevant Public's Understanding of Plaintiff's "WOOLFELT" Trademark

As noted, "the primary significance of the registered mark to the relevant public" is the test for genericness. 15 U.S.C. § 1064(3). Therefore, the focus of the primary significance test is the relevant purchasing public, and not the general public as a whole. See Glover, 74 F.3d at 59 ("[P]roof that a mark has become an indicator of a class of products or service and not its source requires more than the subjective view of a casual purchaser; there must be evidence that this is the mark's primary significance to members of the 'relevant public.'"). The best evidence of the perception of the relevant consumer is direct evidence through consumer surveys and consumer testimony. See Berner Int'l, 987 F.2d at 982-83 ("[D]irect consumer evidence, e.g., consumer surveys and testimony is preferable to indirect forms of evidence."); Heroes, Inc. v. Boomer Esiason Hero's Found., Inc., 1997 WL 335807, at *2 (D.D.C. June 6, 1997) ("The best way of showing the relevant public's understanding of a given term is through a consumer survey, or through dictionary definitions of the term." (internal citations omitted)). CPE has presented no consumer surveys or direct consumer testimony evidencing the purported

---

[5] Though CPE cites in its Motion that section 1402.01 of the Trademark Manual of Examining Procedure requires that the identification of goods in a trademark application "should set forth *common names*, using terminology that is generally understood", (Motion, pp. 14-15 (emphasis in original)), and though the crux of CPE's Motion itself is that "WOOLFELT" is the "common name" of felted wool (see id.), CPE itself opted not to identify the goods for its trademark applications as "wool felt". (Cf. Pl.'s Atts. G, H).

genericness of the "WOOLFELT" trademark. Instead, CPE merely states, in a footnote, that it need not rely on consumer surveys to prove genericness. (See Motion, p. 11 n.22).

"Consumer surveys have become almost *de rigueur* in litigation over genericness." 6 *McCarthy*, § 32.158. Courts have denied summary judgment where no consumer survey evidence has been produced to establish genericness, even where evidence from newspapers and trade journals have been presented. For example, in <u>Magic Wand, Inc. v. RDB, Inc.</u>, 940 F.2d 638, 641 (Fed. Cir. 1991), the court approved the TTAB's rejection of a challenge that TOUCHLESS is a generic name for automobile washing equipment based on the limited evidence presented by the challenger. The challenger presented evidence of genericness in the form of articles and advertisements in trade publications for car wash manufacturers and dealers, as well as extensive use of TOUCHLESS for car washes by a third party competitor. <u>See id.</u> at 639. In rejecting the challenger's assertions, the Court specifically noted that the challenger "supplied no survey evidence of consumer understanding, no letters or testimony from consumers, and no affidavits from consumers showing generic use or understanding of TOUCHLESS." <u>Id.</u> at 641; <u>see also</u> <u>Heroes</u>, 1997 WL 335807, at *2 (HEROES for charitable services not generic; "The defendant has introduced no consumer surveys, and has not attempted to argue that a dictionary definition of the word 'hero' supports its case. Instead, it argues that the *plaintiff* has used the mark HEROES in a generic sense . . . .").

*McCarthy on Trademarks and Unfair Competition*, the renowned treatise on trademark law, also endorses the use and importance of consumer surveys in assessing genericness of a trademark. Specific models of surveys generally accepted by the courts are discussed in detail. <u>See</u> *McCarthy*, §§ 12.15, 12.16. *McCarthy* further states that:

> Judges are now used to survey evidence and often expect to receive evidentiary assistance by surveys in resolving generic disputes. A litigant who does not introduce a survey to support a generic challenge may be viewed a less than serious by many judges.

<u>Id.</u> at § 12.14; <u>see also</u> 6 <u>id.</u> at § 32.192. Moreover, *McCarthy* warns that only <u>overwhelming</u> evidence in support of genericness may eliminate the need for a consumer survey. <u>See id.</u> at § 12.14.

The cases cited by CPE are inapposite. First, CPE has failed to present "overwhelming" evidence of the genericness of Plaintiff's "WOOLFELT" mark, as required by <u>Nartron Corp. v. STMicroelectronics, Inc.</u>, 305 F.3d 397, 407 (6th Cir. 2002), in order to obviate the need to

conduct a consumer survey. In fact, CPE has presented no direct evidence establishing the perception of the relevant purchasing public of felted wool products as marketed by Plaintiff and CPE. Nor has CPE presented evidence of the use of "WOOLFELT" in trade publications relating to the relevant universe (e.g., quilting and crafting). Instead, CPE relies on searches of general public databases such as "Google" and NEXIS. In Nartron, the "overwhelming" evidence presented to show that SMART POWER is generic in the semiconductor industry included direct evidence of genericness in the form of undisputed deposition testimony from third-party participants in the relevant public. See id. at 406 ("They provided testimony that manufacturers, customers, suppliers, vendors, and others in the semiconductor industry, including the trade and technical press, use the term 'smart power' generically to mean power devices that have control circuits."). The challenger also presented a 150-page chronology providing indirect evidence from a variety of sources including trade journals, newspapers and other publication, and advertisements. See id. at 406-07. The court's decision was further compelled where the trademark owner failed to rebut the challenger's proffered evidence. See id. at 407. Clearly, the evidence presented by CPE regarding "WOOLFELT" is nowhere close to the level of the evidence presented in Nartron. Accordingly, CPE's failure to present any direct evidence of genericness, either by way of a consumer survey or relevant consumer testimony, is fatal to its Motion.

Second, CPE has not established that "WOOLFELT" was a common term in the relevant universe prior to Plaintiff's appropriation of the term as a source identifier for felted wool. Cf. Hunt Masters, Inc. v. Landry's Seafood Rest., Inc., 240 F.3d 251, 254-55 (4th Cir. 2001); Eastern Air Lines, Inc. v. New York Air Lines, Inc., 559 F. Supp. 1270, 1275 (S.D.N.Y 1983); but see Burger King, 705 F. Supp. at 1525 (CHICKEN TENDERS a common term in the chicken industry but not generic to the relevant consuming universe). In fact, neither Hunt Masters nor Eastern Air Lines actually deals with the usefulness of surveys. Instead, these cases merely state that a generic term cannot later gain trademark significance even though most consumers readily identify the dominant brand with the generic name. CPE must first establish the genericness of "WOOLFELT" in the relevant industry before Plaintiff's adoption of the term before these cases are applicable.

Plaintiff has engaged an expert to conduct a consumer survey on its behalf with respect to the issues pertaining to not only the alleged genericness of its "WOOLFELT" trademark, but

also to Plaintiff's assertions of infringement by CPE's own designations for felted wool fabrics. Due to the constraints of the expert's time and the Defendant's constant delaying tactics during discovery, Plaintiff's surveys have not been completed; however, Plaintiff should not be foreclosed from presenting its case simply because of CPE's Motion. See Fed. R. Civ. P. 56(f)

Plaintiff does not have to establish that no relevant consumers view the "WOOLFELT" trademark as a generic term. The burden lies with CPE to establish genericness by a preponderance of the evidence. See Glover, 74 F.3d at 59. Cases in which consumer surveys have been relied on by the judge have upheld trademark status even where some of the survey respondents viewed the trademark as a generic term. See, e.g., Du Pont, 393 F. Supp. 502 (68% of survey respondents regarded TEFLON as having trademark significance); Stix Prods., Inc. v. United Merchants & Mfrs., Inc., 295 F. Supp. 479 (S.D.N.Y. 1968) (from 69 percent to 84 percent of survey respondents regarded CON-TACT as a trademark indicating source for adhesive paper). Here, CPE has cited no direct evidence, either through a consumer survey of the relevant purchasing universe or by actual consumer testimony, to support its assertions that the "WOOLFELT" trademark is generic.

### J. Plaintiff Never Admitted Genericness of "WOOLFELT" in its Trademark Applications

CPE asserts that Plaintiff admitted that the "WOOLFELT" trademark is generic. (See Motion, pp. 14-15). This assertion is grossly incorrect. Indeed, CPE misrepresents Plaintiff's trademark applications, as well as the applicable standard of practice in the Trademark Office.

Plaintiff's first application for "WOOLFELT - THERE'S NOTHING LIKE THE REAL THING" was initially filed with the goods identified as "felt". (See Def.'s Att. E). In an Office Action from the Trademark Office dated January 29, 1985, the Examining Attorney suggested that the identification of the goods be changed to "wool felt". (See Def.'s Att. C). At the same time, however, the Examining Attorney refused registration only on the basis that Plaintiff's mark was merely descriptive of the goods. (See Def.'s Att. C, p.1 ("The matter presented merely describes a characteristic of applicant's goods, that they are wool felt . . . .")). In a Final Office Action from the Trademark Office dated August 26, 1985, the Examining Attorney reiterated his refusal of the Plaintiff's mark as being merely descriptive of the goods. (See Def.'s Att. D). Specifically, the Examining Attorney stated: