# EXHIBIT OO

GENERIC TERMS § 12:9

generic sense when asking someone to "Make me a Xerox of this" or asking a friend for "a Kleenex," even though when going to purchase a photocopy machine or a box of tissues, they know that XEROX and KLEENEX identify the commercial source of those products. Such casual, non-purchasing uses of terms are very weak evidence of generic usage. As the Restatement observes: "It is the use and understanding of the term in the context of purchasing decisions, however, that determines the primary significance of a designation."[3]

### § 12:9  Several generic names for same product

There is usually no one, single and exclusive generic name for a product. Any product may have many generic designations. Any one of those is incapable of trademark significance:

> All of the generic names for a product belong in the public domain. The product itself, for example, is called gasoline in the United States but petrol in England. Clearly both of those names, must remain free of proprietary claims, in either country.[1]

In one case the proponent of trademark status for the word "Mart" argued that the word is quaint and not generally used. But the court replied that the test is not whether a term is more frequently used colloquially than its synonyms (such as "store" or "market"), but whether it still retains its generic meaning. "Mart" was held to have no other meaning among the consuming public than as a synonym for "store" or "market" and hence was generic.[2] Similarly another

---

[3] Restatement (Third) of Unfair Competition § 15, comment c (1995).

[Section 12:9]

[1] In re Sun Oil Co., 426 F.2d 401, 165 U.S.P.Q. 718 (C.C.P.A. 1970). Compare Petro Shopping Centers L.P. v. James River Petroleum, 41 U.S.P.Q.2d 1853 (E.D. Va. 1997), aff'd on other grounds, 130 F.3d 88, 44 U.S.P.Q.2d 1921 (4th Cir. 1997) (PETRO for truck stop services is descriptive, not generic; no infringement was found). See Roselux Chemical Co. v. Parsons Ammonia Co., 299 F.2d 855, 132 U.S.P.Q. 627 (C.C.P.A. 1962); Krey Packing Co. v. Williams Food Products, Inc., 163 U.S.P.Q. 495 (T.T.A.B. 1969).

Compare Carcione v. Greengrocer, Inc., 205 U.S.P.Q. 1075 (E.D. Cal. 1979) ("Greengrocer" may be a generic name in Great Britain for a retailer of fruits and vegetables, but not in the United States); Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 207 U.S.P.Q. 465 (1st Cir. 1980) (it is possible for a term to be generic in one geographic market but not in another).

[2] S. S. Kresge Co. v. United Factory Outlet, Inc., 598 F.2d 694, 202 U.S.P.Q. 545 (1st Cir. 1979). Accord Convenient Food Mart, Inc. v. 6-Twelve Convenient Mart, Inc., 690 F. Supp. 1457, 8 U.S.P.Q.2d 1353 (D. Md. 1988), aff'd without op., 870 F.2d 654, 10 U.S.P.Q.2d 2037 (4th Cir. 1989)("The fact

§ 12:9            McCarthy on Trademarks

court said that the fact that there are other generic names than "Super Glue," such as "Instant Glue" or "Ten Second Glue," does not preclude generic status: "[T]he existence of synonyms for a term does not mean the term is not generic. There may be more than one term which the consuming public understands as designating a category of goods."[3] Thus, while prerecorded audio tape cassettes of books may be generically called "audio books," "talking books," "book cassettes," "cassette books," or "taped books," the designation "recorded books" was held to be a generic name by the Trademark Board, noting that a product can have more than one generic name.[3.1]

In another example, the Fourth Circuit found that "ale house" was a generic name and one of several generic names for places that serve beer, with or without food. "[Plaintiff] has no protectable interest in the words 'ale house.' They are generic words for a facility that serves beer and ale, with or without food, just as are other similar terms such as 'bar,' 'lounge,' 'pub,' 'saloon,' or 'tavern.' All serve

---

that one generic term is prevalent in public usage does not preclude the Court from finding that the adjective equivalent of the term is also generic." "Convenient store" held a generic name for a type of retail food store which is convenient to shop in and carries "convenience foods.").

[3] Loctite Corp. v. National Starch & Chemical Corp., 516 F. Supp. 190, 211 U.S.P.Q. 237 (S.D.N.Y. 1981). *Accord* Union Carbide Corp. v. W. R. Grace & Co., 213 U.S.P.Q. 400 (T.T.A.B. 1982), aff'd, 581 F. Supp. 148, 221 U.S.P.Q. 614 (S.D.N.Y. 1983) ("Barrier bag" is one of several generic names for thermal plastic bags to keep air out and moisture in); Gear, Inc. v. L.A. Gear California, Inc., 670 F. Supp. 508, 4 U.S.P.Q.2d 1192 (S.D.N.Y. 1987), vacated, in part, dismissed, 13 U.S.P.Q.2d 1655 (S.D.N.Y. 1989) ("A word may have more than one generic use and it is protected in each of its generic uses from appropriation by any one merchant. . . . Even if there are other more common synonyms for the same concept, the term at issue is still generic if its principal meaning in the relevant market is generic."); Blinded Veterans Ass'n v. Blinded American Veterans Foundation, 872 F.2d 1035, 10 U.S.P.Q.2d 1432 (D.C. Cir. 1989) (a term need not be the sole designation of an article in order to be generic).

[3.1] In re Recorded Books Inc., 42 U.S.P.Q.2d 1275 (T.T.A.B. 1997). *See* Stromgren Supports Inc. v. Bike Athletic Co., 43 U.S.P.Q.2d 1100 (T.T.A.B. 1997) (while a sports garment that compresses muscles is known by more than one name, "compression" is one of those generic names because "a product may have more than one generic designation"); Continental Airlines Inc. v. United Air Lines Inc., 53 U.S.P.Q.2d 1385 1999 WL 1421649 (T.T.A.B. 1999) (while electronic airline ticketing is known by more than one name, such as "electronic ticket" and electronic ticketing," "e-ticket" is one of those generic names because: "Any product or service may have many generic designations.").

GENERIC TERMS § 12:10

alcohol alone or both food and alcohol."[3.2]

While the Lanham Act uses the singular article "the," referring to "the generic name," the author does not believe that this is the result of any considered judgment by Congress and should not be read as changing the rule of the case law that there can be more than one generic name of a thing.[4]

Even if there exists another suitable word to call the product, the public may pick as a generic name the word claimed as a mark by the seller.[5] However, most names become generic because the public is not given any other word to apply to an unfamiliar product.[6] The term which the seller claims is the generic designation *other than* his "mark," may be so unwieldy and complicated that the public will not accept it. For example, in the ASPIRIN case, Bayer Co. claimed that the true generic name of the product was "acetyl salicylic acid." However, Judge Learned Hand said that the ordinary consumer had never heard this term, and without some education could not have kept it in mind. It was much easier to use the simple word "Aspirin" as the name of the product.[7] Thus, in many cases, blame can be laid at the door of the seller for not giving the public a simple name for a new product. The public simply will not accept such terms as "acetyl salicylic acid" instead of "Aspirin,"[8] or "transparent cellulose sheets" instead of "Cellophane."[9]

### § 12:10 Generic adjectives: terms which name a characteristic of a product

A rule of thumb sometimes forwarded as distinguishing a generic name from a descriptive term is that generic names are nouns and

---

[3.2] Ale House Management, Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 54 U.S.P.Q.2d 1040 (4th Cir. 2000).

[4] *See* Lanham Act § 14(3), 15 U.S.C.A. § 1064(3); Lanham Act § 15(4), 15 U.S.C.A. § 1065(4); Lanham Act § 45, 15 U.S.C.A. § 1127 (definition of "abandonment."). In addition, Lanham Act § 45 states that "Words used in the singular include the plural and vice versa."

[5] King-Seeley Thermos Co. v. Aladdin Industries, Inc., 321 F.2d 577, 138 U.S.P.Q. 349 (2d Cir. 1963).

[6] In re Bridge, 170 U.S.P.Q. 428 (T.T.A.B. 1971). *See* Holzapfel's Compositions Co. v. Rahtjen's American Composition Co., 183 U.S. 1, 46 L. Ed. 49, 22 S. Ct. 6 (1901).

[7] Bayer Co. v. United Drug Co., 272 F. 505 (D.N.Y. 1921).

[8] Bayer Co. v. United Drug Co., 272 F. 505 (D.N.Y. 1921).

[9] DuPont Cellophane Co. v. Waxed Products Co., 85 F.2d 75 (2d Cir. 1936), cert. denied, 299 U.S. 601, 81 L. Ed. 443, 57 S. Ct. 194 (1936).