# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30078-MAP

| | |
|---|---|
| NONWOVENS, INC., ) | |
|     Plaintiff, ) | |
| ) | DEFENDANT'S REPLY TO |
| v. ) | PLAINTIFF'S OPPOSITION TO MOTION |
| ) | FOR SUMMARY JUDGMENT |
| CONSUMER PRODUCTS ) | and |
| ENTERPRISES, INC., ) | REPLY TO PLAINTIFF'S OPPOSITION |
| ) | TO MOTION FOR ATTORNEY'S FEES |
|     Defendant. ) | |

In its response brief, Plaintiff National Nonwovens, Inc. (hereinafter, "Nonwovens") presents legally and factually incorrect and misleading arguments in furtherance of its efforts to delay the termination of this litigation and avoid payment of the attorneys' fees and costs that Defendant has been forced to incur in this matter. Notwithstanding uncontested proof that "wool felt" has been in the general lexicon for centuries to identify wool felt and that such a generic term can never be a trademark for what it identifies, Nonwovens has presented arguments to this Court that it somehow should be allowed to turn the term into a trademark – "WoolFelt" – for what Plaintiff coyly describes as "felted wool fabric," known as "wool felt" to the rest of the world. The concept is contrary to the entire history of trademark jurisprudence.

Plaintiff has not explained why it never before tried to stop another company from using the words "wool felt" in association with wool felt fabrics and why it has suddenly decided to assert its supposed "trademark" rights against the Defendant, Consumer Products Enterprises, Inc. (hereinafter, "CPE"). Plaintiff's has nonetheless made its motives more clear. As the Plaintiff itself explains: it believes it is losing to competition in the marketplace, particularly for one account, Hancock Fabrics. Opp. at I.C.[1] It thus has resorted to bringing trademark and

---

[1] "Memo" refers to the Defendant's Motion for Summary Judgment and Supporting Memorandum. "Opp." refers to the Defendant's Opposition to the Motion. "SJ Exh.__" refers to the Exhibits attached to the Defendant's Motion

copyright claims against Defendant CPE to try to attain through the pressures of litigation what it has not been able to achieve fairly in the marketplace. Plaintiff's brief in response to Defendant's Motion for Summary Judgment only highlights its lack of credible legal or factual basis for initiating this lawsuit and provides further reasons for this Court to order it to pay to Defendant the ever increasing fees and costs that it is incurring defending this frivolous matter.

**I.   Trademark Claims**

  A.  <u>Contrary to Plaintiff's Assertions, It May Not Appropriate Generic Words As A Trademark for a Product That Always Has Been Identified By Those Words</u>.

The Plaintiff's arguments in its Opposition are premised on faulty logic. It claims that CPE must prove that the words "wool felt" have lost trademark significance, and builds its argument almost entirely on those cases where a term was, at one point, indisputably a trademark and the question before the court was whether the distinctive trademark was subsequently "genericized." <u>See</u>, <u>e.g.</u>, *Glover v. Ampak, Inc.*, 74 F.3d 57 (4th Cir. 1996) (WHITE TAIL for pocket knives had not become generic). "Wool felt," however, *never* has had any trademark significance for wool felt in the first place. <u>See</u> *Hunt Masters, Inc. v. Landry's Seafood Rest., Inc.*, 240 F.3d 251, 255 (4th Cir. 2001) (distinguishing the two types of generic "marks"). That is, "wool felt" has always been in our vocabulary as identifying wool felt. As Plaintiff should well know, like every other such generic term, it is not available for appropriation.

The Plaintiff has cited no cases, because there are none, where a term that has a generic meaning understood by the general population as a whole lost its common, ordinary meaning to become a trademark. The rule is clear:

> A seller cannot latch on to the name of an article and merely by use, claim it to be his own trademark for that article. . . . *Only in the extraordinarily rare case of a designation that began life as a mark* and later became a generic name could a generic name be resurrected back into existence as a trademark and be

---

for Summary Judgment. "Opp. Attachment __" refers to the Attachments to the Plaintiff's Opposition to the Motion. "Reply Exh. __" refers to the Exhibits attached hereto, beginning with Exhibit S.

2

"reclaimed" from the public domain by a change in consumer usage of a long period of time.

2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 12:11 (4th ed. 2004) (hereinafter, "McCarthy") (emphasis added; referring to only two cases, SINGER and GOODYEAR RUBBER, where a trademark became generic and was later reclaimed by the original trademark owner, as discussed in §§ 12:31 and 12:32). McCarthy makes clear that there is "no instance of this happening" to an ordinary term that was always a generic name and never performed a trademark function in its semantic history. See *id.*; see also *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 810 (2d Cir. 1999) ("No manufacturer can take out of the language a word, even a slang term, that has generic meaning as to a category of products and appropriate it for its own trademark use").[2] As shown in the Defendant's opening brief and as supported by additional evidence attached hereto, the common name "wool felt" has been in use for centuries to describe a nonwoven fabric made by enmeshing fibers, originally wool fibers. The Plaintiff cannot now appropriate for its own that which must be available for all to use.

B. Plaintiff Knows That It and Defendant Sell What Is Commonly Identified As "Wool Felt".

Plaintiff has presented essentially no factual evidence to dispute the rather obvious conclusion that the parties' products are commonly, generically, and most appropriately called "wool felt."[3] Rather than acknowledging this, however, Plaintiff takes half a page to make the

---

[2] This is not even possible where a party claims, as Plaintiff apparently tries to do here, that the particular use is somehow different from the precedent, admittedly generic, use. See *Eastern Air Lines, Inc. v. New York Air Lines, Inc.*, 559 F.Supp. 1270, 1275 (S.D.N.Y. 1983) (denying Eastern Air Lines' claim that it should be entitled to trademark rights in the generic term "air shuttle" because it had created a "specialized" meaning in the words); *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 141 (4th Cir. 2000) (rejecting argument that "ale house" might be generic is some applications, such as English pubs, but non-generic for facilities serving food and beer); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 81 (7th Cir. 1977) (holding that Miller could not acquire the exclusive right to use the common descriptive word "light" as a trademark for beer; "Otherwise a manufacturer could remove a common descriptive word from the public domain by investing his goods with an additional quality, thus gaining the exclusive right to call his wine 'rose,' his whiskey 'blended,' or his bread 'white.'").

[3] Nonwovens' own dictionary definitions (and many others) provide further evidence that "wool felt" is a generic term. See Opp. at II.C., citing WEBSTER'S THIRD NEW INT'L DICTIONARY; see also Opp. Attachment K ("Fabric

convoluted argument that a wool is a type of fiber, and felt is a type of fabric, and "felted" is how you make the "felt" fabric, so therefore the "apt description" of the goods is "felted wool fabric." Opp. at II.C. Perhaps the description is "apt," but Plaintiff has pointed to no one else who uses it to identify wool felt. Indeed, this contorted suggested alternative for "wool felt" is, alone, proof that "wool felt" is generic. See <u>Blinded Veterans Ass'n v. Blinded American Veterans Found.</u>, 872 F.2d 1035,1041, n.13 (D.C. Cir. 1989) (stating that the "awkwardness of the alternate terminology" presented to the court, such as "sightless former servicepeople" and "blinded former U.S. service personnel," "reinforces [its] conclusion that the public uses 'blinded veterans' generically").[4] Furthermore, if Nonwovens is suggesting that "wool felt" is not generic because it can propose a single alternative term, see Opp. at II.C, such a suggestion would be a blatant misstatement of law. See generally McCarthy at § 12:9 (appended as Reply Exh. OO).

Furthermore, Plaintiff's alternative of "felted wool fabric" in place of "wool felt" fails even to recognize that, as Defendant discussed in its principal brief, many authorities recognize that "wool felt" and "felted wool" are different things.[5] See Memo at 11, n.21.[6] There can be no question that what both Defendant and Plaintiff sell is "wool felt."

---

University's" "Dictionary of Fabric Terms" definition); Reply Exh. S (NEW RIVERSIDE UNIVERSITY DICTIONARY 471 (1988); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 428 (10th ed. 1993); AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000) at http://www.bartleby.com/61/44/F0074400.html (last visited December 7, 2004). There can be no question whatsoever that "wool felt" is a subcategory of the larger category of "felt," indeed perhaps the most common subcategory, and thus the protection of "wool felt" as a generic term is compelled. See *Henri's Food Prods. Co. v. Tasty Snacks, Inc.*, 817 F.2d 1303, 1305-6 (7th Cir. 1987) (explaining that a subcategory of goods can be generic, distinguishing LITE as a subcategory for beer but TASTY not a subcategory for salad dressing). The fact that "wool felt" is not in the dictionary in the "W's" is of no moment. See also *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397 (6th Cir. 2002) (stating that the absence of a composite term in a dictionary does not determine the lack of genericism).

[4] The court noted that it too, had "endeavored to employ other terms" in its opinion, *id.* at 1041, likely alluding to its use of "sightless former servicemembers," *id.* at 1037, and "formerly sighted former warriors," *id.* at 1041.

[5] "Wool felt" is a nonwoven material created by treating wool with water, heat and agitation so that the fibers interlock. A "felted wool" is a woven or knitted wool fabric that has been treated so that it has a felt-like surface, a more durable fabric. CLAIRE SHAEFFER, FABRIC SEWING GUIDE 285-288, 480 (2d ed. 1994) (excerpts at Reply Exh. T); CREATIVE PUBLISHING INTERNATIONAL, EXPLORING TEXTILE ARTS 35, 40-41 (2002) (excerpts at Reply Exh. U, describing "making felt" as a nonwoven process and describing "felted wool" as made from woven or knitted fabrics). The two terms are simply not interchangeable, and "felted wool" is not what either party sells. See, e.g.,

4

C.  The "Relevant Universe" for "Wool Felt" is Broad, And All of Defendant's Evidence of Genericness Is Probative

Plaintiff spends much of its brief arguing that Defendant has not provided sufficient evidence of genericism in what Nonwovens would like to have defined as the "relevant universe"; that is, consumers in the "craft, novelty, quilt or apparel industries." Opp. at II.F. Plaintiff should well know that the consumers of the parties' wool felt fill a much larger world. Yet, in whatever manner Nonwovens would like the Court to define the universe, it has to know – and had to know when it filed this lawsuit – that the evidence that "wool felt" is the generic term for wool felt in that universe is simply overwhelming.

As an initial matter, it should be noted that Nonwovens' suggested scope of the "relevant universe" is contrary even to its own filings with the U.S. Patent and Trademark Office. "[A] proper genericness inquiry focuses on the description of services set forth in the certificate of registration." *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 640 (Fed. Cir. 1991); *Glover*, 74 F.3d at 59 (looking at registration to define the relevant public). The Plaintiff's identifications of goods in its registrations of its two "trademarks" were, respectively, simply "wool felt" and "fabric, namely, felt consisting of wool." See SJ Exhs. B, F. Plaintiff classified its goods in International Class 24, *id.*, which is the class for "fabrics." TMEP 1401.02(a). There is no evidence from the registrations that the "relevant universe" is otherwise limited. Thus, Defendant did, and this Court should, look to evidence of the use of the term "wool felt" in all industries that use that material.

Yet, even if the Court were to do as Nonwovens asks, it would fare no better. Nonwovens' theoretical attack on the purported insufficiency of CPE's evidence of genericism

---

"Simple Stockings," SewNews Sew Up the Holidays, 2004, at 34 (attached as Reply Exh. V) ("You can use any fabric that doesn't fray, such as felt (as shown in our sample), felted wool, wool felt, faux suede or fleece.").
[6] See *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 292 (3d Cir. 1986) (finding that "chocolate fudge" for a soft drink was generic, because "it appears difficult, if not impossible for a competing producer to convey to the public that its product shares this functional flavor characteristic without using the words 'chocolate fudge.'").

5

does not point to any evidence, either its own or CPE's, that indicates that the outcome would be any different if the inquiry was limited to the "craft, novelty, quilt or apparel" markets. To the contrary, referring to the evidence that Defendant already provided in its principal brief, it can be seen that many of the references were indeed to "craft, novelty, quilt or apparel" applications for wool felt. See SJ Exh. N (Google results list showing, *inter alia*, a web site selling supplies that states "Handwork Supplies . . . "Plant – Dyed All Wool Felt – Individual Pieces"; from the www.sewnews.com web site, someone writing, "I'm confused as to the difference between felted wool and wool felt . . ." and another article explaining that "Because wool felt is a nonwoven fabric with some inherent stretch, it doesn't need to be cut on the bias as woven collars must . . ."; a reference to a quilt exhibit, describing the exhibit as "CRAZY 60 x 63 inches – unknown quilter, circa 1940, wool felt, pieced and machine embroidered . . ."; from a gallery web site, "Handmade wool felt using watercolor inlay with the felting needle . . ."; from the Home & Garden Television web site, "Wool Felt Appliqué Quilting team Patti Eaton and Pam Mostek show host Alex Anderson the ins and outs of working with wool felt as an appliqué embellishment . . ."); see also SJ Exh. M (Nexis results list showing references to, in Newsday magazine, "Crocheted wool felt fringed shawl . . ."; from the Los Angeles Times in an article entitled "Side Streets are Full of Handcrafted Wares," "soft, durable and comfortable wool felt that can be dressed up . . ."; Martha Stewart column in multiple newspapers saying "Pure wool felt is a wonderful fabric . . ."; from the Boston Herald an article entitled "Starry Quilts Bedazzle the Eye," "It is made from pieced wool felt, . . ."; and from the Philadelphia Inquirer, "snowy wool felt coats . . .").

Further, attached hereto as Reply Exh. W are results of additional Google searches limiting the searches to "'wool felt' craft," "'wool felt' novelty," "'wool felt' quilt," "'wool felt' clothing," and "'wool felt' apparel." The hits again number in the tens of thousands, virtually all

6

of them showing a generic use of "wool felt." Clearly, the meaning of "wool felt" for consumers in the "craft, novelty, quilt or apparel" industries is no different than the meaning of this generic term in the general population.

   D.   There Is Overwhelming Evidence that "Wool Felt" is Generic.

No matter what universe the Court considers, Defendant has provided ample evidence that "wool felt" is the generic term for the parties' goods. Indeed, the available evidence that the words "wool felt" are generic is so overwhelming that the greatest difficulty for Defendant has been not to bury the Court with paper presenting this evidence. Thus, for example, Defendant's opening brief provided only excerpts of the first 100 references of a Google search that showed almost 79,000 results, almost all clearly generic references to "wool felt," and short excerpts from full-length news articles showing the same. If these references were printed out, they would fill dozens of banker's boxes. In addition, CPE cited dozens of web sites for the Court's review, all showing the generic use of "wool felt." All of these are only a small sample of the thousands upon thousands of readily found pieces of evidence that "wool felt" is generic.

The Plaintiff, however, nonetheless challenged Defendant's quantum of proof. CPE therefore has obtained, and with this Reply Brief presents, even more evidence, specifically looking only in the "craft, novelty, quilt or apparel" fields specified by the Plaintiff as relevant. As part of one such effort, in two and one-half hours' time in only two stores, one shopper found five books and magazines referring to "wool felt," took photographs of a local fabric store selling "wool felt," and purchased a sewing pattern calling for "wool felt." See Reply Exh. X (Declaration of Pamela S. Chestek and attachments thereto). There is virtually no limit to the amount of evidence that one could gather showing that "wool felt" is broadly understood as a generic term; the only limit for Defendant is to the amount of money it is being forced to spend to prove the frivolousness of this lawsuit. But, because Plaintiff has challenged the sufficiency

of Defendant's uncontested evidence, here's a bit more, including regulatory definitions, books, magazines and other publications, generic use by competitors, generic use of the term by the mark's owners themselves, and use of the term by third parties in trademark registrations. See *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 406 (6th Cir. 2002) (referencing these available sources of evidence of genericness).[7]

    1.   Regulatory Definitions and Other Government Usage.

As long ago as 1952, the U.S. Department of Commerce promulgated commercial standards for "wool felt." See Reply, Exh. Y. Entitled "WOOL FELT," it explained that its purpose "is to provide standards for wool felts for the guidance of producers, distributors, and users in order to eliminate confusion resulting from a diversity of types." *Id.* at 3. It further stated that the wool felt, as defined in the standard, "is commonly referred to as wool felt . . ." and describes the wool felt as made up of wool, reprocessed wool, and/or reused wool, defining each specifically. *Id.*

The Library of Congress Card Catalog shows that titles of publications include the words "wool felt." Reply Exh. Z. Indeed, from one title it would appear that in 1933 there was an

---

[7] A survey is not also required and would be superfluous. No doubt Plaintiff would like to see Defendant spend tens of thousands of dollars on a survey to prove what is patently obvious to the world at large, but such proof is not needed. In cases such as this, where a party is trying to claim exclusive rights in words that have been in standard language (as opposed to an invented word that may have become generic), survey evidence is not necessary. *Hunt Masters*, 240 F.3d at 255 ("Hunt does not claim to have first coined the term 'crab house.' Therefore, it is not necessary to determine whether the term has become generic through common use, rendering Hunt's customer survey irrelevant.").

  Nonwovens' unverified statement that it has engaged an expert to conduct a consumer survey and its allegations that it cannot execute its survey because of CPE's "delaying tactics," Opp. at II.I. (apparently referring to this motion), are curious for a number of reasons. First, Nonwovens has not identified any information that it must have from the Defendant before it can execute a survey. Second, it apparently has had no difficulty identifying the "relevant universe" for a survey, see Opp. at II.F., and it has identified no obstacle to surveying that population. Further, Nonwovens had time even before it filed the Complaint to execute a survey, and it has now had eight months since it did file the Complaint to do so, making any claim that it has had insufficient time disingenuous. Rather, it appears that Nonwovens true motivation is to stall the outcome of this proceeding until it can obtain competitive business information, as unabashedly shown in its recent discovery requests. See Memorandum in Support of National Nonwovens, Inc.'s Motion to Compel Production of Documents (Docket No. 19) at 4-5, 7 and attachments thereto (discovery requests directed specifically to Hancock Fabrics).

entire industry devoted to wool felt manufacturing. *Id.* (listing one publication as "Code of fair competition for the wool felt manufacturing industry as approved on November 27, 1933 by President Roosevelt . . . ."). The current U.S. tariff schedule lists tariffs for "felt . . . of wool" and for footwear "with soles and uppers of wool felt." UNITED STATES INTERNATIONAL TRADE COMMISSION, PUB. NO. 3653, HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES, 5602.10 & .21, 6405.20.60 (2004 Supp. 1) (excerpts attached as Reply Exh. AA).

    2.  Internet and Nexis

Plaintiff in its brief challenges the relevance and context of the Google references that Defendant provided in its opening brief. Unlike Plaintiff, see Opp. at I.B. and Opp. Attachment E, or the defendant in the case upon which Plaintiff relies, see *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 546 (10th Cir . 2000), Defendant did not just "cherry-pick" results from its Google searches but instead included an unculled representative sample of the results returned for its Google query for "wool felt."[8] As can be seen from the excerpt of each Internet web page shown in the results list, the references are in lower case letters in the text of sentences using the term as the designation for the articles themselves, e.g., "Code Felt manufacturers pressed wool felts, . . ."; "Our olive wool felt safari, . . ."; "Indiana Jones wool felt fedora . . ."; "American-made wool felt hats . . ."; "wool felt blankets . . . ." These uses of the term are clearly generic in nature. Plaintiff, however, appears to find significant that Defendant's search also found citations to Nonwovens own web site or product. Opp. at II.C. The only significance of this, however, is that Plaintiff's attempt to claim "WoolFelt" as a trademark also is included with the thousands of

---

[8] Google is competent evidence in trademark cases. See *Ale House Mgmt.*, 205 F.3d at 141 (relying on Internet searches in genericism case); *New Sensor Corp. v. CE Distribution LLC*, 303 F. Supp.2d 304, 311, n.2 (E.D.N.Y. 2004) (stating that Google results provide insight into the meaning of the plaintiff's mark "Svetlana"); *Johnny's Fine Foods, Inc. v. Johnny's Inc.*, 286 F. Supp.2d 876, 890 (M.D. Tenn. 2003) (relying on a Google and Yahoo! searches as evidence of common use of the word "Johnny's"). See also Declan McCullagh, "Search Engines Take the Stand," CNET News.com, at http://news.com.com/2100-1032_3-5211658.html (last visited December 6, 2004) (quoting Temple University law professor David Post, "There's a lot of talk in legal cases about what do words mean, what is their usage," he said. "[Google] is a remarkable and more objective tool to find out how people use words . . . .").

generic uses of that term on a Google search for "wool felt."[9] CPE's principal brief also presented Nexis evidence that further demonstrated the common use of "wool felt" as a generic term, discussed in more detail *supra*.[10]

Plaintiff attempted to respond to this evidence, and further mislead the Court, by producing the results of electronic searches for the trademark TEFLON, which did, indeed, receive many "hits." In doing so, however, Plaintiff only highlighted the difference between "trademark" use and "generic" use of words and thus further proved Defendant's very point. In Nonwovens' Nexis evidence, virtually every single use of the word "Teflon" is capitalized, indicating the writers' understanding that the word is a trademark. See Opp. Attachment M *passim*. Compare this to CPE's Nexis references for "wool felt" where just the opposite is true: there are *no* references that capitalize "wool felt." See, SJ Exh. M, *passim*; see also International Trademark Association web site FAQs on proper use of a trademark, at http://www.inta.org/info/faqsU.html#2 (last visited December 7, 2004) (stating that proper trademark use is to distinguish trademarks from surrounding text with at least initial capital letters or in all capital letters).[11]

3.  Books, Magazines And Other Publications

Traditional hard publications currently on bookstore shelves also show the generic use of "wool felt." For example:

---

[9] The Google results also show "paid links," i.e., advertisements, at the top and right-hand side of the results page. These references also show that vendors are using "wool felt" as a generic term. See, e.g., SJ Exh. N (showing advertisements for "Real Wool Felt," "Wool Felt for Sale," "Wool Felt"). Following the links to the sites advertised also shows how the words "wool felt" are used generically on the advertisers' own web sites. See Reply Exh. BB (showing search results for eBay paid link for words "wool felt," listing hats, clothing, handbags, a Boy Scout sash, footwear, pillows, spats and appliqué for quilting, and search results for Shop.com paid link showing numerous articles of "wool felt," including "Wool Felt-Felt Swatch Card" and "12" x 12" Plant Dyed Wool Felt.")

[10] Excerpts from Nexis stories are competent evidence of genericism. See *In re Merrill Lynch, Pierce, Fenner, and Smith*, 828 F.2d 1567, 1571 (Fed. Cir. 1987).

[11] It is also worth noting that the decision holding that TEFLON had not become generic was in 1975. *In re E. I. DuPont de Nemours & Co. v. Yoshida Int'l, Inc.*, 393 F.Supp. 502 (S.D.N.Y. 1975). All of the Plaintiff's "evidence" refers to uses in the 1980's and 1990's. Opp. at II.F. At worst, all that the Plaintiff may have proven is that TEFLON became generic after the 1975 decision.

10

- "You can use any fabric that doesn't fray, such as felt (as shown in our sample), felted wool, <u>wool felt</u>, faux suede or fleece." "Simple Stockings," SewNews Sew Up the Holidays, 2004, at 34 (emphasis added) (attached as Reply Exh. V).

- "<u>Wool felt</u> is used as interfacing under highly embellished garment details to support weight." SANDRA BETZINA, FABRIC SAVVY 195 (2002) (emphasis added) (attached as Reply Exh. CC).

- "Although the precise origins of wool felting remain a mystery and the source of dispute, <u>wool-felt</u> articles found in Siberian tombs date back to 2000 B.C. . . ." and "Create true <u>wool felt</u> on a needle-felting machine . . . ." Jane Swiggum, "Needle Felting 101," SewNews, January 2005, at 36, 40 (emphasis added) (attached as Reply Exh. DD).

- "<u>Wool felt's</u> unique properties . . . ." and "There are tall tales about Noah discovering <u>wool felt</u> on the floor of the ark." CHAD ALICE HAGEN, FELTMAKING 7, 8 (2002) (emphasis added) (excerpts at Reply Exh. EE).

Other examples include sewing patterns that call for "wool felt." <u>See</u>, <u>e.g.</u>, Reply Exh. FF (Vogue Pattern 626, copyright 2003, calling for "FABRICS: <u>Wool</u> and Wool Blends <u>Felt</u>. Unsuitable for obvious diagonals, plaids or stripes."). Books and magazine articles are devoted to hand-making wool felt. <u>See</u>, <u>e.g.</u>, CHAD ALICE HAGEN, FELTMAKING (2002) (excerpts at Reply Exh. EE); CREATIVE PUBLISHING INTERNATIONAL, EXPLORING TEXTILE ARTS (2002) (excerpts at Reply Exh. U); Jane Swiggum, "Needle Felting 101," SewNews, January 2005, at 36 (attached as Reply Exh. DD). Only by ignoring the obvious can Plaintiff claim that those making and using this fabric may not call it "wool felt."

   4.   Generic Use By Retailers

And there is, of course, further evidence that retailers of fabric also do not treat the term "wool felt" as a trademark. Joann Fabrics sells Nonwovens wool felt, Exh. X (Chestek Decl. at

11

¶ 4), yet does so in at least some cases without even indicating on the bolt end of the fabric roll that "wool felt" is anything but just the generic description of the fabric. See *id.*, attached photographs. As can be seen from those photographs, there is no ® symbol on the bolt, nor is "WOOL FELT" even one word. Instead, the label on the Nonwovens product is identical in syntax to the other felt products on display, also identified generically. See *id.*

    5. Generic Use By Competitors

Attached as Reply Exh. GG are printouts of sites linked to Google advertisements for The Felt People, Waldorf Supplies, and Shop.com. "The Felt People," also doing business as "Central Shippee," sell "Synthetic Felts" and "Wool Felts." Synthetic felts have "All the features of Real Wool Felt at an affordable price," but "Nothing beats the performance of traditional wool felt." *Id.* Waldorf Supplies sells a 70% wool/30% rayon that has "the feel and texture of all wool felt – at a great price!!" *Id.* Shop.com's "Magic Cabin" section also sells wool felt, and it claims that "Wool felt is one of the most versatile and practical craft fabrics." *Id.* The Nonwovens 30(b)(6) witness testified, upon being shown a number of web page print outs, that nine of them were "infringing," see Reply Exh. HH (Centofanti Depo. p. 73-74), steadfastly refusing to admit that virtually everyone who makes, markets, buys, or uses felt made from wool simply calls it "wool felt."[12]

    6. Use Of The Term By Third Parties In Trademark Registrations

Further, any claim by the Plaintiff that "wool felt" or "felt consisting of wool" as appearing in its own registrations was not generic is belied by all of the other trademark registrations for goods identified as "wool felt."[13] Other registrations show that "wool felt" was the generic name for the product years before the Plaintiff decided to try to improperly assert

---

[12] Contrary to the Plaintiff's claim, Opp. at II.H., the Defendant indeed uses "wool felt" generically on its web site. See Reply. Exh. II.
[13] As discussed in Defendant's principal brief, Plaintiff's own, initial trademark application disclaimed any exclusive right to use the words "wool felt" in the initial application. See SJ Exh. E.

exclusive rights. See Reply Exh. JJ (registrations all predating the Plaintiff's WOOLFELT registration that describe the goods as "wool felt" either in the same International Class as Plaintiff's, 24 for fabrics, in International Class 25 for apparel, or in International Class 26 for "fancy goods" as part of kit for a "craft" application, including, *inter alia*, Reg. No. 297,043, using the mark SOLEIL FELT for wool felt in 1932).

    7.   The Mark Owner's Use of the Term

The trademark owner's own generic use of a "mark" is strong evidence of genericness. *Harley-Davidson*, 164 F.3d at 811, citing *Loglan Institute, Inc. v. Logical Language Group, Inc.*, 962 F.2d 1038, 1041 (Fed. Cir. 1992). Thus, one need go no further than Nonwovens' own web site to find irrefutable evidence of genericism. Despite Michalina Centofanti's protestations to the contrary (Reply Exh. HH, Centofanti Depo. at 42-44 claiming that there is no such thing as "wool felt") and the pendency of this lawsuit with Nonwovens' attempt to claim exclusive rights in the words "wool felt," to this day, pages and pages of Nonwovens' own web site use the words "wool felt" to describe its product. Nonwovens claims that it is home of "the original wool felt," is "globally recognized as the premier manufacturer of wool felt," that "Many types of businesses, organizations, and individual proprietors/designers work exclusively with Nonwovens for all their acrylic and wool felt requirements," and that it "originated as a manufacturer of wool felt for use in apparel and home furnishings." Reply Exh. KK (Nonwovens' web site, as visited December 10, 2004). Like everyone else involved with wool felt, Nonwovens has difficulty finding anything else to call that material except "wool felt."[14]

---

[14]  Nonwovens apparently is not now limiting its claim to "WoolFelt" as one word, and is instead affirmatively claiming trademark rights in the two words "Wool Felt." See Attachment LL.

**II.     Remaining Claims**

   A. <u>Copyright Claim</u>

Plaintiff claims that somehow Defendant infringed not only the words of its instructions for boiling wool felt (addressed in Defendant's opening brief), but somehow infringed the "overall presentation" of the instructions. Opp. at II.L. This, however, implicitly misstates the scope of the copyright in the instructions that Plaintiff claimed in its registrations. That is, according to those documents, Copyright Registration No. TX-5-869-234 is for "Entire Text" (<u>see</u> Exh. G of Amended Complaint) and Copyright Registration No. TX-5-869-233 is for "Instructions for Boiling Felt Products Consisting of Wool" (<u>see</u> Exh. F of Amended Complaint). Neither registration claims any copyright protection for anything but the text of the instructions.

Second, even assuming that there is protected "presentation" of the web page, Nonwovens has failed to come forward with anything to rebut CPE's assertion that there is no evidence of infringement. <u>See</u> *FDIC v. Municipality of Ponce,* 904 F.2d 740, 742-43 (1st Cir. 1990) (noting that if the moving party demonstrates that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to establish the existence of a genuine material issue). Notably, not only is Nonwovens unable to present evidence of infringement, it does not even provide the Court with copies of the purportedly infringed and infringing works. CPE does so herewith, and the Court can see that there is nothing similar about them. Compare Reply Exhs. MM (copyrighted works) and NN (allegedly infringing work). The copyright claims must also be dismissed.[15]

---

[15] The Plaintiff has apparently abandoned any claim of copyright in the "Franny" design. It has not rebutted the Defendant's argument of non-infringement in its opposition.

B. <u>Other Unfair Competition Claims</u>

There are no unfair competition or unfair trade practices claims alleged that are different in character from the trademark infringement claims already discussed, with the exception of a vague allegation that CPE infringed a "sheep" design.

Plaintiff, without explanation or elaboration, suggests that there must be something wrongful going on because it tried to sell wool felt to Hancock Fabrics, was unsuccessful, terminated discussions, and then – *six months* later (March, 2003 to September and October, 2003) – Defendant was selling its "Classic Wool Felt" and "Imperial Wool Felt" products to Hancock Fabrics. <u>See</u> Opp. at I.D. and Opp. Attachment I. Why this is "evidence" of anything wrongful whatsoever is left for all of us to wonder. It does, though, explain why Nonwovens has instituted this frivolous litigation campaign against CPE. <u>See</u> Opp. at II.M. (stating that it has no evidence supporting its unfair competition and 93A claims but that it might be able to make a claim if it could only get the competitive business information regarding Hancock Fabrics).

With respect to any supposed infringement of a "sheep" trademark, Plaintiff must come forward with evidence to rebut the Defendant's assertion that there is an absence of evidence of any infringement. *Ponce*, 904 F.2d at 742. Plaintiff has not done so. As noted by Nonwovens itself, Plaintiff must establish ownership of a mark, the use of the mark in interstate commerce, and a likelihood of confusion. Opp. at II.M. Nonwovens has not come forward with evidence on a single one of these elements with respect to any sheep mark. *Id.*

These claims are frivolous as well and must be dismissed.

**III. Conclusion**

"During its whole existence the name had been given to the article, and that was the only name by which it was possible to describe it. . . . [H]ow can it be held that there was an infringement of a trademark by employing the only terms possible to describe the article the

15

manufacture of which was open to all?" *Holzapfel's Compositions Co. v. Rahtjen's Am. Composition Co.*, 183 U.S. 1, 9, 22 S. Ct. 6, 8-9, 46 L. Ed. 49 (1901).

      Plaintiff's lawsuit, an attempt to prevent the lawful use of the words "wool felt" by a competitor in the marketing of that product, is frivolous. The Court must grant summary judgment in favor of the Defendant and award Defendant its attorneys' fees and costs.

                                      Respectfully submitted,
                                      CONSUMER PRODUCTS ENTERPRISES, INC.
                                      By Its Attorneys:

Dated: December 10, 2004             /s/ James C. Duda
                                      James C. Duda
                                        BBO No. 551207
                                      Joshua P. Grey
                                        BBO No. 650544
                                      Pamela S. Chestek
                                        BBO No. 647124
                                      Bulkley, Richardson and Gelinas, LLP
                                      1500 Main Street, Suite 2700
                                      Springfield, MA 01115
                                      Tel: 413-781-2820
                                      Fax: 413-272-6806
                                      e-mail: jduda@bulkley.com
                                                  jgrey@bulkley.com
                                                  pchestek@bulkley.com