UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL NONWOVENS INC. )<br> )<br>Plaintiff )<br> )<br>v. )<br> )<br>CONSUMER PRODUCTS ENTERPRISES, INC.)<br> )<br> )<br>Defendant ) | Civil Action No.: 04-30078-MAP |

**PLAINTIFF'S SUPPLEMENT TO ITS OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff National Nonwovens Inc. ("NNI") presents this Supplement To Its Opposition To Defendant's Motion For Summary Judgment in accordance with Magistrate Judge Neiman's Order of January 19, 2005, and Rule 56(f) of the Federal rules of Civil Procedure.

During the week beginning January 23, 2005, Plaintiff took the depositions of three present employees of Defendant Consumer Products Enterprises, Inc. ("CPE") and the deposition of a former employee of CPE. As a result of the depositions, Plaintiff is able to more fully respond to some of the statements made by the Defendant in its Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

1

Relevant Market

In the Defendant's Motion For Summary Judgment the Defendant argues that Plaintiff's "WoolFelt" trademark is generic. In primary support of its argument for genericness, the Defendant has offered the results of Google and Lexis/Nexis searches as probative evidence

In Defendant's Reply to Plaintiff's Opposition to Defendant's Motion, the Defendant attempted to define a "relevant universe" for Plaintiff's and Defendant's felted wool products in an effort to justify the breadth of data developed in the Google and Lexis/Nexis searches.

According to the testimony of John Pugh, Defendant's CEO, the customers for Defendant's "craft felts" are "retailers and independent or chains that sell textile products or fabricated products." For "wool felt products" he responded "I don't know of any customer outside of a retailer". (Att. N) In further definition and confirmation, when Mr. Jeff Berline, Defendant's former CEO, was asked where the "Imperial Wool Felt" product was sold, he responded "...only to fabric stores, piece goods, fabric retailers". He went on to state that in regard to the sale of "Classic Wool Felt" products he would have to include "craft retailers as well as fabric retailers." (Att. O) At the deposition of Mr. Richard Carr, Defendants Vice President of Sales and Marketing, Mr. Carr was asked to identify Defendant's customers in the "quilt market", a felted wool product market. He responded "First level would be major fabric retail chains. Then there is a large base of small independently owned chains and/or individual stores". (Att. P)

2

Based on the testimony of Defendant's present and former CEOs and Defendant's present Vice President of Sales and Marketing, it is clear that the "relevant market" for the felted wool products involved in this litigation is very specific. Neither the Plaintiff nor the Defendant sells a felted wool product directly to an ultimate consumer, e.g. a crafter. In view of this information, the piles of data developed in Defendant's Google and Lexis/Nexis searches do not present an accurate view of the relevant market in which the strength of Plaintiff's "WoolFelt" trademark should be judged

Defendant's Trademark Applications

Probably the most startling evidence unearthed during the depositions that undermines the Defendant's position on "genericness" is the fact that the Defendant has "abandoned and cancelled" its U.S. Trademark Registration Applications for the marks "Classic Wool Felt" and "Imperial Wool Felt" and filed new Applications for the same marks.

On or about August 7, 2004, approximately 3 months after the institution of this litigation, the Defendant filed a trademark application in the U.S. Patent & Trademark Office for the mark "Classic Wool Felt' and a trademark application for the mark "Imperial Wool Felt'. The former application was given Serial No. 76/606,508 (Att. G) and the latter Application was given Serial No. 76/606,509. (Att. H)

Contrary to Defendant's position in this litigation that the mark "WoolFelt" is generic, Defendant did not disclaim the term "Wool Felt" as a generic term or as being

3

descriptive. This issue was raised in Plaintiff's Opposition to Defendant's Motion for Summary Judgment that was filed with the Court on or about December 1, 2004.

During the deposition of John Pugh, Defendant's CEO, on January 25, 2005, it was unexpectedly learned that the on or about January 7, 2005, the Defendant "cancelled and abandoned" the original applications for "Classic Wool Felt" and "Imperial Wool Felt" (Att. Q) and filed two new applications, i.e. U.S. Trademark Application Serial No. 76/276,623 for the mark "Classic Wool Felt" (Att. R) and U.S. Trademark Application Serial No.76/627,624 for the mark "Imperial Wool Felt". (Att. S) These new Applications were filed in spite of the fact that Mr. Pugh testified that the only error in the original Application for "Classic Wool Felt" was "...our Classic wool felt, is not 100 percent synthetic fibers. It's 60 percent rayon and 40 percent wool." and that in the original Application for "Imperial Wool Felt" the description was in error. (Att. N) At Plaintiff's request, copies of the new applications were finally provided to the Plaintiff on January 26, 2005, the day after Mr. Pugh's deposition and 19 days after the date the applications were sent to the United States Patent & Trademark Office.

The new applications are significantly different from the original applications in two major respects: first, the nature of the goods has been significantly changed and second, the term "Wool Felt" has been disclaimed. As to the nature of the goods, both applications now identify the goods as "Wool Felt" whereas in the original applications, the goods were described as "Textile articles, namely stiffened needle punch fabric of synthetic fibers with pressure sensitive adhesive backing and glitter" for "Imperial Wool Felt" and "Textile fibers, namely needle punch fabric of synthetic fibers" for "Classic Wool Felt"

4

Defendant's actions with regard to its trademark applications are deceptive at best and very disturbing in that Plaintiff strongly believes that the original applications would most probably have been examined prior to the scheduled hearing on Defendant's Motion for Summary Judgment on February 18, 2005. As a result of such an examination, the Plaintiff strongly believes that both applications would have been refused registration in view of Plaintiff's two "WoolFelt" U.S. Trademark Registrations. This, coupled with Defendant's lack of disclaimer for the term "Wool Felt" is compelling evidence that Plaintiff's "WoolFelt" trademark is not generic.

Plaintiff's Competitors

In Defendant's Reply it listed three companies that it found in an Internet search as competitors of the Plaintiff. Defendant also commented that Plaintiff's 30(b)(6) witness testified that entities shown in nine web page printouts were infringers. The problem with the position taken by the Defendant is that none of the noted entities are in fact competitors.

During the deposition of John Pugh, Defendant's CEO, Mr. Pugh was asked to identify CPE's competitors in the "craft felt" business and in the "wool felt" business. In response to the former question Mr. Pugh identified "Kunin or Foss Manufacturing and National Nonwovens" and in response to the latter question Mr. Pugh identified "National Nonwovens". (Att. T)

At the deposition of Jeff Berline, Defendant's former CEO, Mr. Berline was also asked to identify competitors to CPE's "colored and acrylic felt products". Mr. Berline

replied "Domestically it was National Nonwovens, Kunin Felt, and then offshore a variety of manufacturers in China, Taiwan. Mexico became -- two different manufacturers in Mexico as well." (Att. U) Mr. Berline's comments were made in reference to Defendant's "Classic Wool Felt" product. As for competitors with regard to "Imperial Wool Felt" product, Mr. Berline did not know of any competition to Plaintiff's "WoolFelt" product. (Att. U) Mr. Berline was also asked the following question:

> Q. Are you aware--at the time you introduced this--these two products that would be Imperial Wool Felt and Classic Wool Felt products were you aware ever any other competitors products that used the term wool felt in the name of the product?
>
> The Witness. I can't honestly say--I would have to honestly say, no, I wasn't aware that there was a name that anyone was using as a part of their branded line.
> (Att. U)

In view of the above, it is clear that contrary to Defendant's assertions, Plaintiff's competitors were not "generically " using the term Wool Felt". Rather, the Plaintiff and Plaintiff's customers were using the Plaintiff's trademark "WoolFelt" to identify Plaintiff's felted wool product.

### Defendant's Knowledge of Plaintiff's Trademarks And Access To Plaintiff's Copyrights

Knowledge of Plaintiff's trademarks and access to Plaintiff's copyrighted materials is confirmed by Billy Liner, Defendant's graphic artist, and Richard Carr, Defendant's Vice President of Sales and Marketing. While Mr. Liner did not have any knowledge regarding many areas of inquiry and had great difficulty recalling facts in areas that he should have been familiar, he did acknowledge that he was aware of

6

Plaintiff's "WoolFelt" trademark, had reviewed Plaintiff's web site, and had conducted searches in the database of the United States Patent & Trademark Office. (Att. V) Similarly, Mr. Carr acknowledged that at the time Defendant was getting into the felted wool products business he was aware of Plaintiff's products and the "WoolFelt" trademark. (Att. P)

As Mr. Liner's and Mr. Carr's knowledge of Plaintiff's trademarks and access to Plaintiff's copyrights predates any actual use of "Classic Wool Felt" and/or "Imperial Wool Felt" and/or the creation of any marketing materials in support thereof, Defendant's knowledge of the trademarks and access to Plaintiff's copyrighted materials can no longer be in question in this litigation.

Unfair Competition Claims

Plaintiff's efforts to gain information regarding Defendant's business relationship with Hancock Fabrics has once again been stymied by the Defendant. During the depositions of three of Defendant's employees, the common refrain was that Defendant's former CEO, Jeff Berline, made all the decisions regarding the adoption and use of the trademarks "Classic Wool Felt" and "Imperial Wool Felt" and was the person with all the answers regarding the business relationship with Hancock Fabrics concerning these products. Unfortunately for the Plaintiff, Mr. Berline's recollection of the facts was not as advertised by the other deponents. While Mr. Berline did state that he most likely wrote letters to Hancock Fabrics in an effort to sell product to them, no such letters have been produced by the Defendant. The only communications (other than product invoices) between the Defendant and Hancock Fabrics that have been

7

produced are one letter and 13 short emails, all dated in 2004. It is abundantly clear that the Plaintiff must take discovery from Hancock Fabrics in order to ascertain the specifics of its unfair competition claims

The Plaintiff submits that based on just the limited amount of discovery it has been able to have in this case, it has clearly demonstrated that there is a genuine issue of fact with regard to Defendant's claim that Plaintiff's "WoolFelt" trademark is generic. Accordingly, it is respectfully requested that the Court deny Defendant's Motion for Summary Judgment and permit this litigation to go to trial.

Respectfully submitted,
National Nonwovens, Inc.
By Their Attorney

Date: Feb. 8, 2005

Arthur F. Dionne
BBO No. 125,760
J. Kevin Grogan
BBO No. 635,089
McCormick, Paulding & Huber LLP
1350 Main Street, 5th Floor
Springfield, Massachusetts 01103
Tel. (413) 736-5401
Fax (413) 733-4543

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was mailed, postage prepaid, this __8th__ day of __Feb.__, 2005 to all counsel of record for each party.

_____
Arthur F. Dionne, Esq.

# PLAINTIFF'S ATTACHMENT N
# CONFIDENTIAL

# PLAINTIFF'S ATTACHMENT O
# CONFIDENTIAL

# PLAINTIFF'S ATTACHMENT P
# CONFIDENTIAL