UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30078-MAP

| | | |
|---|---|---|
| NATIONAL NONWOVENS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANT'S REPLY TO |
| v. | ) | PLAINTIFF'S SUPPLEMENT TO ITS |
| | ) | OPPOSITION TO MOTION FOR |
| CONSUMER PRODUCTS | ) | SUMMARY JUDGMENT |
| ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

National Nonwovens, Inc. (hereinafter, "National Nonwovens"), was permitted to supplement its opposition to the Motion for Summary Judgment of Defendant Consumer Products Enterprises, Inc. (hereinafter, "CPE") (see Electronic Order of January 19, 2005), after representing to Magistrate Judge Neiman in open Court that it likely would uncover new evidence relevant to responding to Defendants' motion during four depositions it insisted were necessary to take in South Carolina before the hearing on that motion. The supplementation it has now filed, however, is completely devoid of any new evidence that is relevant to the subject matter of the summary judgment motion.

**A. Nonwovens' supposed new evidence for the "Relevant Market" is neither new nor relevant.**

The only issue raised by Plaintiff in its supplemental brief that even theoretically addresses the merits of CPE's pending motion for summary judgment has to do with the population to be considered when evaluating genericism; that is, what Plaintiff terms the "Relevant Market." In this respect, after four days of deposition testimony, costing CPE approximately fifteen thousand dollars in attorneys' fees and travel, National Nonwovens now

can affirm that, just like itself,[1] CPE does not sell its wool felt product directly to the end user, but instead sells it to retailers who then sell it to the ultimate consumer. CPE had never suggested that it contested this obvious fact, of which National Nonwovens, as a primary competitor of CPE, has long been aware.

In any event, that fact is wholly irrelevant to the issue of genericism, or any other issue in this case. The contention that, because a manufacturer does not sell its product directly to the consuming product, consumers are not a part of the "relevant market," is "really misguided." *Sassafras Enter., Inc. v. Roscho, Inc.*, 915 F.Supp. 1, 7 (N.D. Ill. 1996).

> That contention is really misguided, because [plaintiff's] products are primarily sold to retailers for resale to consumers under the [plaintiff's] name. As a short stroll through any local mall quickly demonstrates, almost all products intended for consumer use are not sold directly by their producers, but are first shipped off to distributors or retailers. Why should that first stopoff in the stream of commerce be the only relevant one?
>
> [Plaintiff's] initial sales to distributors or retailers do not alter the fact that the sets are ultimately sold to the consumers who are the real target group for the product . . . .

*Sassafras Enter., Inc. v. Roscho, Inc.*, 915 F.Supp. 1, 7 (N.D. Ill. 1996) (footnote omitted)[2]; cf. *Simon Prop. Group v. MySimon, Inc.*, 2001 WL 66408, at *6 (S. D. Ind. 2001) ("A survey sample drawn exclusively from a universe of industry experts should not be representative of, or reveal anything significant about, the state of mind of average consumers."); 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 15:39 (4th ed. Rel. #18, 6/2001) ("It is well settled that the assertions of retailers, who know full well from whom they

---

[1]    Opp. at 1 ("Plaintiff sells 'WOOLFELT' felted wool fabric to about 1,000 outlets and distributors.").

[2]    The *Sassafras* court contrasted the consumer products case before it to the situation in *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*, 858 F.Supp. 361, 367 (E.D.N.Y. 1994), *aff'd*, 65 F.3d 1063 (2d Cir. 1995), where the product was sold exclusively in the wholesale market to private label resellers. See *Sassafras Enter., Inc.*, 915 F.Supp. at 7 n.10.

are buying, that they themselves recognize a particular designation as a trademark, or that they believe that their customers consider it to be a mark, cannot serve to establish that members of the purchasing public, who come to the marketplace without such specialized knowledge, would in fact recognize the designation as an indication of origin."). National Nonwovens' claim that somehow only the parties to which it or CPE sells directly are the proper universe is completely and utterly wrong.

Plaintiff's theory of wrongdoing in this case is proving impossible to pin down. The Amended Complaint alleged in only the most general terms that there was "likelihood of confusion," without specifying who exactly might be confused. Amended Complaint (Docket No. 10). Thus, in Defendant's opening brief on summary judgment, it showed that the words "wool felt" were generic to the public at large. See Defendant's Motion for Summary Judgment and Supporting Memorandum (hereinafter, "Memo") at 9-15. Sensing a losing battle, Plaintiff therefore took Defendant to task in its Opposition, claiming that Defendant had to show that the words were generic, not to the public at large, but to a specific subset of that public, the "craft, novelty, quilt [and] apparel industries." Plaintiff's Opposition to Defendant's Motion for Summary Judgment (hereinafter, "Opp.") at II.F. In its Reply, Defendant disagreed with Plaintiff's conclusion on this universe, see Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment (hereinafter, "Reply") at 5, but nevertheless also demonstrated that the words "wool felt" were generic in that particular subset of the general population. Reply at 6-7 and referenced exhibits. Ever the moving target, Plaintiff now postulates, contrary to its previous position, that the proper universe is a step in the supply chain that delivers the product to the ultimate consumer, not the ultimate consumer him or herself. Plaintiff's Supplement to Its

Opposition to Defendant's Motion for Summary Judgment (hereinafter, "Supplement") at 2-3.

Plaintiff presents no authority whatsoever in support of this latest assertion. Indeed, it cannot,

because the assertion is plainly wrong and the argument frivolous.

National Nonwovens products are sold to retailers for resale to consumers under the

National Nonwovens' "mark" "WoolFelt." See Supplement at 3 ("Neither the Plaintiff nor the

Defendant sells a felted wool product directly to *an ultimate consumer, e.g., a crafter*"); Opp. at

II.F. and Pl. Exh. E[3] (faulting Defendant for "cit[ing] no trade publications specifically directed

at the craft, novelty, quilt or apparel industry" and attaching references demonstrating that the

"relevant public" is sewers, quilters, people looking for fabric stores in Las Vegas, puppet and

doll makers, crafters, and rug makers); Opp. at I.D. (complaining that the Classic Wool Felt mark

was used on the Hancock Fabrics retail web site). As Plaintiff itself had until most recently

recognized, it is the ultimate consumer's understanding of the mark, not just the understanding of

parties in the supply chain, that is relevant.

Version three of National Nonwovens' theory, that there is suddenly some different

"universe" than before, is born out of desperation, not the law. When confronted with

overwhelming evidence of genericism in the public at large, Plaintiff did not (because it could

not) come forward with rebuttal evidence,[4] but instead retorted with "wrong universe," claiming

that a smaller population was relevant. When confronted a second time with overwhelming

evidence of genericism in this newly defined universe, it again did not come forward with

---

[3]    "Pl. Exh." refers to the exhibits attached to Plaintiff's Opposition (Exhs. A through M) and the Supplement (Exhs. N through V). "Def. Exh." refers to the exhibits attached to the Defendant's Motion for Summary Judgment (Exhs. A through R), the Reply (Exhs. S through OO) and hereto (Exhs. PP through RR).

[4]    In Plaintiff's initial opposition brief it stated that it had engaged an expert to conduct a consumer survey on genericism. Opp. at II.I. It has apparently elected not to provide the Court with the survey evidence.

rebuttal evidence, but resorted once again to "wrong universe," retracting even further to a universe that consists of only the distributors for the parties' products.

Plaintiff's next retraction would have to be to "our own customers," but even this universe would be too large. As already discussed in Defendant's Reply, National Nonwovens' own customer, Joann Fabrics, uses the words "wool felt" as a generic term on its signage and on the ends of the bolts of National Nonwovens' very own product. Def. Exh. X, Chestek Declaration, ¶ 4 and attached photographs. This is because National Nonwovens *itself* must have identified the fabric to Joann Fabrics as "wool felt." Def. Exh. PP, Declaration of Joey Duncan at ¶ 4. Query how National Nonwovens can possibly claim that "wool felt" is not generic, even in the retailer link of the chain of distribution, when National Nonwovens apparently calls its own fabric "wool felt."

No matter how small Plaintiff tries to contract its universe, the words "wool felt" are, always have been, and will continue to be, the generic name for wool felt.

**B. Plaintiff's other "new" facts are similarly irrelevant.**

1. CPE's Trademark Applications

The latest red herring that National Nonwovens tosses before the Court is CPE's trademark applications for the stylized form of its marks CLASSIC WOOL FELT and IMPERIAL WOOL FELT. A review of Plaintiff's opposition and supplemental briefs, however, reveals that Plaintiff does not actually explain how Defendant's trademark applications are relevant in any way whatsoever to the genericism of the words "wool felt."

Rather, Plaintiff implies that there is something underhanded going on (what that could be is also not at all clear) because Defendant filed trademark applications for CLASSIC WOOL FELT and IMPERIAL WOOL FELT, but then abandoned the applications and re-filed them.

Aside from being irrelevant, Plaintiff's suggestion of wrongdoing is also a deceptive misrepresentation of the record.  As CPE's Chief Executive Officer testified at his deposition, an obvious error had been made in the description of the goods when CPE's trademark counsel had prepared the original applications.[5]  Since the regulations of the United States Patent and Trademark Office prohibit substantive changes to the description of goods in a trademark application, it would not have been possible to revise the descriptions in the applications as originally filed.[6]  CPE necessarily, then, had to abandon the applications and file new applications with corrected descriptions.  Plaintiff's attempt to make this into anything more than a correction of an erroneous filing is just one more attempt to cloud the crystal clear reality of the generic nature of the term "wool felt."[7]

---

[5]    The original trademark applications for CPE's wool felt products described those products as "textile articles, namely stiffened needle punch fabric of synthetic fibers with pressure sensitive adhesive backing and glitter," and "textile fibers, namely needle punch fabric of synthetic fibers."  These descriptions, obviously, describe certain of CPE's synthetic products, *not* wool felt, which is neither synthetic nor needle punched, as discussed by Mr. Pugh. See Pl. Exh. N at 105-6 (stating that the application for IMPERIAL WOOL FELT was in error because the application was filed for synthetic wool fibers but the product is 100% wool, and that wool felt is not created by needlepunching); Supplement at 4 (citing to testimony of Mr. Pugh that the description of goods in the application for the Classic Wool Felt mark was incorrect, because the Classic Wool Felt is not 100% synthetic but a wool/acrylic blend).  Mr. Pugh explained that the descriptions of the goods for other, non-wool products had erroneously been used for these applications, *id.* at 105, and the correct description for the products in each application should have been "wool felt."  *Id.* at 106-7.

[6]    See Trademark Manual of Examining Procedure § 1402.07 (stating that amendments to the identification of goods must fall within the scope of the original identification as filed), attached as Exhibit QQ.

[7]    Plaintiff's obfuscations also include its attempt to imply that documentation of the corrected trademark applications was somehow wrongfully withheld from it.  As was made clear at Mr. Pugh's deposition, counsel for CPE understood that this documentation had been faxed to Arthur Dionne, counsel for National Nonwovens, prior to the latest hearing before Judge Neiman, which had occurred one week before Mr. Pugh's deposition. See Pl. Exh. N at 107.  Because counsel for Plaintiff at the deposition believed they had not received the documents and, in any event, did not have a copy of the new applications, they were immediately faxed to him.

2.    "Plaintiff's Competitors"

Counsel for Defendant confess that they do not understand the point Plaintiff has

attempted to make in this section of its supplemental brief.  See Supplement at 5-6.  Perhaps at

oral argument Plaintiff will explain if and how this means anything to this case.

3.    CPE's "Knowledge" of Plaintiff's Trademarks and "Access" to Plaintiff's
      Copyrights

National Nonwovens alleges that CPE had "knowledge" of the National Nonwovens

trademarks and "access" to its copyrights.  Supplement at 6-7.  For purposes of the summary

judgment motion before this Court, Defendant has not claimed otherwise.  It simply does not

matter: "wool felt" is generic regardless of whether CPE had "knowledge" of Plaintiff's use of

that term, and there is no evidence that CPE copied anything in which Plaintiff has a copyright,

regardless of whether anyone had "access" to those copyrights.  See Memo at 20.  The designs at

issue simply do not look alike.[8]

4.    "Unfair Competition Claims"

Once again, it is not clear what the point is of Plaintiff's supplemental brief on this point.

See Supplement at 7-8.  CPE has turned over every document in its possession responsive to

---

[8]    Plaintiff's allegations about "knowledge" and "access" are also a willful blindness to the actual testimony.  Mr. Carr's so-called "knowledge" is not at all apparent from the record.  In the deposition testimony cited by the Plaintiff in support of this allegation, the court reporter routinely typed "wool felt."  See, e.g., Pl. Exh. P., p. 39. l. 13 – p. 41.  It appears, however, that counsel for National Nonwovens was saying "WoolFelt," meaning National Nonwovens trademark.  Id.  It is this confusion that is the basis for National Nonwovens claim in its supplementary brief that "Mr. Carr acknowledged that . . . he was aware of . . . the 'WoolFelt' trademark."  Supplement at 7.  The deposition transcript shows no such thing, unless one was to substitute "WoolFelt" for "wool felt" several times.  Even if spelled as Plaintiff wished, however, the deposition transcript could not show which Mr. Carr thought he was hearing.

On the issue of "access," National Nonwovens has constructed a scenario, without direct testimony but by inference instead, that CPE had "access" to the copyrighted works.  What it did not inform this Court is that CPE's graphic designer, who created CPE's lamb design, testified definitively that he in no way copied National Nonwovens' work to create CPE's design.  See Def. Exh. QQ, p. 50-51, 61-63 (explaining that CPE's lamb design was based on a steel die).  Even after taking substantial liberties with the record, Plaintiff has no evidence of any wrongdoing whatsoever in this case.

every discovery request of Plaintiff as limited by this Court, including every document involving "wool felt" except, as is consistent with the Orders of this Court, information regarding pricing and quantity of items sold, and, as Plaintiff has agreed, redundant invoices and purchase orders. Plaintiff has been allowed to take all the depositions that it wanted over a full week in South Carolina, at which it could – and did – address any topic that it wanted to.  No answers at those depositions were withheld on the basis of privilege or other reason, except pricing and quantity information as agreed to by the parties and ordered by the Court.  Plaintiff, at any time that it wished during the nearly ten months since it filed this lawsuit, could have taken the deposition of Hancock Fabrics (which it now claims is critical) or otherwise subpoenaed information from that company or any others.  Simply, Plaintiff filed a frivolous lawsuit, and it has since found nothing to give that lawsuit substance.

**C. Plaintiff's supplemental filing confirms the appropriateness of an award of attorneys' fees to CPE.**

Defendant has already filed a motion to recover the attorneys' fees that it has incurred defending this case.  Most recently, Defendant argued to Judge Magistrate Neiman that the depositions that Plaintiff had scheduled for South Carolina should be delayed pending resolution of CPE's summary judgment motion, because there was no possible evidence in South Carolina that could help Defendant's response to that motion.  See Defendant's Emergency Motion for Protective Order (Docket No. 40).  Plaintiff argued otherwise, however, assuring the Court that there was evidence relevant to genericism that it would obtain in the depositions, and Defendant was forced to send counsel, at considerable expense, to defend those depositions.  See Electronic Order of January 19, 2005.

As Plaintiff's supplemental brief reveals, National Nonwovens did not obtain anything in four days of depositions that was in any way relevant to the motion for summary judgment. Plaintiff's insistence on forcing Defendant to spend large sums of money needlessly is further demonstration of the appropriateness of an order granting CPE its costs and attorney's fees in the action.

Respectfully submitted,
CONSUMER PRODUCTS ENTERPRISES, INC.
By Its Attorneys:

Dated: February 14, 2005

/s/ James C. Duda
James C. Duda
  BBO No. 551207
Joshua P. Grey
  BBO No. 650544
Pamela S. Chestek
  BBO No. 647124
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115
Tel: 413-781-2820
Fax: 413-272-6806
e-mail: jduda@bulkley.com
        jgrey@bulkley.com
        pchestek@bulkley.com