UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


NATIONAL NONWOVENS, INC.,    )
            Plaintiff        )
                             )
            v.               )  CIVIL ACTION NO. 04-30078-MAP
                             )
CONSUMER PRODUCTS            )
ENTERPRISES, INC.,           )
            Defendant        )


MEMORANDUM REGARDING DEFENDANT'S MOTIONS
FOR SUMMARY JUDGMENT AND ATTORNEY'S FEES
(Docket Nos. 23, 24)

October 31, 2005


PONSOR, D.J.


I. INTRODUCTION

Claiming infringement of its trademark in the term "WoolFelt," Plaintiff, National Nonwovens, Inc. ("Nonwovens"), brought this eight-count complaint against its competitor, Consumer Products Enterprises ("CPE"), alleging multiple violations of the Lanham Act, 15 U.S.C. §§ 1051 et seq. (2005), copyright infringement under the United States Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. (2005), and unfair competition under Mass. Gen. Laws. ch. 93A (2005).

Defendant responded with a counterclaim in four counts alleging: invalid trademark registration based on both the generic nature of the supposed mark and fraud, 15 U.S.C. §§ 1064, 1119 (2005); a violation of the Sherman Act, 15 U.S.C.

§ 2 (2005); and unfair business practices under Mass. Gen. Laws ch. 93A.  Defendant also moved for summary judgment and an award of attorney's fees.

In an order dated September 30, 2005, the court allowed Defendant's motion for summary judgment and denied its motion for attorney's fees.  This memorandum outlines the reasoning supporting that order.

## II. <u>FACTS</u>

Nonwovens is a Delaware corporation with its principal place of business in Easthampton, Massachusetts.  Originally known as the National Felt Company, Nonwovens has been manufacturing textile products for a range of industries since 1905. At least as early as July 1982, Nonwovens began selling felted wool products under the trademark "WoolFelt" and using a sheep design to promote these products.

Nonwovens has used at least five different types of sheep designs in connection with its products.  The first design shows a clothed anthropomorphic sheep wearing glasses.  In the second design, an unclothed cartoon-like sheep is shown seated, usually by a tree.  The third design shows a ram in profile.  The ram has a black head and a black tail.  Its body is shaded in grey, and its feet rest on a black horizontal line.  The fourth design is a variation on the third.  Eight rams are shown in profile:

-2-

seven are black and one is white.  The final design shows
three fairly primitive sheep surrounded by a wooden fence.
On each sheep, the dominant attribute is a large shaded
fleece.  A small portion of a featureless face is visible on
the left, and each sheep has two roughly rectangular legs.
(See Dkt. No. 1, Compl. Ex. D; Dkt. No. 23, Def.'s Mem.
Supp. Summ. J. Attach. R.)

On March 4, 1986, Plaintiff received U.S. Trademark
Registration No. 1,385,577 for the stylistic mark "WoolFelt
-- There's nothing like the real thing . . ."  The
trademarked goods were identified as "wool felt," and
Nonwovens specifically disclaimed any "exclusive right to
use 'wool felt,' apart from the mark as shown."  (Dkt. No.
1, Compl. Ex. A.)  Plaintiff initially applied for placement
on the Principal Register, but the Patent and Trademark
Office (the "Trademark Office") denied this request because
the mark was deemed "merely descriptive."  Nonwovens
therefore amended its application and was allowed placement
on the Supplemental Register.[1]  (See Dkt. No. 23, Def.'s Mem.
Attachs. C, D.)

---

[1] Placement on the Supplemental Register  "indicates a
preliminary determination that the mark is not distinctive of
the applicant's goods."   3 J. Thomas McCarthy, McCarthy on
Trademarks and Unfair Competition § 19:36 (2005).  Registration
on the Supplemental Register accordingly confers only limited
legal rights on the owner of a mark.  See 15 U.S.C. § 1094.

In 1997, Nonwovens acquired another trademark, U.S. Trademark Registration No. 2,073,811, for the word mark "WOOLFELT."  The registration identified the relevant goods as "fabric, namely, felt consisting of woo[l]."[2]  "WOOLFELT" was placed on the Principal Register, and at this time -- in contrast to the 1986 registration -- Plaintiff did not disclaim exclusive use of the phrase "wool felt."  (Dkt. No. 1, Compl. Ex. B.)

In March 2004 Nonwovens obtained copyright registrations for two sets of promotional materials posted on its website:[3] "Franny's Features," an area of the website with project suggestions and special offers, and "Boiled Woolfelt Instructions," one of these project suggestions.

CPE is a Georgia corporation with its principal place of business in Union, South Carolina.  Defendant began selling the products it calls "wool felt" in the fall of 2003.  CPE admits that it became aware of Plaintiff's "WoolFelt" trademarks in the summer of 2003.  Nonetheless, a few months later, Defendant introduced products under the names

---

[2] The registration originally described the product as "felt consisting of wood."  The Trademark Office corrected the typographical error on April 6, 2004, and the fabric is now identified as "felt consisting of wool."  (Dkt. No. 1, Compl. Ex. B.)

[3] Plaintiff's website is accessible at either http://www.nationalnonwovens.com or http://www.woolfelt.com.

"Classic Wool Felt" and "Imperial Wool Felt."  Defendant also posted "Instructions for Boiling Classic Wool Felt" on its website, http://www.cpe-felt.com.  (See Dkt. No 1, Compl. Ex. H.)

In connection with these new products, CPE also began using a ram logo in its promotional materials.  CPE's ram is a simple line-drawing that shows a sheep in profile.  No part of the figure is shaded, but a horn and an eye are shown in outline.

After this lawsuit was filed, Defendant applied for trademark registrations for "Classic Wool Felt" and "Imperial Wool Felt."  On September 20, 2005, "Classic Wool Felt" received U.S. Trademark Reg. No. 2,999,328 and was placed on the Supplemental Register.  The "Imperial Wool Felt" application is still pending.[4]

At the center of this case is a dispute over the generic name for a textile product, namely felt consisting of wool. Plaintiff argues that the textile is properly referred to as "felted wool fabric" or "felt."  In its papers, Plaintiff uses a number of other variations, including "felted wool," "felted wool products," "felt fabric," and "felt consisting of wool."  (See, e.g., Dkt. No. 10, Am. Compl. ¶¶ 7, 18;

---

[4] Although there is some dispute concerning the sequence of events surrounding these trademark applications, this debate does not affect the motions currently before the court.

Dkt. No. 32, Pl.'s Opp'n *5.)  Plaintiff's registration for
the word mark "WOOLFELT" identifies the relevant goods as
"fabric, namely, felt consisting of wool."

     Significantly, despite Plaintiff's claim that "wool
felt" is not a generic term for its goods, Plaintiff
nonetheless does use the uncapitalized two-word term "wool
felt" when discussing its product.  In the Amended
Complaint, Plaintiff refers to a trademark obtained "for
wool felt."  (See Dkt. No. 10, Am. Compl. ¶ 6; see also Dkt.
No. 32, Pl.'s Opp'n *2 (discussing the trademark
registration).)  As this language suggests, Plaintiff's 1986
trademark registration did in fact identify the relevant
product simply as "wool felt."  Further, on its own website,
Nonwovens claims that the company "originated as a
manufacturer of wool felt for use in apparel and home
furnishings."  See Nat'l Nonwovens, Company Profile,
http://www.nationalnonwovens.com/compny.htm (last visited
Oct. 24, 2005); see also Nat'l Nonwovens, Press Releases,
http://www.nationalnonwovens.com/pr.htm (similar) (last
visited Oct. 24, 2005).  "WoolFelt" is also referred to in
several places as "the original wool felt."  See, e.g.,
Nat'l Nonwovens, Felts of Distinction,
http://www.nationalnonwovens.com/Applications/c&h.htm (last
visited Oct. 24, 2005); Nat'l Nonwovens, WoolFelt,

http://www.nationalnonwovens.com/Applications/craft/woolfelt
.htm (last visited Oct. 24, 2005).[5]

Defendant claims that "wool felt" is the common name of
the product it sells.  Defendant points to Plaintiff's use
of the term and offers extensive additional evidence of
long-term and widespread generic use.  This evidence
includes uses of the term 1) in government documents, 2) in
books and articles, 3) on internet and Nexis search sites,
and 4) by retailers.

Defendant introduces several examples of official use of
the term "wool felt."  Among these is a 1952 Department of
Commerce Commercial Standard for "wool felt."  The standard
applies to felt used "for the apparel and decorative trade,"
and under the heading "Definitions" explains: "Felt as
defined here is commonly referred to as wool felt."  (See
Commercial Standard 185-52 (Dep't of Commerce) Feb. 21,
1952, excerpted in Dkt. No. 34, Def.'s Reply Attach. Y
(emphasis added).)  In addition, a search of Trademark
Office records reveals at least nine expired marks from as
early as 1932 that include the term "wool felt" in the

_____

[5] According to Defendant, at least as of October 14, 2004,
Nonwovens' website also described the company as "the largest
manufacturer of wool felt in the United States today."  (See
Dkt. No. 23, Def.'s Mem. 13.)  The relevant text now describes
the company as "the largest manufacturer of felted wool in the
U.S. today."
See http://www.nationalnonwovens.com/products.htm.

description of the goods.  Four of these marks are for goods
in the same class as Plaintiff's goods, International Class
24 (fabrics), and the remainder are in the classes for
apparel or "fancy goods."  (See Dkt. No. 34, Def.'s Reply
Attach. JJ.)

        Defendant also cites books and articles that use the
uncapitalized term "wool felt."  For example, when defining
felt, one author notes, "Wool felt is used as interfacing
under highly embellished garment details to support weight."
(See Sandra Betzina, Fabric Savvy 195 (2002), excerpted in
Dkt. No. 34, Def.'s Reply Attach. CC; see also Chad Alice
Hagen, Feltmaking 7, 8 (2002), excerpted in Dkt. No. 34,
Def.'s Reply Attach. EE (discussing "[w]ool felt's unique
properties" and noting "tall tales about Noah discovering
wool felt on the floor of the ark").)  See also FeltCrafts,
What Is Wool Felt?, http://www.feltcrafts.com/history.htm
(last visited Oct. 25, 2005).  There are also references to
"wool felt" that -- like those in the government documents
introduced by Defendant -- clearly predate Plaintiff's claim
to the term.  See, e.g., Catherine Christopher Roberts, The
Complete Book of Doll Making and Collecting 71 (1971)
(discussing "[c]olored wool felt, snipped into tiny motifs
and designs").

        These texts also use the term "felted wool," one of the

-8-

terms Plaintiff prefers.  In some instances, it is used as a synonym for "wool felt."  (See Jane Swiggum, <u>Needle Felting 101</u>, SewNews, Jan. 2005, at 36, 38, 40 (using "wool felt" and "felted wool" interchangeably), <u>excerpted in</u> Dkt. No. 34, Def.'s Reply Attach. DD; Chad Alice Hagen, <u>Feltmaking: Fabulous Wearables, Jewelry & Home Accent</u> 7 (2002) (same), <u>excerpted in</u> Dkt. No. 34, Def.'s Reply Attach. EE.)  In others, however, the two terms are used to describe distinct products.  (<u>See</u> Creative Publishing International, <u>Exploring Textile Arts</u> 40 (2002) (describing felted wool as a woven or knitted fabric), <u>excerpted in</u> Dkt. 34, Def.'s Reply Attach. U; Claire Shaeffer, <u>Fabric Sewing Guide</u> 480 (1994) (same), <u>excerpted in</u> Dkt. 34, Def.'s Reply Attach. T; <u>Simple Stockings</u>, SewNews, 2004, at 34 ("You can use any fabric that doesn't fray, such as felt (as shown in our sample), felted wool, wool felt, faux suede or fleece."), Dkt. No. 34, Def.'s Reply Attach. V.)  <u>See also</u> SewNews Q&A, Mar. 2003, <u>available at</u> http://sewing.about.com/library/sewnews/qa/aaqa0303c.htm (explaining the difference between "felted wool" and "wool felt").

Defendant also includes the results of a number of web searches.  These include: a Nexis search for use of the term "wool felt" in major U.S. publications from 1980 to 2004;

general Google searches for the terms "wool felt" and
"woolfelt;" targeted searches for "wool felt" in combination
with "craft," "novelty," "quilt," "apparel," and "clothing;"
and e-Bay and Shop.com searches for wool felt products.
(See Dkt. No. 23, Def.'s Mem. Attachs. M, N, P; Dkt. No. 34,
Def.'s Reply Attachs. W, BB.)

    Defendant has not culled the results of these searches,
and some are clearly irrelevant.  (See, e.g., Dkt. No. 23,
Def.'s Mem. Attach. M ("insulating materials such as cork,
wool, felt and crumbled paper") (emphasis added).)  Other
results refer, for example, to industrial or acoustical uses
for wool felt.  (See, e.g., id. ("Acoustical Tinkering at
Carnegie").)  Still others directly or indirectly mention
Plaintiff's products.  (See, e.g., Dkt. No. 23, Def.'s Mem.
Attach. P ("WoolFelt® is made by the company, National
Nonwovens.").)

    However, even when the irrelevant results are excluded,
the searches still show extensive use of the uncapitalized
term "wool felt."  (See, e.g., Dkt. No. 23, Def.'s Mem.
Attach. N *3 ("wool felt is a nonwoven fabric"); id.
("unknown quilter, circa 1940, wool felt, pieced and machine
embroidered"); id., at *4 ("the ins and outs of working with
wool felt as an applique embellishment"); id., *10 ("Her
coat is blue wool felt, trimmed in red wool felt and rick-

-10-

rack.").)

Finally, Defendant points to generic use of the term "wool felt" by retailers.  For example, "The Felt People," notes on its website that "Nothing Beats the performance of <u>traditional wool felt</u>."  (<u>See</u> Dkt. No. 34, Def.'s Reply Attach. GG., <u>available at</u> http://www.thefeltpeople.com/pages/colorcards/feltcolorcard. htm (emphasis added).)  Other companies also call their product "wool felt."  (<u>See</u> <u>id.</u>; <u>see also</u> Dkt. No. 34, Def.'s Reply Attach. BB (showing e-Bay and Shop.com items that include the term "wool felt").)  In addition, Defendant observes that although Plaintiff can identify at least nine other companies allegedly infringing its "wool felt" mark, it has not pursued legal claims against these companies. (<u>See</u> Dkt. No. 34, Centofanti Dep. 73-74, Sept. 29, 2004, <u>excerpted in</u> Def.'s Reply Attach. HH.)

On June 1, 2004, Nonwovens filed an amended eight-count complaint alleging: (1) unfair competition under 15 U.S.C. § 1125(a); (2) trademark infringement of Plaintiff's "WoolFelt" and design trademark (Reg. No. 1,385,577) under 15 U.S.C. § 1051; (3) trademark infringement of Plaintiff's "WoolFelt" trademark (Reg. No. 2,073,811) under 15 U.S.C. § 1051; (4) false designation of origin under 15 U.S.C. § 1125(a); (5) trade dress infringement under 15 U.S.C. §

1125(a); (6) copyright infringement of Plaintiff's "Boiled
Woolfelt Instructions" under 17 U.S.C. § 101; (7) copyright
infringement of Plaintiff's "Franny's Features" materials
under 17 U.S.C. § 101; and (8) unfair methods of competition
under Mass. Gen. Laws ch. 93A.

### III.  DISCUSSION

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits . . . show that there is
no genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(c).  A "genuine" issue is one in which the
evidence is "sufficiently open-ended to permit a rational
factfinder to resolve the issue in favor of either side."
Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735
(1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995).  A
"material" fact "has the potential to alter the outcome of
the suit under the governing law if the dispute over it is
resolved favorably to the nonmovant."  Smith v. F.W. Morse &
Co., 76 F.3d 413, 428 (1st Cir. 1996).

Once the moving party has properly asserted that no
genuine issue of material fact exists, "the burden is on the
nonmoving party to present evidence showing the existence of
a trialworthy issue."  Gulf Coast Bank & Trust Co. v. Reder,

355 F.3d 35, 39 (1st Cir. 2004) (citing <u>Anderson v. Liberty</u>
<u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  The opposing party
"cannot rely on an absence of competent evidence, but must
affirmatively point to specific facts that demonstrate the
existence of an authentic dispute."  <u>McCarthy v. Northwest</u>
<u>Airlines, Inc.</u>, 56 F.3d 313, 315 (1st Cir. 1995).  The court
must then analyze the evidence by "view[ing] the facts in
the light most favorable to the non-moving party, [and]
drawing all reasonable inferences in that party's favor."
<u>Pacific Ins. Co. v. Eaton Vance Mgmt.</u>, 369 F.3d 584, 588
(1st Cir. 2004) (quotation omitted).

A. <u>Trademark Infringement Claims</u>.

     The purpose of a trademark is to identify and
distinguish the goods of one party from those of another.
<u>See</u> 15 U.S.C. § 1127 (defining trademark).  Marks are
generally divided into five categories of distinctiveness:
(1) generic, (2) descriptive, (3) suggestive, (4) arbitrary,
or (5) fanciful.  <u>See</u> <u>Abercrombie & Fitch Co. v. Hunting</u>
<u>World, Inc.</u>, 537 F.2d 4, 9 (2d Cir. 1976) (Friendly, J.);
<u>see also</u> <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763,
768 (1992) (approving Judge Friendly's "classic
formulation").  The level of distinctiveness, and
accordingly the level of trademark protection, increases
with each step along this spectrum.  A generic term, or the

-13-

"common descriptive name" for a product, receives no trademark protection. Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 193-94 (1985); see also I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 39 (1st Cir. 1998). A descriptive mark conveys a quality or characteristic of a product, and can be protected only where it has acquired a secondary meaning such that the mark is specifically associated with the product in question. See Flynn v. AK Peters, Ltd., 377 F.3d 13, 19 (1st Cir. 2004); Equine Techs. v. Equitech., Inc., 68 F.3d 542, 554 (1st Cir. 1995). Finally, suggestive, arbitrary, and fanciful marks are inherently distinctive and are therefore always entitled to protection. See Lund, 163 F.3d at 39.

Nonwovens has registered both a stylistic mark ("WoolFelt -- There's nothing like the real thing . . .") and a word mark ("WOOLFELT"). Registration of a mark on the Principal Register is prima facie evidence that the mark is protectable.[6]  15 U.S.C. § 1057(b).  This rebuttable presumption, however, "evaporates as soon as evidence of invalidity is presented." Door Systems, Inc. v. Pro-Line Door Systems, Inc., 83 F.3d 169, 172 (7th Cir. 1996); see

---

[6] The parties generally address both trademark claims together, so the following discussion therefore applies to both.  It should be noted, however, that the registration presumption only applies to registrations on the Principal Register, and therefore only to Plaintiff's word mark.

also <u>Nartron Corp. v. STMicroelectronics, Inc.</u>, 305 F.3d 397
(6th Cir. 2002) (granting summary judgment for a defendant
who successfully overcame the presumption), <u>cert. denied</u>,
538 U.S. 907 (2003); <u>TE-TA-MA Truth Found.–Family of URI,
Inc. v. World Church of Creator</u>, 297 F.3d 662, 665 (7th Cir.
2002) ("[A]n incontestable registration is more like a
bursting-bubble presumption of non-generic-ness than like
the sort of indomitable presumption that the [registrant]
seeks."), <u>cert. denied</u>, 537 U.S. 1111 (2003).  <u>But see</u> <u>Am.
Online, Inc. v. AT&T Corp.</u>, 243 F.3d 812, 818 (4th Cir.
2001) (finding <u>prima</u> <u>facie</u> evidence of validity established
by registration sufficient to establish an issue of fact not
resolvable on summary judgment).

    Defendant argues that "wool felt" is a generic term for
the fabric that it markets under this name.  Because
Plaintiff has registered the work mark "WoolFelt," the
burden is on Defendant to show that there is "no genuine
issue of material fact on its claim of genericness."
<u>Nartron</u>, 305 F.3d at 405 (describing a defendant's burden in
overcoming the registration presumption).  The generic name
of an item refers to the "genus of which the particular
product is a species." <u>Two Pesos</u>, 505 U.S. at 768 (quoting
<u>Park 'N Fly</u>, 469 U.S. at 194).  In other words, the generic
name of a product answers the question, "What are you?"  A

-15-

trademark, by contrast, answers the questions, "Who are you?
Where do you come from?" See 2 J. Thomas McCarthy, McCarthy
on Trademarks and Unfair Competition § 12:1 (2005) [here-
inafter "McCarthy"]; see also Hasbro, Inc. v. Clue
Computing, Inc., 66 F. Supp. 2d 117, 125 (D. Mass. 1999)
("'Generic' terms are those which refer to a category of
good or service, without distinguishing the source or origin
of the specific product.").

Plaintiff argues that the answer to the question, "What
are you?" is "felt" or "fabric."  Neither term is
inaccurate, but both terms lack specificity: the merchandise
in question is a felt fabric made from wool.  Plaintiff's
suggestion is actually a subtle rhetorical move that
attempts to abstract to a higher level of generality.
Plaintiff is essentially arguing that because "fabric" or
"felt" is a perfectly good -- if general -- name for the
product, then it cannot be called "wool felt."  Specificity
in naming a product, or the use of an adjective alongside a
noun, does not preclude a finding that something is a
generic phrase.  For example, although the term "beer"
correctly identifies both "light beer" and "honey brown,"
the existence of this general term has not prevented courts
from finding both specific terms to be generic.  See Genesee
Brewing Co. v. Stroh Brewing Co, 124 F.3d 137 (2d Cir. 1997)

(holding "honey brown" generic); <u>Miller Brewing Co. v. G.</u>
<u>Heileman Brewing Co.</u>, 561 F.2d 75 (7th Cir. 1977) (holding
"light beer" generic), <u>cert. denied</u>, 434 U.S. 1025 (1978);
<u>see also</u> <u>Henri's Food Products Co. v. Tasty Snacks, Inc.</u>,
817 F.2d 1303, 1305-06 (7th Cir. 1987) ("The holding in
<u>Miller Brewing Co</u>. is that an adjective can be a generic
term when that word is part of a common descriptive name of
a <u>kind</u> of goods.  In order to be generic, however (as the
word implies), the word in question must serve to denominate
a type, a kind, a genus or a subcategory of goods.")

    Plaintiff also argues that its merchandise is properly
referred to as "felted wool fabric."  This argument,
however, is not dispositive, because a product may have
several generic names, "[a]ny one of [which] is incapable of
trademark significance."  <u>McCarthy</u> § 12:19.  Thus, even if
"felted wool fabric" is <u>a</u> generic name, this fact does not
necessarily undercut Defendant's claim that the term "wool
felt" is generic.

    A composite term such as "wool felt" must be analyzed as
a whole.  While the individual words may be generic, when
combined they may still form a protectable mark.  <u>See</u>
<u>generally</u> <u>id.</u> § 12:39.  The dictionary defines felt as "a
<u>nonwoven fabric of wool</u>, fur, or hair, matted together by
heat, moisture, and great pressure."  Random House

-17-

Unabridged Dictionary (2d ed. 1993) (emphasis added).[7]  Felt
made from wool is, as the definition indicates, one clearly
identifiable category or class of felt.  Defendant provides
extensive evidence that the term "wool felt" has been and
continues to be used generically to identify this class of
felt.  This evidence includes generic use of the term: (1)
by Plaintiff[8] and retailers; (2) in books and magazines; (3)
in government documents as early as 1932;[9] and (4) on the
internet.  In the majority of these examples, the term "wool
felt" is written in lower case letters.  Defendant's

_____

     [7] The dictionary does not provide separate entries for
either "felted wool" or "wool felt."

     [8] Plaintiff's generic use of the phrase "wool felt" is
particularly suggestive.  Commenting on Gould Paper's use of
the term "Screenwipe," the Federal Circuit noted:
        Gould's own submissions provided the most damaging
        evidence that its alleged mark is generic . . . .  On
        its own specimen supporting the application, Gould
        advises: 'a ... wipe ... for ... screens.'  Whether
        compounded as 'screen wipe' -- two words -- or
        'screenwipe' -- one word -- either is ordinary
        grammatical construction.  Nothing is left for
        speculation or conjecture in the alleged trademark.
In re Gould Paper Corp, 834 F.2d 1017, 1019 (Fed. Cir.
1987)(citation omitted).

     [9] As noted above, the government documents include expired
trademarks that use the phrase "wool felt" as all or part of
the goods description.  According to the Trademark Manual of
Examining Procedure, an applicant's "identification of goods
or services should set forth common names, using terminology
that is generally understood."  Trademark Manual of Examining
Procedure § 1402.01 (2005) (emphasis added).  Thus applicants
who used the term "wool felt" to identify their products
presumably viewed it as a common name for their goods.

evidence overwhelmingly shows that the term "wool felt" is a generic -- and therefore unprotectable -- name for the fabric both parties sell.

The fact that Nonwovens' word mark is for the compound term "WoolFelt," and not the composite term "wool felt," does not transform a generic term into a protectable mark.[10]

> [I]f the compound word would plainly have no
> different meaning from its constituent words . . .
> then the compound word too has been proved generic.
> No additional proof of the genericness of the
> compound word is required.

In re Am. Fertility Soc'y, 188 F.3d 1341, 1347 (Fed. Cir. 1999).  Variations in the way the trademarked word is presented -- as "WOOLFELT" or "WoolFelt," for example - are also inconsequential.  See Trademark Manual of Examining Procedure § 1207.01(c)(iii) (2005) (noting that the rights associated with a mark in typed form reside in the wording and not in any particular display).

Plaintiff argues that Defendant's analytical approach is flawed because Defendant relies on evidence that is general and unscientific, and fails to target the "relevant market." Plaintiff insists that survey evidence is necessary to

---

[10] It appears in at least one instance that Nonwovens is also claiming a trademark in "Wool Felt" as two separate words. (See Dkt. No. 34, Def.'s Reply Attach. LL, available at http://www.nationalnonwovens.com/images/webeady2/chenille. gif.)

address these shortcomings and assess usage of the term "wool felt." This argument is misplaced.

Survey evidence is appropriate in cases where the question is whether a coined product name has become generic. There are, however, two distinct groups of generic terms: (1) invented names that have become "genericized" (e.g., Thermos); and (2) terms commonly used for naming the specific product at issue. See <u>Hunt Masters, Inc. v. Landry's Seafood Rest., Inc.</u>, 240 F.3d 251, 254 (4th Cir. 2001); <u>Murphy Door Bed Co. v. Interior Sleep Sys., Inc.</u>, 874 F.2d 95, 100-01 (2d Cir. 1989) (distinguishing an invented term expropriated by the public from a term in common use); <u>see also King-Seeley Thermos Co. v. Aladdin Indus., Inc.</u>, 321 F.2d 577 (2d Cir. 1963) (holding "thermos" generic).

Under the Lanham Act, the test for determining genericness is "the primary significance of the registered mark to the relevant public." 15 U.S.C. § 1064(3). However, this test measures when a "registered mark has <u>become</u> the generic name of goods." <u>Id.</u> (emphasis added). In this case, neither party contends that the Plaintiff invented the term "wool felt" or that it has since become "genericized." Instead, Defendant argues that Plaintiff has appropriated a generic term, while Plaintiff argues that the term "wool felt" is "merely descriptive" for a product that

-20-

is known generically as "felted wool fabric."  In either
case, the "primary significance" test for genericness is
inapposite, and survey evidence is therefore unnecessary.

Resolution of Defendant's motion for summary judgment on
this claim rests on the simple axiom that generic terms
receive no trademark protection.  Public policy demands that
generic terms be free for all to use and not susceptible to
appropriation by one company.  Allowing a trademark in a
generic name is like granting a company a monopoly. See CES
Publ'g Corp. v. St. Regis Publ'ns, 531 F.2d 11, 13 (2d Cir.
1975) (Friendly, J.); see also Blau Plumbing, Inc. v. S.O.S.
Fix-It, Inc., 781 F.2d 604, 609 (7th Cir. 1986) ("Imagine
being forbidden to describe a Chevrolet as a 'car' or an
'automobile' because Ford or Chrysler or Volvo had
trademarked these generic words.")

Plaintiff does not challenge Defendant's right to
manufacture the product, but nonetheless seeks to impede
Defendant's entry into the wool felt market by preventing
Defendant from calling its product what it is: wool felt, a
term used generally to identify the parties' product for
decades before Plaintiff registered it.  Trademark law
simply does not allow such obstruction.

At the risk of repetition, overwhelming evidence of use
by Plaintiff and retailers, in books and magazines, in

government documents, and from the internet, shows that
"wool felt" is, and has long been, a common name for the
product Plaintiff and Defendant sell.  Based on this
evidence, no reasonable factfinder could conclude that the
term "wool felt" is anything other than a generic term for
the parties' merchandise.

B. Copyright Claims.

     To prevail on a claim of copyright infringement, a
plaintiff must show ownership of a valid copyright and
illicit copying by the defendant.  See Feist Publ'ns, Inc.
v. Rural Tel. Serv. Co, 499 U.S. 340, 361 (1991); Yankee
Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 33 (1st
Cir. 2001).  There is no dispute in this case as to the
first prong; Nonwovens retains valid copyrights in "Boiled
Woolfelt Instructions" and "Franny's Features."  The focus,
therefore, is on the second prong of the test, the
assessment of whether illicit copying has actually occurred.

     In assessing whether such copying has occurred, the
First Circuit has applied a further two-part test.  A
plaintiff must first prove, using either direct or indirect
evidence, that the defendant copied the plaintiff's work.
See Yankee Candle, 259 F.3d at 33 (1st Cir. 2001).  Then the
plaintiff must "prove that the copying of the copyrighted
material was so extensive that it rendered the infringing

-22-

and copyrighted works 'substantially similar.'" Id.
(quoting Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56,
60 (1st Cir. 2000)).  Because the second part of the test is
dispositive in this case, the court need not address the
first issue.

The "ordinary observer" test is used to determine
whether there is substantial similarity between the two
parties' works.

> The test is whether the accused work is so similar
> to the plaintiff's work that an ordinary reasonable
> person would conclude that the defendant unlawfully
> appropriated the plaintiff's protected expression
> by taking material of substance and value.

Yankee Candle, 259 F.3d at 33 (quoting Concrete Mach. Co. v.
Classic Lawn Ornaments, Inc., 843 F.2d 600, 607 (1st Cir.
1988)).

Underlying any application of the "ordinary observer"
test is a fundamental principle of copyright law: "[i]deas
cannot be copyrighted." Id.; see also 17 U.S.C. § 102(b).
Thus although the "manner of expressing ideas" can be
protected, id., the ideas themselves, "even if original',
cannot be removed from the public realm," Matthews v.
Freedman, 157 F.3d 25, 27 (1st Cir. 1998); see also Feist,
499 U.S. at 350 (discussing the "idea/expression or
fact/expression dichotomy").  The exclusion of ideas or
facts from copyright protection also extends to short

-23-

phrases and functional language:

> It is axiomatic that copyright law denies
> protection to "fragmentary words and phrases" and
> to "forms of expression dictated solely at
> functional considerations" on the grounds that
> these materials do not exhibit the minimal level of
> creativity necessary to warrant copyright
> protection.

CMM Cable Rep, Inc. v. Ocean Coast Props., 97 F.3d 1504,

1519 (1st Cir. 1996) (collecting authorities).

A corollary to the fact/expression distinction is the

doctrine of merger.  Because certain ideas can be expressed

in only a limited number of ways, in some cases the idea and

its expression are inseparable.  See Yankee Candle, 259 F.3d

at 35-36.  For example, the First Circuit has held that

merger foreclosed copyright on sweepstakes entry rules

"which could be effectively communicated using only a

limited number of verbal formulations." John G. Danielson,

Inc. v. Winchester-Conant Properties, Inc., 322 F.3d 26, 43

(1st Cir. 2003) (discussing Morrissey v. Procter & Gamble

Co., 379 F.2d 675 (1st Cir. 1967)).  Where merger applies,

the plaintiff has the "heavy burden of showing near identity

between the works at issue." Yankee Candle, 259 F.3d at 36

(quotation omitted).

Because unprotected elements such as facts do not enter

into the analysis, before applying the "ordinary observer"

test, a court must first "dissect" the copyrighted work to

identify which features are protected by law.  Dissection
always runs the risk of decontextualizing the individual
elements of a work, and thereby necessarily rendering any
work unprotectable.  A court must therefore "assess both the
effect of the protected, original elements of [the work] and
the contribution of those elements to the work as a whole."
Yankee Candle, 259 F.3d at 34 (quoting Leigh v. Warner
Bros., Inc., 212 F.3d 1210, 1215 (11th Cir. 2000)); see also
CMM Cable, 97 F.3d at 1515 (discussing the potential
"danger" of dissection).

     In this case, Nonwovens is alleging copyright
infringement in its instructions for boiling wool felt.[11]
Directions posted on the Nonwovens website convey, in four
steps, a process for creating a fleece-like surface for wool
felt: (1) soak the felt in cold water, keeping colors
separate as bleeding may occur; (2) squeeze the felt to
remove water, but avoid wringing because it may stretch the
material; (3) dry in a tumble dryer for 35 minutes; and (4)

_____

     [11] Nonwovens also alleges copyright infringement in
"Franny's Features," a portion of its website containing
project suggestions -- among these the instructions for boiling
wool felt -- and special offers.  The copyright claimed is in
the "entire text" of "Franny's Features." (See Dkt. 1, Compl.
Ex. G.)  Nonwovens does not, however, explain how CPE has
separately infringed on the copyright of any component of
"Franny's Features" other than the boiled wool felt
instructions.  Thus the analysis that follows applies equally
to each copyright claim.

lay the felt flat to finish drying and remove any large
wrinkles by holding a steam iron above the surface of the
felt.  The instructions also include warnings about possible
shrinkage and further advice about washing treated felt.

    The information contained in these instructions is
purely functional.  (See e.g., Dkt. 1, Compl. Ex. F,
("Squeeze by hand to remove as much water as possible.");
id. ("Wash each color separately.").)  There are no
stylistic flourishes or any other forms of creative
expression that somehow transcend the functional core of the
directions.  Cf. Publ'ns Int'l, Ltd. v. Meredith Corp., 88
F.3d 473, 480 (7th Cir. 1996) ("The recipes contain no
expressive elaboration upon . . . these functional
components, as opposed to recipes that might spice up
functional directives by weaving in creative narrative.").
Dissection therefore shows that Plaintiff's text is
predominantly, if not completely, made up of unprotected
functional statements.

    Even when the work is viewed as a whole, the
instructions remain purely functional.  The decision to
divide the directions into steps and to number each step is
hardly a creative choice, but rather a standard method of
providing clarity in instructions.  The use of four steps,
rather than three or five, flows naturally from the

-26-

information being conveyed by these particular directions.
Finally, viewed in its entirety, the process itself cannot
protected by copyright. See 17 U.S.C. § 102(b) ("In no case
does copyright protection for an original work of authorship
extend to any idea, procedure, process, [or] system . . .
."); see also Feist, 499 U.S. at 355-56. Thus viewing the
instructions as a whole does nothing to alter the analysis.

Not only are the contents of the instructions purely
functional, but there are also a "limited number of verbal
formulations" available to convey the relevant information.
Thus it is appropriate to apply the merger doctrine. See
Danielson, 322 F.3d at 43; cf. Morrissey, 379 F.2d at 678-79
(finding for the defendant despite the "almost precise
similarity of the two [sets of] rules" because where the
"subject matter is very narrow" its entire substance would
be easily appropriated by copyright protection). Plaintiff
therefore faces the "heavy burden of showing near identity"
of the challenged work and its work. Yankee Candle, 259
F.3d at 36 (quotation omitted).

CPE's instructions convey the same information as
Nonwovens' in four similar steps. In some places
Defendant's word choices resemble Plaintiff's. Compare
Dkt. 1, Compl. Ex. H (CPE: "Remove as much water as possible
by squeezing."), with Dkt. 1, Compl. Ex. F (Nonwovens:

-27-

"Squeeze by hand to remove as much water as possible.").)
In other places, however, the phrasing is dissimilar.
(<u>Compare</u> Dkt. 1, Compl. Ex. H (CPE: "Caution should be used
if you wet mixed colors as bleeding may occur."), <u>with</u> Dkt.
1, Compl. Ex. F ("Wash each color separately (some dye may
be released into the water.").)

    Because a dissection of Plaintiff's instructions reveals
that little, if any, of the content is protected,
similarities in the phrasing of functional information are
of little significance.  By contrast, because the doctrine
of merger places on Plaintiff the "heavy burden of showing
near identity" of the two works, the differences between the
two sets of instructions are significant.  Plaintiff argues
that "34% of the words" used in Defendant's instructions are
present in Plaintiff's directions.  (Dkt. 32, Pl.'s Opp'n
*22.)  Thus Plaintiff's own comparison clearly demonstrates
that Plaintiff has failed to carry the heavy burden of
showing near identity of the relevant works.

    Though the record must be examined with special caution,
summary judgment is appropriate on the question of
substantial similarity in compelling cases.  <u>See</u> <u>Yankee</u>
<u>Candle</u>, 259 F.3d at 37 (affirming a grant of summary
judgment on the question of substantial similarity).  In
this case, no reasonable factfinder could conclude that the

-28-

two sets of instructions were substantially similar.  The
instructions at issue are a purely functional description of
a process, and as such can only be described in a limited
number of verbal formulations.  Defendant has not infringed
Plaintiff's copyrights.

C. <u>False Designation of Origin Claim</u>.

     To make out a claim for "false designation of origin"
under the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must
establish: "(1) the ownership of a distinctive mark entitled
to trademark protection; (2) the use of that name in
interstate commerce; and (3) its use by another in a manner
likely to cause confusion as to the origin of the goods or
services." <u>Boustany v. Boston Dental Group, Inc.</u>, 42 F.
Supp. 2d 100, 105 (D. Mass. 1999) (quoting <u>Calamari
Fisheries, Inc. v. Village Catch, Inc.</u>, 698 F. Supp. 994,
1006 (D. Mass. 1988)).  Of these three requirements, the
"key question" is whether there is a likelihood of customer
confusion.  <u>See</u> <u>Societe des Produits Nestle, S.A. v. Casa
Helvetia, Inc.</u>, 982 F.2d 633, 639-40 (1st Cir. 1992); <u>see
also</u> <u>Boustany</u>, 42 F. Supp. 2d at 105.

     Plaintiff contends that Defendant's use of a ram design
in connection with the sale and promotion of its goods is a
false designation of origin.  It should be noted at the
outset that Plaintiff's discussion of this claim is cursory

at best.[12]  Further, Plaintiff does not explain which sheep
designs are being infringed by Defendant or how.  Plaintiff
uses at least five very different designs that range from
anthropomorphic cartoon sheep to simpler depictions of sheep
or rams in profile.  If Defendant's single logo is allegedly
infringing all five of these designs, Plaintiff is
effectively claiming an exclusive right to use a sheep
design when marketing this particular wool product.

Even assuming that Plaintiff has shown ownership of five
distinctive marks entitled to protection and their use in
interstate commerce, no reasonable factfinder could find an
infringement, because Defendant's design simply bears no
resemblance to any of Plaintiff's sheep.  While some of
Plaintiff's designs do include sheep or rams in profile,
none is a simple outline drawing of a single ram.  The only
significant shared element of the designs is their depiction
of the same animal.  If the product being marketed had no
obvious connection to sheep, an independent decision by two
companies to use the same animal to market their products

---

[12] Plaintiff dedicates one paragraph of its Opposition to
this argument.  This effectively precludes a more detailed
analysis of Plaintiff's claim.  Although the First Circuit has
consistently analyzed eight factors in assessing the likelihood
of customer confusion, see, e.g., Keds Corp. v. Renee Int'l
Trading Corp., 888 F.2d 215, 222 (1st Cir. 1989), the
Plaintiff's failure to clearly articulate a basis for its false
designation allegation and to provide evidentiary support
necessarily limits the scope of any analysis.

might allow for an inference of similarity.  Where, however,

the underlying product is made from wool, a decision to

portray a wool-producing animal in a logo is hardly

surprising.  <u>See, e.g.</u>, The Felted Ewe,

http://myndzi.tripod.com/thefeltedewe/ (last visited Oct.

24, 2005) (selling needle felting kits and featuring a

technicolor sheep as a logo).  Defendant's ram is entirely

different from Plaintiff's many designs, and thus there is

no infringement.[13]

Plaintiff also contends that Defendant's use of "Classic

Wool Felt," "Imperial Wool Felt," and the slogan

". . . naturally better" represent a false designation of

origin.  Since Plaintiff totally fails to articulate a basis

---

[13] An analysis of the eight factors that the First Circuit employs to assess likelihood of customer confusion does not change this outcome.  The First Circuit examines: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark.  <u>See</u> <u>Keds Corp. v. Renee Int'l Trading Corp.</u>, 888 F.2d at 222.  The Plaintiff has failed to introduce any evidence of confusion.  While direct evidence is not required to support a finding of likely confusion, its absence does weigh against a finding of such confusion.  <u>See</u> <u>Pignons S.A. de Mecanique de Precision v. Polaroid Corp</u>, 657 F.2d 482, 490-91 (1st Cir. 1981).  Further, as discussed above, no reasonable factfinder could conclude that the Defendant's design is similar to Plaintiffs'.  Thus even assuming that the remaining factors could be shown to favor Plaintiff's claim, the court's ultimate conclusion in this case would not change.

for these claims, or even to explain them in its papers, the court has allowed Defendant's motion for summary judgment on these claims.

D. <u>Unfair Competition and Trade Dress Infringement Claims</u>

Plaintiff's remaining claims, for unfair competition and trade dress infringement, are similarly ambiguous and unsubstantiated. The claim for unfair competition apparently includes allegations concerning a company called Hancock Fabrics. Viewed in the light most favorable to the Plaintiff, the facts in the record simply do not support a claim for unfair competition. The sum total of the allegations offered by Plaintiff in support of this claim are essentially as follows. In February 2001, Plaintiff contacted Hancock Fabrics in an attempt to sell its "WoolFelt" products to the company. This effort continued until March 2003 when Plaintiff's communications with Hancock Fabrics ended. (<u>See</u> Dkt. No. 32, Pl.'s Opp'n Attach. I.) Hancock Fabrics now sells Defendant's "Classic Wool Felt" on its website. (<u>See</u> Dkt. No. 32, Pl.'s Opp'n Attach. J.) Plaintiff does not explain how these facts could support claims for unfair competition on trade dress infringement. All that is described is the push and pull of legitimate commercial competition. Therefore the court has also allowed Defendant's motion for summary judgment on

these claims.

E. State Law Claim.

   Finally, Plaintiff alleges unfair methods of competition under Mass. Gen. Laws ch. 93A.  This claim is supported by the same elements as Plaintiff's federal claims: trademark infringement, copyright infringement, false designation of origin, unfair competition, and trade dress infringement. Since, as noted above, the supporting claims are all without merit, Plaintiff's 93A claim also fails.

F. Attorney's Fees.

   Defendant seeks an award of attorney's fees under the Lanham Act, 15 U.S.C. § 1117(a), and the Copyright Act, 17 U.S.C. § 505.  This court has denied both motions.

   Under 15 U.S.C. § 1117(a), "in exceptional cases," a court "may award reasonable attorney fees to the prevailing party" in a trademark claim.  15 U.S.C. § 1117(a).  The statute does not define "exceptional," but the First Circuit has required prevailing plaintiffs to make a showing of "malicious, fraudulent, deliberate, or willful" infringement.  See Tamko Roofing Products, Inc. v. Ideal Roofing Co., 282 F.3d 23, 31 (1st Cir. 2002) (quotation omitted).  The Court of Appeals has not, however, defined an "exceptional case" for a prevailing defendant.

   In those circuits that have addressed the issue of

-33-

prevailing defendants, there is no clear consensus on the standard.  Defendants have been required to demonstrate that plaintiffs' behavior showed "bad faith," "fraud," "oppressive behavior," or "something less." See, e.g., Servs., Inc. v. Freebies Publ'g, 364 F.3d 535, 550 (4th Cir. 2004) (requiring "something less than bad faith," such as "economic coercion, groundless arguments, and failure to cite controlling law") (citations omitted); Eagles, Ltd. v. Am. Eagle Found., 356 F.3d 724, 728 (6th Cir. 2004) (requiring that plaintiff's suit be "oppressive"); Lipscher v. LRP Publ'ns, 266 F.3d 1305, 1320 (11th Cir. 2001) (fraud or bad faith standard); Nat'l Ass'n of Prof'l Baseball Leagues v. Very Minor Leagues, 223 F.3d 1143, 1149 (10th Cir. 2000) (rejecting bad faith, and requiring that a suit be "unfounded" or brought for "harassment and the like"); Door Systems, 126 F.3d at 1032 (rejecting bad faith standard in favor of "oppressive" suits "in which the case for an award of fees to the defendant is compelling"); Stephen W. Boney, Inc. v. Boney Servs., Inc., 127 F.3d 821, 827 (9th Cir. 1997) (bad faith not always necessary); Scott Fetzer Co. v. Williamson, 101 F.3d 549, 555 (8th Cir. 1996) ("When a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith, it is exceptional."); Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 194 (2d Cir. 1996) (fraud

or bad faith standard); <u>Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.</u>, 771 F.2d 521, 526 (D.C. Cir. 1985) ("Something less than 'bad faith,' . . . suffices to mark a case as 'exceptional.'").

Regardless of which standard is used to define "exceptional," this case does not meet the test under any of these formulations.  The mere fact that Defendant has prevailed on all counts is insufficient to make the case as a whole "exceptional."  Moreover, neither Plaintiff's decision to bring suit nor its litigation conduct implicate any of the standards for showing that a case is exceptional.  Rather, Nonwovens' ownership of two registered trademarks suggests that, at a minimum, Plaintiff had a colorable claim for a trademark violation.  The court has therefore denied Defendant's motion for attorney's fees under the Lanham Act.

Under the Copyright Act, a court has discretion to award a "reasonable attorney's fee" to "the prevailing party."  17 U.S.C. § 505.  The identity of the prevailing party does not affect the analysis; plaintiffs and defendants are to be treated evenhandedly.  <u>See</u> <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 534 (1994).  The Supreme Court has suggested that certain nonexclusive factors may be used to guide a fee decision: "frivolousness, motivation, objective unreasonableness . . . and the need in particular

circumstances to advance considerations of compensation and deterrence." Id. at 534 n.19 (citation omitted).  However, these factors must be applied in a manner "faithful to the purposes of the Copyright Act," id., which has as its "primary objective . . . to encourage the production of original literary, artistic, and musical expression for the good of the public," id. at 524.

Plaintiff's claim was neither frivolous nor unreasonable.  Both parties agreed that Nonwovens possessed a valid copyright in "Boiled Woolfelt Instructions" and "Franny's Features."  Thus Plaintiff certainly had a colorable copyright claim.  There is no indication that Plaintiff was improperly motivated.  In contrast to the Yankee Candle case, the court cannot conclude that Plaintiff's claims were so meritless that they were not "objectively reasonable." Yankee Candle Co. v. Bridgewater Candle Co., 140 F. Supp. 2d 111, 119 (D. Mass. 2001).  Under these circumstances, the court will exercise its discretion to forbear from awarding fees.

## IV.  CONCLUSION

On September 30, 2005, this court allowed Defendant's motion for summary judgment on all counts and denied Defendant's motion for attorney's fees.  This memorandum sets forth the reasoning behind that order.

-36-

The court will not, however, order final judgment in this case until Defendant's counterclaims have been resolved.  The court hereby orders scheduling of a status conference to discuss resolution of these counterclaims.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge